UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SANTANDER CONSUMER USA, INC.,<br><br>            Plaintiff,<br>v.<br><br>THE CITY OF YONKERS and A.P.O.W. TOWING, LLC,<br><br>            Defendants. | (Electronically Filed)<br><br>Civil Case No.:<br><br>**COMPLAINT** |

Plaintiff, Santander Consumer USA, Inc. ("Santander"), as and for its Complaint against Defendants, The City of Yonkers ("Yonkers") and A.P.O.W. Towing, LLC ("APOW," and with Yonkers, the "Defendants"), alleges:

## NATURE OF ACTION

1. Yonkers' boot and tow policy has been the subject of three lawsuits, two of which resulted in judgements requiring Yonkers to amend its parking enforcement program to comply with the United States Constitution, and one of which is ongoing and likely to lead to the same result.[1] These successful challenges to Yonkers' parking enforcement program has made (or should have made) Yonkers well aware of the dictates of the United States Constitution when it comes to impounding vehicles. Yet, Yonkers retains its outdated and unconstitutional practices in other contexts, including the one at issue here: vehicle seizures incident to an arrest or other traffic-related seizures. In this context, Yonkers's law enforcement officers regularly seize vehicles, but—as with its parking enforcement program—Yonkers has no procedure for disposing of those seized vehicles consistent with the basic requirements of the Constitution.

---

[1] See *Toyota Lease Trust v. The City of Yonkers*, No. 19 Civ. 03199 (GBD), Dkt. No. 21 (S.D.N.Y. Judgment Entered May 15, 2020); *Santander Consumer USA, Inc. v. The City of Yonkers et. al.*, No. 20 Civ. 04553 (KMK)(PED), Dkt. No. 79 (S.D.N.Y. Judgment Entered Aug. 17, 2021); see also *Santander Consumer USA, Inc. et al. v. The City of Yonkers et. al.*, No. 21 Civ. 10715 (PMH), Dkt. No. 1 (S.D.N.Y. Filed Dec. 15, 2021).

2. After seizing a vehicle, Yonkers does not obtain a warrant or other court order, nor provide a hearing of any kind, relating to Yonkers's seizure, retention, and disposition of the seized vehicle. Instead, Yonkers employs the outdated and constitutionally unsound practice of summarily turning over control of seized vehicles to its towing vendors (like APOW), which vendor then imposes an *ex parte* lien for various charges. In this regard, Yonkers's policy is to use seized vehicles to compensate APOW for towing, storage, and disposal services APOW provides to Yonkers.

3. In this case, Yonkers seized a 2018 Land Rover bearing VIN: SALVP2RX8JH267217 (the "Vehicle") on which Santander holds a duly perfected lien. Yonkers never obtained a court order relating to its actions, and did not provide any due process to Santander, instead summarily disposing of the Vehicle by giving it to APOW as payment for the services APOW rendered to Yonkers. APOW accepted the Vehicle from Yonkers as the only form of consideration supporting the contract between APOW and Yonkers and asserted an *ex parte* lien for its services. Both APOW and Yonkers assert that APOW's lien supplanted Santander's lien priority in the Vehicle, and APOW would not release possession of the Vehicle to Santander unless Santander complied with all the unilaterally-imposed conditions dictated by Yonkers and/or APOW. No hearing occurred relating to any of these actions.

## JURISDICTION AND VENUE

4. This is a declaratory judgment/civil rights action pursuant to 42 U.S.C. §§ 1983 and 1988 for deprivation of Santander's rights secured by the Fourth, Fifth and the Fourteenth Amendments to the United States Constitution, and accordingly jurisdiction is conferred on this Court by 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4), as well as 28 U.S.C. § 1331.

5. The remaining causes of action are appropriate pursuant to 28 U.S.C. § 1367 for interrelated state law claims that arise from the occurrences giving rise to the Federal claims, which have a common nucleus of operative fact.

6. Venue lies in the Court pursuant to 28 U.S.C. § 1391), because the Defendants reside in this district, and 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

7. Plaintiff Santander is a corporation incorporated in the State of Illinois, in the business of taking assignments of retail installment contracts and holding the associated lien interests in vehicles, including being the duly perfected lienholder in the Vehicle.

8. Defendant Yonkers is municipal corporation organized and existing under laws of the State of New York.

9. Defendant APOW is, upon information and belief, a corporation incorporated in the State of New York which is engaged in the business of towing and storing motor vehicles

## FACTS

**Santander's interest in the Vehicle**

10. Santander holds a duly perfected security interest in the Vehicle.

11. Before June 16, 2021, and before any other facts relevant to this action, non-party Shamar R. Turner (the "Customer") entered into a retail installment contract to finance the purchase of the Vehicle, which contract was assigned to Santander. By virtue of that transaction, Santander obtained its perfected security interest in the Vehicle.

12. Before, on, and after June 16, 2021, Santander held and continues to hold a first priority lien interest in the Vehicle, which has been duly recorded on the title to the Vehicle.

13. The Customer defaulted on the payment and non-payment obligations under the retail installment contract, thereafter entitling Santander to immediate possession of the Vehicle.

14. By virtue of Yonkers's seizure of the Vehicle, and by virtue of amounts APOW claimed by way of possessory lien on the Vehicle, the Customer were also and further in non-monetary default of the terms of the retail installment contract, thereafter also further entitling Santander to immediate possession of the Vehicle.

**Yonkers seized the Vehicle, in which Santander held a protectable interest, and gave it to APOW for disposal**

15. On or about June 16, 2021, APOW actively and regularly towed and stored vehicles at the direction of Yonkers police officers acting in the regular course of their duties as law enforcement officers.

16. On or about June 16, 2021, Yonkers took custody of the Vehicle and instructed APOW to tow it from the roadway and store it at Yonkers's direction.

17. Santander had no involvement with or knowledge of the operation of the Vehicle at the time it was seized by Yonkers Police and/or APOW.

18. Santander became aware that Yonkers and APOW had seized the Vehicle only after the seizure and possessory claim by APOW had attached.

19. Yonkers provided no notice to Santander at any time.

20. APOW took no action to notify Santander until July 27, 2021 (41 days after taking custody of the Vehicle), when it claims that it sent a letter. APOW claims Santander received that letter on August 6, 2021 (51 days after APOW took custody of the Vehicle).

21. Santander had the immediate right to possess the Vehicle as of July 27, 2021, as Santander's security agreement was in default for non-payment and other non-monetary reasons for default under the relevant agreement.

22. Santander immediately contacted APOW to request that the Vehicle be released to Santander.

23. When Santander contacted APOW to recover the Vehicle, APOW demanded payment of towing and storage charges as a condition for release of the Vehicle. APOW asserts that it is able to detain the Vehicle from Santander because APOW claimed a lien on the Vehicle for towing and storage charges.

24. On or about December 3, 2021, counsel for Santander again contacted APOW to demand that the vehicle be released to Santander.

25. On or about January 5, counsel for Santander spoke to an employee of APOW to arrange for release of the Vehicle. APOW again insisted that Santander pay towing and storage charges (in the amount of approximately $7,700) and that Santander provide APOW with a "hold harmless" in relation to the Vehicle.

26. On or about February 24, 2022, Counsel for APOW confirmed that the Vehicle was being detained due to "a police impound" and transmitted an "updated invoice" seeking $10,250.58 from Santander in exchange for possession of the Vehicle.

27. There is no law which requires Santander to pay Yonkers's towing and storage bill for APOW's alleged services. To the extent Yonkers or APOW seek to rely on any state law to justify their conduct, these laws are unconstitutional as applied to the circumstances, but are not challenged on their face here.

28. Santander did not pay the fees demand by APOW, and APOW refused to release the Vehicle to Santander.

29. Yonkers benefited from APOW's detention of the Vehicle to secure payment, in that Yonkers obtained APOW's impound storage services, as well as APOW's towing services to clear the roadway, with no payment (or reduced payment) of money from Yonkers to APOW.

30. APOW only possessed the Vehicle by virtue of its relationship with Yonkers and acted in concert with Yonkers to seize, detain and dispose of the Vehicle. APOW had no other right to remove the Vehicle from the roadway and hold it against anyone. APOW was, therefore, acted under color of law when it towed, stored and/or disposed of the Vehicle.

**Yonkers's and APOW's regular policies, customs and/or practices which were applied to the Vehicle**

31. Yonkers and APOW's conduct in relation to Santander and the Vehicle on and after June 16, 2021 comported with both Yonkers's and APOW's regular policies, customs and/or practices for the handling of Vehicles encountered and impounded under the same or similar circumstances.

32. Yonkers carries out its essential functions through its own police, who, among other things, seize vehicles for a variety of reasons ranging from alleged criminal infractions to violations of the vehicle and traffic law.

33. Yonkers delegates a portion of the performance of its essential functions to APOW. Specifically, Yonkers police utilize APOW to tow away, store and dispose of vehicles seized by Yonkers police acting in the course of their duties as law enforcement officers. In essence, APOW is Yonkers's vehicle impound contractor for the area relevant to this action.

34. Pursuant to this relationship, Yonkers exercises governmental authority to seize vehicles in concert with APOW.

35. Regardless of the reason for Yonkers's initial seizure of a given vehicle, Yonkers does not return those vehicles to a person with a preexisting property interest when the justification for Yonkers's seizure has passed. Instead, Yonkers places seized vehicles in the possession of its impound contractors, including APOW, for storage and ultimate disposal, permitting the assertion of an *ex parte* possessory lien to secure payment of charges relating to the towing, storage, and disposal.

36. APOW (and the other impound contractors) accept the seized vehicles from Yonkers—which vehicles Yonkers does not own—as either partial or total payment for the towing and storage services APOW provides to Yonkers.

37. Rather than receiving monetary consideration from Yonkers for the services Yonkers has contracted APOW to provide, APOW instead accepts possession of vehicles on which Yonkers permits it to impress an *ex parte* possessory lien for towing and storage fees, which it claims supersedes any other persons' rights in these vehicles.

38. After assessing an *ex parte* possessory lien on impounded vehicles, APOW refuses to return possession of the vehicles to *any* other person, even those with pre-existing property rights in the vehicles, while claiming additional daily storages charges.

39. If APOW's unilateral demands for money and other items (like a hold harmless) are not met, it eventually sells the impounded vehicles and retains the proceeds.

40. Yonkers benefits from APOW's assertion of an *ex parte* lien on, and eventual sale of, seized vehicles. Without APOW's conduct, Yonkers would be forced to pay monetary consideration to APOW for the services APOW provides Yonkers instead of compensating

APOW with possession and authority to assert a lien on the impounded vehicles. Moreover, upon information and belief, APOW pays a portion of the proceeds it obtains from *others* back to Yonkers as part of its agreement(s) with Yonkers.

41. APOW would not lawfully possess impounded vehicles without the mantle of Yonkers' authority, and thus, the consideration flowing from Yonkers to APOW in the contract between these parties is, in essence, Yonkers permitting APOW to exercise a portion of Yonkers' police power to recoup monies from third parties for its services.

42. It is Yonkers's and APOW's regular policy and custom, in the course of the above-described conduct, to **not** obtain a warrant for any of the following actions (for which no valid exception to the warrant requirement exists):

    A.    The initial seizure of the vehicle;

    B.    The turnover of possession of the vehicle to APOW;

    C.    The decision by Yonkers and/or APOW to continue to detain the vehicles after the initial reason for the seizure has passed;

    D.    The decision of APOW to assert an *ex parte* possessory lien (and the amount of that lien); and

    E.    The eventual sale of the vehicle.

43. Even if the initial seizure of the vehicles in question were made under a valid exception to the Fourth Amendment's warrant requirement, a (possibly) valid initial warrantless seizure does not justify any action Yonkers or APOW decide to take thereafter, *supra*. Rather, Yonkers and APOW are required to obtain a warrant, or new justification for a warrantless seizure once the reasons for the (possibly valid) initial warrantless seizure have dissipated. Alternatively, the subsequent actions rendered the seizure unreasonable in its manner of execution, even if done with an initially valid exception to the warrant requirement.

44. It is also Yonkers's and APOW's regular policy and custom, in the course of the above-described conduct, to **not** provide any form of constitutionally adequate notice, nor any hearing whatsoever, in relation to any of the following actions:

    A. The initial seizure of the vehicle;

    B. The turnover of possession of the vehicle to APOW;

    C. The decision by Yonkers and/or APOW to continue to detain the vehicles after the initial reason for the seizure has passed;

    D. The decision of APOW to assert an *ex parte* possessory lien (and the amount of that lien); and

    A. The eventual sale of the vehicle.

45. Any notification(s) transmitted by Yonkers and/or APOW relating to the conduct referenced *supra* does not satisfy the constitutional due process requirement of notice, because these communications are merely notifications of Yonkers's and/or APOW's unilateral demands, not notice of an opportunity to be heard (which does not occur).

46. Neither Yonkers nor APOW compensated Santander for taking Santander's collateral, *i.e.* the Vehicle, nor for re-ordering Santander's lien priority, for their own public use.

47. These actions, all taken in accordance with Yonkers's and APOW's regular policies and customs for seizing and disposing of seized motor vehicles, violate the Fourth, Fifth and Fourteenth Amendment to the United States Constitution.

48. Yonkers and APOW knew or should have known that their actions violated the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

## COUNT I
### Violation of Civil Rights Pursuant to title 42 U.S.C. § 1983
### (Deprivation of Property by Unreasonable Seizure)

49. Santander realleges and incorporates herein by reference the allegations set forth in the prior paragraphs herein.

50. Santander is the holder of a protectible property interest in the Vehicle.

51. Defendants meaningfully interfered with Santander's protectible interest in the Vehicle by towing it, detaining it, withholding possession from Santander, demanding payment and other conditions for release of it, and threatening to ultimately take ownership of it free from Santander's lien.

52. By these actions, Defendants acted under color of law to seize the Vehicle within the meaning of the Fourth Amendment to the United States' Constitution.

53. Defendants' seizure of the Vehicle was unaccompanied by a warrant.

54. Defendants' seizure of the Vehicle was unaccompanied by any legitimate exception to the warrant requirement.

55. To the extent the initial seizure was accompanied by any arguably legitimate exception to the warrant requirement, it was carried out in an unreasonable manner of execution insofar as the seizure exceeded the scope necessary to complete any legitimate task associated with the purported warrant exception for which the vehicle was seized.

56. Defendants' seizure of the Vehicle was therefore unreasonable in violation of the Fourth Amendment to the United States' Constitution.

57. Defendants' unreasonable seizure of the Vehicle was accomplished in accordance with the Defendants' standard policy and/or custom for the handling and disposal of seized vehicles.

58. As a direct and proximate result of Yonkers's and APOW's violation of Santander's Constitutional right to be free from unreasonable seizures, Santander has suffered damages based upon the lost value of the Vehicle, interference with its contractual rights in the Vehicle, the lost revenue stream from its finance of the Vehicle, and other damages.

59. Santander is, therefore, entitled to relief under 42 U.S.C. § 1983.

**COUNT II**
**Violation of Civil Rights Pursuant to title 42 U.S.C. § 1983**
**(Deprivation of Property Without Due Process of Law)**

60. Santander realleges and incorporates herein by reference the allegations set forth in the prior paragraphs herein.

61. Santander is the holder of a protectible property interest in the Vehicle. These interests included, but were not limited to, Santander's contractual rights relating to the Vehicle (including repossession rights), and Santander's first-priority lien interest in the value of the Vehicle itself.

62. Yonkers and/or APOW's actions resulted in the deprivation of Santander's protectible property interests in the Vehicle.

63. Neither Yonkers nor APOW had any mechanism for, nor did either secure, review of any of either Defendants' actions in relation to the Vehicle before a judge or other neutral decisionmaker.

64. Neither Yonkers nor APOW provided Santander for an opportunity to be heard in relation to any of either Defendants' actions in relation to the Vehicle in any venue at any time.

65. Because neither Yonkers nor APOW provided any mechanism for, nor did either secure, review of any of either Defendants' actions in relation to the Vehicle by a judge or other

neutral decisionmaker, neither provided Santander with constitutionally adequate notice of that non-existent hearing procedure.

66. The manner in which Santander became aware of Yonkers and APOW's seizure of the Vehicle, as well as APOW's continued possession of the Vehicle, did not constitute adequate notice for the purposes of due process.

67. Defendants' deprivation of Santander's rights in the Vehicle was therefore accomplished without due process of law in violation of the Fourteenth Amendment to the United States' Constitution

68. Defendants' deprivations of Santander's rights in the Vehicle were accomplished in accordance with the Defendants' standard policy and/or custom for the handling and disposal of seized vehicles.

69. As a direct and proximate result of Yonkers's and APOW's violation of Santander's Constitutional right to be free from deprivations without due process of law, Santander has suffered damages based upon the lost value of the Vehicle, interference with its contractual rights in the Vehicle, the lost revenue stream from its finance of the Vehicle, and other damages.

70. Santander is, therefore, entitled to relief under 42 U.S.C. § 1983.

## COUNT III
### Violation of Civil Rights Pursuant to title 42 U.S.C. § 1983
### (Taking of Property Without Just Compensation)
### (as against Yonkers)

71. Santander realleges and incorporates herein by reference the allegations set forth in the prior paragraphs herein.

72. Santander is the holder of a protectible property interest in the Vehicle.

73. Yonkers compensated APOW, in whole or in part, by turning over possession of the Vehicle to APOW, who lawfully possessed the Vehicle only by virtue of having obtained it from Yonkers.

74. APOW accepted the Vehicle as compensation, in whole or in part, for the services it provided to Yonkers, namely the towing and storage of the Vehicle that Yonkers had seized.

75. Yonkers destroyed Santander's lien priority in the Vehicle, and its possessory rights pursuant to its contract with its Customer, by turning over the Vehicle to APOW and permitting APOW to assert a possessory lien that allegedly took priority over Santander's lien and prevented Santander from exercising its contractual possessory rights in the Vehicle.

76. Yonkers thereby took Santander's interests in the Vehicle—its right to possession of the Vehicle and its lien priority in the Vehicle—for a public use.

77. Yonkers did not compensate Santander for the taking of its interests in the Vehicle.

78. Yonkers therefore took Santander's property for public use without just compensation in violation of the takings clause of the Fifth Amendment to the United States' Constitution.

79. Yonkers's taking of Santander's rights in the Vehicle was accomplished in accordance with Yonkers's standard policy and/or custom for the handling and disposal of seized vehicles.

80. As a direct and proximate result of Yonkers's violation of Santander's Constitutional right to be free from takings without just compensation, Santander has suffered damages based upon the lost value of the Vehicle, interference with its contractual rights in the Vehicle, the lost revenue stream from its finance of the Vehicle, and other damages.

81. Santander is, therefore, entitled to relief under 42 U.S.C. § 1983.

## COUNT IV
### Violation of New York Constitution

82. Santander realleges and incorporates herein by reference to the allegations set forth in the prior paragraphs herein.

83. Yonkers and APOW's actions also violate the corresponding protection of the New York State Constitution as set forth above.

## COUNT V
### Declaratory Relief

84. Santander realleges and incorporates herein by reference to the allegations set forth in the prior paragraphs herein.

85. An actual controversy has arisen and now exists between Santander and Defendants warranting declaratory relief pursuant to 28 U.S.C. 2201.

86. Santander contends Defendants' conduct is unconstitutional.

87. Defendants assert that their conduct is constitutional.

88. APOW also asserts a possessory lien in the Vehicle which it claims takes priority over Santander's prior perfected lien, which Santander disputes.

89. The parties' will not resolve their disagreements over their respective rights in seized vehicles without a judicial declaration.

90. A judicial declaration will also serve the public interest, insofar as Yonkers seizes hundreds of cars every year under the same or similar circumstances to the Vehicle, which it subjects to the same policies and customs that Santander contends violate the United States and New York constitutions, including many others in which Santander holds liens.

91. Santander seeks a declaration that, to the extent Defendants seek to rely on any provisions of state or local law to justify the above-described actions, those laws are unconstitutional as applied in violation of the supremacy clause and the aforementioned constitutional rights.

## COUNT VI
### Replevin
### (as against APOW only)

92. Santander realleges and incorporates herein by reference to the allegations set forth in the prior points herein.

93. Santander holds a valid lien in the Vehicle and is entitled to possession pursuant to its retail installment contract with the Customer.

94. Santander has demanded that APOW surrender the Vehicle to Santander's possession.

95. APOW has refused, and continues to refuse, to surrender the Vehicle to Santander's possession.

96. Santander is entitled to an order requiring APOW to immediately turn over possession of the Vehicle to Santander.

## COUNT VII
### Conversion
### (as Against APOW only)

97. Santander incorporates herein by reference the allegations set forth in the above paragraphs, as if fully set forth herein.

98. Santander has a lien in the Vehicle, and in accordance with its rights under its retail installment contract with the Customer, has become entitled to immediate possession of the Vehicle.

99. APOW has refused, and continues to refuse, to surrender possession of the Vehicle to Santander.

100. By these actions, APOW has purposefully, knowingly and/or intentionally exercised dominion and control over the Vehicle, wrongfully interfering with Santander's rights to possession of the Vehicle.

101. Santander has suffered, and continues to suffer, damages as a result of APOW actions.

## COUNT VIII
### Tortious Interference
### (as Against APOW only)

102. Santander incorporates herein by reference the allegations set forth in the above paragraphs, as if fully set forth herein.

103. APOW wrongful actions as set forth above constitute a knowing and intentional tortious interference with Santander's contractual relations and/or prospective economic advantage with respect to the Vehicle.

104. Santander has suffered, and continues to suffer, damages as a result of APOW actions.

## COUNT IX
### New York State General Obligations Law 349
### (as Against APOW only)

105. Santander incorporates herein by reference the allegations set forth in the above paragraphs, as if fully set forth herein.

106. The repair and storage of automobiles is a consumer-oriented business as that business is highly regulated under V&T 398-a "to protect the consumers of the state…" Practices

relative to the charging of repair and storage fees on automobiles and practices for collecting such fees are consumer-oriented practices.

107. APOW holds a contract whereby it regularly tows vehicles at the direction of police within a set geographical location and APOW towed The Subject Vehicle under such contract.

108. APOW's towing practices and practices for asserting liens for storage fees on towed vehicles potentially impact any consumer who is operating a vehicle within the geographic area for which APOW tows under its police contract.

109. APOW habitually misrepresents to consumers that the consumer must pay an amount to redeem a vehicle towed under APOW's police contract that is grossly inflated and exaggerated.

110. APOW habitually asserts a garageman's lien against consumers and lienholders for such exaggerated storage fees relating to police requested towing even though APOW knows that it has not complied with the requirements of the Lien Law needed in order for a lien to arise.

111. APOW habitually misrepresents to consumers and lienholders that police authorization and a hold harmless agreement are required to redeem a vehicle that has been towed at the request of law enforcement, when nothing in the Lien Law permits a garage to impose such conditions.

112. APOW habitually detains vehicles from consumers and lienholders based upon demands for police authorizations and hold harmless agreements.

113. APOW's assertion of a garageman's lien and detention of vehicles is directly intended to alter the rights of the consumer owner and lienholder in the vehicle.

114. The sums of money demanded by APOW in this case relate to APOW's handling of a consumer's vehicle which was being operated for personal, family or household use.

115. Imposition of exaggerated or unwarranted fees on consumers satisfies the misleading element of GBL 349.

116. Here, APOW, while operating a consumer-oriented business, including the towing and storage of consumer vehicles: a) imposed exaggerated and/or unwarranted storage fees relating to its handling of the subject vehicle; b) misrepresented that it had a garageman's lien when APOW did not follow the procedures needed to have a lien; c) misrepresented that a police release and hold harmless agreement were needed in order to redeem and recover the vehicle; d) detained The Subject Vehicle to force payment of its unwarranted fees.

117. Concealing a supposedly increasing lien and ensuring that an interested party cannot then protect its interests is a deceptive practice.

118. APOW has engaged in this deceptive practice of not disclosing the basis and amount of its purported lien so that interested parties, including Santander, can consider exercise of the redemption rights mandated by Lien Law 203.

119. A finance company has standing to assert a GBL 349 cause of action where a garage has used charges generated from the garage's handling of a consumer vehicle to impede the finance company's right to take possession of that vehicle or damage the finance company's interest therein by thwarting the finance company's right to redeem.

120. Here, APOW has directly damaged Santander by using the exaggerated and/or unwarranted fees generated from its handling of the subject consumer vehicle, along with its non-monetary demands for a police release and hold harmless agreement, to deny possession of

the vehicle to Santander, a vehicle worth thousands of dollars, which constitutes <u>direct pecuniary harm to Santander.</u>

121. APOW has directly damaged Santander by using the exaggerated and/or unwarranted fees generated from its handling of the subject consumer vehicle to impede and deny Petitioner/Plaintiff's statutory right to redeem under Lien Law 203.

122. APOW has directly damaged Santander by forcing Santander to incur legal fees to recover the vehicle and determine if there is any legitimate amount to be considered to redeem the vehicle under Lien Law 203. Being forced to incur attorney's fees to obtain mandatory disclosures and to access basic rights constitutes direct harm under GBL 349.

123. Santander seeks actual damages, attorney's fees and treble damages as APOW's unlawful and deceptive practices were pursued with actual knowledge that they were wrongful.

124. Wuestenhoefer is jointly and severally liable with APOW as he is the person in control of APOW and the person who asserted APOW's claims against The Subject Vehicle

## **Prayers for Relief**

WHEREFORE, Santander requests that this Court:

    A.    Grant judgment in favor of Santander and against Defendants on all causes of action asserted herein;

    B.    Declare that Defendants violated Santander's rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution;

    C.    Declare unconstitutional, in violation of the Fourth, Fifth and/or Fourteenth Amendments to the United States Constitution, Yonkers's policy and/or custom of effectuating the governmental purpose of clearing motor vehicles from the roadway by compensating impound contractors with the property of others—namely, other persons' motor vehicles and, if appropriate, permanently enjoin such practices;

    D.    Declare unconstitutional, in violation of the Fifth and Fourteenth Amendments, Yonkers's policy and/or custom of placing other person's

      motor vehicles into the possession of third party impound contractors, with no preexisting interest in those vehicles, without just compensation and without providing notice or an opportunity to be heard before a neutral decision maker regarding the propriety of YONKERS's actions in disposing of those vehicles and permanently enjoin such practices;

E.    Permanently enjoin APOW from detaining possession of motor vehicles it obtains as a result of its relationship with government entities, including APOW, without providing notice and a hearing whereat persons with protected interests may challenge the government entities' and/or APOW's actions and permanently enjoin restriction on lienholder rights to recover vehicles upon compliance with unilateral demands;

F.    Award Santander compensatory damages, consequential damages, and nominal damages against all Defendants, jointly and severally;

G.    Award Santander the cost of prosecuting this action together with attorney's fees pursuant to 42 U.S.C. §1988;

H.    Award compensatory damages, consequential damages, punitive damages, statutory treble damages, costs, and attorneys' fees against APOW, and in favor of Santander;

I.    Declare any reliance by Defendants on local law inconsistent with the within-described constitutional rights, and, therefore, declare that any such state or local law, to the extent determined applicable, to be unconstitutional as applied; and

J.    Award such other and different relief that the Court, in the exercise of its discretion, deems just and proper.

Dated: October 18, 2022

                                                               **NORRIS, McLAUGHLIN, PA**
                                                               Attorneys for Plaintiff

                                                               By:  */s/ Nicholas Duston*
                                                                       Nicholas A. Duston
                                                                       7 Times Square, 21st Fl.
                                                                       New York, NY 10036
                                                                       naduston@norris-law.com
                                                                       (908)-722-0700