# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

SANTANDER CONSUMER USA, INC.,

        Plaintiff,

v.

THE CITY OF YONKERS, A.P.O.W. TOWING, LLC, and Yonkers Towing & Recovery LLC,

        Defendants.

(Electronically Filed)

Civil Case No.: 22-cv-08870(KMK)(VR)

**AMENDED COMPLAINT**

Plaintiff, Santander Consumer USA, Inc. ("Santander"), as and for its Complaint against Defendants, The City of Yonkers ("Yonkers"),A.P.O.W. Towing, LLC ("APOW"), and Yonkers Towing & Recovery LLC ("YTR", together with APOW, "Tow Companies", and with both Yonkers and APOW, the "Defendants"), alleges:

## NATURE OF ACTION

1.    Yonkers' boot and tow policy has been the subject of three lawsuits, two of which resulted in judgements requiring Yonkers to amend its parking enforcement program to comply with the United States Constitution, and one of which is ongoing and likely to lead to the same result.[1]  These successful challenges to Yonkers' parking enforcement program has made (or should have made) Yonkers well aware of the dictates of the United States Constitution when it comes to impounding vehicles.  Yet, Yonkers retains its outdated and unconstitutional practices in other contexts, including the one at issue here: vehicle seizures incident to an arrest or other traffic-related seizures.   In this context, Yonkers's law enforcement officers regularly seize vehicles, but—as with its parking enforcement program—Yonkers has no procedure for disposing of those seized vehicles consistent with the basic requirements of the Constitution.

2.      After seizing a vehicle, Yonkers does not obtain a warrant or other court order, nor provide a hearing of any kind, relating to Yonkers's seizure, retention, and disposition of the seized vehicle.  Instead, Yonkers employs the outdated and constitutionally unsound practice of summarily turning over control of seized vehicles to its towing vendors (like APOW), which vendor then imposes an *ex parte* lien for various charges. In this regard, Yonkers's policy is to use seized vehicles to compensate APOW for towing, storage, and disposal services the Tow Companies provide to Yonkers.

3.      In this case, Yonkers seized a 2018 Land Rover bearing VIN: SALVP2RX8JH267217 (the "Vehicle") on which Santander holds a duly perfected lien. Yonkers never obtained a court order relating to its actions, and did not provide any due process to Santander, instead summarily disposing of the Vehicle by giving it to the Tow Companies as payment for the services the Tow Companies rendered to Yonkers.  The Tow Companies accepted the Vehicle from Yonkers as the only form of consideration supporting the contract between the Tow Companies and Yonkers and asserted an *ex parte* lien for its services.  Both the Tow Companies and Yonkers assert that the Tow Companies' lien supplanted Santander's lien priority in the Vehicle, and the Tow Companies would not release possession of the Vehicle to Santander unless Santander complied with all the unilaterally-imposed conditions dictated by Yonkers and/or the Tow Companies.  No hearing occurred relating to any of these actions.

---

[1] See *Toyota Lease Trust v. The City of Yonkers*, No. 19 Civ. 03199 (GBD), Dkt. No. 21 (S.D.N.Y. Judgment Entered May 15, 2020); *Santander Consumer USA, Inc. v. The City of Yonkers et. al.*, No. 20 Civ. 04553 (KMK)(PED), Dkt. No. 79 (S.D.N.Y. Judgment Entered Aug. 17, 2021);  see also *Santander Consumer USA, Inc. et al. v. The City of Yonkers et. al.*, No. 21 Civ. 10715 (PMH), Dkt. No. 1 (S.D.N.Y. Filed Dec. 15, 2021).

**JURISDICTION AND VENUE**

4.     This is a declaratory judgment/civil rights action pursuant to 42 U.S.C. §§ 1983 and 1988 for deprivation of Santander's rights secured by the Fourth, Fifth and the Fourteenth Amendments to the United States Constitution, and accordingly jurisdiction is conferred on this Court by 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4), as well as 28 U.S.C. § 1331.

5.     The remaining causes of action are appropriate pursuant to 28 U.S.C. § 1367 for interrelated state law claims that arise from the occurrences giving rise to the Federal claims, which have a common nucleus of operative fact.

6.     Venue lies in the Court pursuant to 28 U.S.C. § 1391), because the Defendants reside in this district, and 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

**PARTIES**

7.     Plaintiff Santander is a corporation incorporated in the State of Illinois, in the business of taking assignments of retail installment contracts and holding the associated lien interests in vehicles, including being the duly perfected lienholder in the Vehicle.

8.     Defendant Yonkers is municipal corporation organized and existing under laws of the State of New York.

9.     Defendant APOW is, upon information and belief, a corporation incorporated in the State of New York which is engaged in the business of towing and storing motor vehicles.

10.     Defendant YTR is, upon information and belief, a corporation incorporated in the State of New York which is engaged in the business of towing and storing motor vehicles.

## FACTS

**Santander's interest in the Vehicle**

11.    Santander holds a duly perfected security interest in the Vehicle.

12.    Before June 16, 2021, and before any other facts relevant to this action, non-party Shamar R. Turner (the "Customer") entered into a retail installment contract to finance the purchase of the Vehicle, which contract was assigned to Santander.  By virtue of that transaction, Santander obtained its perfected security interest in the Vehicle.

13.    Before, on, and after June 16, 2021, Santander held and continues to hold a first priority lien interest in the Vehicle, which has been duly recorded on the title to the Vehicle.

14.    The Customer defaulted on the payment and non-payment obligations under the retail installment contract, thereafter entitling Santander to immediate possession of the Vehicle.

15.    By virtue of Yonkers's seizure of the Vehicle, and by virtue of amounts the Tow Companies claimed by way of possessory lien on the Vehicle, the Customer were also and further in non-monetary default of the terms of the retail installment contract, thereafter also further entitling Santander to immediate possession of the Vehicle.

**Yonkers seized the Vehicle, in which Santander held a protectable interest, and gave it to the Tow Companies for disposal**

16.    On or about June 16, 2021, the Tow Companies actively and regularly towed and stored vehicles at the direction of Yonkers police officers acting in the regular course of their duties as law enforcement officers.

17.    On or about June 16, 2021, Yonkers took custody of the Vehicle and instructed the Tow Companies to tow it from the roadway and store it at Yonkers's direction.

4

18.     Santander had no involvement with or knowledge of the operation of the Vehicle at the time it was seized by Yonkers Police and/or the Tow Companies.

19.     Santander became aware that Yonkers and the Tow Companies had seized the Vehicle only after the seizure and possessory claim by the Tow Companies had attached.

20.     Yonkers provided no notice to Santander at any time.

21.     The Tow Companies took no action to notify Santander until July 27, 2021 (41 days after taking custody of the Vehicle), when it claims that it sent a letter.  The Tow Companies claim Santander received that letter on August 6, 2021 (51 days after the Tow Companies took custody of the Vehicle).

22.     Santander had the immediate right to possess the Vehicle as of July 27, 2021, as Santander's security agreement was in default for non-payment and other non-monetary reasons for default under the relevant agreement.

23.     Santander immediately contacted the Tow Companies to request that the Vehicle be released to Santander.

24.     When Santander contacted the Tow Companies to recover the Vehicle, the Tow Companies demanded payment of towing and storage charges as a condition for release of the Vehicle.  The Tow Companies assert that they are able to detain the Vehicle from Santander because the Tow Companies claimed a lien on the Vehicle for towing and storage charges.

25.     On or about December 3, 2021, counsel for Santander again contacted the Tow Companies to demand that the vehicle be released to Santander.

26.     On or about January 5, counsel for Santander spoke to an employee of the Tow Companies to arrange for release of the Vehicle.  The Tow Companies again insisted that

Santander pay towing and storage charges (in the amount of approximately $7,700) and that Santander provide the Tow Companies with a "hold harmless" in relation to the Vehicle.

27.     On or about February 24, 2022, Counsel for the Tow Companies confirmed that the Vehicle was being detained due to "a police impound" and transmitted an "updated invoice" seeking $10,250.58 from Santander in exchange for possession of the Vehicle.

28.     There is no law which requires Santander to pay Yonkers's towing and storage bill for the Tow Companies' alleged services.  To the extent Yonkers or the Tow Companies seek to rely on any state law to justify their conduct, these laws are unconstitutional as applied to the circumstances, but are not challenged on their face here.

29.     Santander did not pay the fees demand by the Tow Companies, and the Tow Companies refused to release the Vehicle to Santander.

30.     Yonkers benefited from the Tow Companies' detention of the Vehicle to secure payment, in that Yonkers obtained the Tow Companies' impound storage services, as well as the Tow Companies' towing services to clear the roadway, with no payment (or reduced payment) of money from Yonkers to the Tow Companies.

31.     The Tow Companies only possessed the Vehicle by virtue of their relationship with Yonkers and acted in concert with Yonkers to seize, detain and dispose of the Vehicle.  The Tow Companies had no other right to remove the Vehicle from the roadway and hold it against anyone.  The Tow Companies' therefore acted under color of law when they towed, stored and/or disposed of the Vehicle.

6

**Yonkers's and the Tow Companies' regular policies, customs and/or practices which were applied to the Vehicle**

32.    Yonkers and the Tow Companies' conduct in relation to Santander and the Vehicle on and after June 16, 2021 comported with both Yonkers's and the Tow Companies' regular policies, customs and/or practices for the handling of Vehicles encountered and impounded under the same or similar circumstances.

33.    Yonkers carries out its essential functions through its own police, who, among other things, seize vehicles for a variety of reasons ranging from alleged criminal infractions to violations of the vehicle and traffic law.

34.    Yonkers delegates a portion of the performance of its essential functions to the Tow Companies. Specifically, Yonkers police utilize the Tow Companies to tow away, store and dispose of vehicles seized by Yonkers police acting in the course of their duties as law enforcement officers.   In essence, the Tow Companies are Yonkers's vehicle impound contractors for the area relevant to this action.

35.    Pursuant to this relationship, Yonkers exercises governmental authority to seize vehicles in concert with the Tow Companies.

36.    Regardless of the reason for Yonkers's initial seizure of a given vehicle, Yonkers does not return those vehicles to a person with a preexisting property interest when the justification for Yonkers's seizure has passed.  Instead, Yonkers places seized vehicles in the possession of its impound contractors, including the Tow Companies, for storage and ultimate disposal, permitting the assertion of an *ex parte* possessory lien to secure payment of charges relating to the towing, storage, and disposal.

7

37.    the Tow Companies (and the other impound contractors) accept the seized vehicles from Yonkers—which vehicles Yonkers does not own—as either partial or total payment for the towing and storage services the Tow Companies provide to Yonkers.

38.    Rather than receiving monetary consideration from Yonkers for the services Yonkers has contracted the Tow Companies to provide, the Tow Companies instead accept possession of vehicles on which Yonkers permits it to impress an *ex parte* possessory lien for towing and storage fees, which it claims supersedes any other persons' rights in these vehicles.

39.    After assessing an *ex parte* possessory lien on impounded vehicles, the Tow Companies refuse to return possession of the vehicles to *any* other person, even those with pre-existing property rights in the vehicles, while claiming additional daily storages charges.

40.    If the Tow Companies' unilateral demands for money and other items (like a hold harmless) are not met, they eventually sell the impounded vehicles and retain the proceeds.

41.    Yonkers benefits from the Tow Companies' assertion of an *ex parte* lien on, and eventual sale of, seized vehicles.  Without the Tow Companies' conduct, Yonkers would be forced to pay monetary consideration to the Tow Companies for the services the Tow Companies provide Yonkers instead of compensating the Tow Companies with possession and authority to assert a lien on the impounded vehicles.  Moreover, upon information and belief, the Tow Companies pay a portion of the proceeds it obtains from *others* back to Yonkers as part of its agreement(s) with Yonkers.

42.    the Tow Companies would not lawfully possess impounded vehicles without the mantle of Yonkers' authority, and thus, the consideration flowing from Yonkers to the Tow Companies in the contract between these parties is, in essence, Yonkers permitting the Tow

8

Companies to exercise a portion of Yonkers' police power to recoup monies from third parties for its services.

43.    It is Yonkers's and the Tow Companies' regular policy and custom, in the course of the above-described conduct, to **not** obtain a warrant for any of the following actions (for which no valid exception to the warrant requirement exists):

A.    The initial seizure of the vehicle;

B.    The turnover of possession of the vehicle to the Tow Companies;

C.    The decision by Yonkers and/or the Tow Companies to continue to detain the vehicles after the initial reason for the seizure has passed;

D.    The decision of the Tow Companies to assert an *ex parte* possessory lien (and the amount of that lien); and

E.    The eventual sale of the vehicle.

44.    Even if the initial seizure of the vehicles in question were made under a valid exception to the Fourth Amendment's warrant requirement, a (possibly) valid initial warrantless seizure does not justify any action Yonkers or the Tow Companies decide to take thereafter, *supra*. Rather, Yonkers and the Tow Companies are required to obtain a warrant, or new justification for a warrantless seizure once the reasons for the (possibly valid) initial warrantless seizure have dissipated. Alternatively, the subsequent actions rendered the seizure unreasonable in its manner of execution, even if done with an initially valid exception to the warrant requirement.

45.    It is also Yonkers's and the Tow Companies' regular policy and custom, in the course of the above-described conduct, to **not** provide any form of constitutionally adequate notice, nor any hearing whatsoever, in relation to any of the following actions:

A.    The initial seizure of the vehicle;

9

B.    The turnover of possession of the vehicle to the Tow Companies;

C.    The decision by Yonkers and/or the Tow Companies to continue to detain the vehicles after the initial reason for the seizure has passed;

D.    The decision of the Tow Companies to assert an *ex parte* possessory lien (and the amount of that lien); and

A.    The eventual sale of the vehicle.

46.    Any notification(s) transmitted by Yonkers and/or the Tow Companies relating to the conduct referenced *supra* does not satisfy the constitutional due process requirement of notice, because these communications are merely notifications of Yonkers's and/or the Tow Companies' unilateral demands, not notice of an opportunity to be heard (which does not occur).

47.    Neither Yonkers nor the Tow Companies compensated Santander for taking Santander's collateral, *i.e.* the Vehicle, nor for re-ordering Santander's lien priority,  for their own public use.

48.    These actions, all taken in accordance with Yonkers's and the Tow Companies' regular policies and customs for seizing and disposing of seized motor vehicles, violate the Fourth, Fifth and Fourteenth Amendment to the United States Constitution.

49.    Yonkers and the Tow Companies knew or should have known that their actions violated the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

### COUNT I
### Violation of Civil Rights Pursuant to title 42 U.S.C. § 1983
### (Deprivation of Property by Unreasonable Seizure)

50.    Santander realleges and incorporates herein by reference the allegations set forth in the prior paragraphs herein.

51.    Santander is the holder of a protectible property interest in the Vehicle.

52.     Defendants meaningfully interfered with Santander's protectible interest in the Vehicle by towing it, detaining it, withholding possession from Santander, demanding payment and other conditions for release of it, and threatening to ultimately take ownership of it free from Santander's lien.

53.     By these actions, Defendants acted under color of law to seize the Vehicle within the meaning of the Fourth Amendment to the United States' Constitution.

54.     Defendants' seizure of the Vehicle was unaccompanied by a warrant.

55.     Defendants' seizure of the Vehicle was unaccompanied by any legitimate exception to the warrant requirement.

56.     To the extent the initial seizure was accompanied by any arguably legitimate exception to the warrant requirement, it was carried out in an unreasonable manner of execution insofar as the seizure exceeded the scope necessary to complete any legitimate task associated with the purported warrant exception for which the vehicle was seized.

57.     Defendants' seizure of the Vehicle was therefore unreasonable in violation of the Fourth Amendment to the United States' Constitution.

58.     Defendants' unreasonable seizure of the Vehicle was accomplished in accordance with the Defendants' standard policy and/or custom for the handling and disposal of seized vehicles.

59.     As a direct and proximate result of Yonkers's and the Tow Companies' violation of Santander's Constitutional right to be free from unreasonable seizures, Santander has suffered damages based upon the lost value of the Vehicle, interference with its contractual rights in the Vehicle, the lost revenue stream from its finance of the Vehicle, and other damages.

60.     Santander is, therefore, entitled to relief under 42 U.S.C. § 1983.

11

## COUNT II
### Violation of Civil Rights Pursuant to title 42 U.S.C. § 1983
### (Deprivation of Property Without Due Process of Law)

61.    Santander realleges and incorporates herein by reference the allegations set forth in the prior paragraphs herein.

62.    Santander is the holder of a protectible property interest in the Vehicle.  These interests included, but were not limited to, Santander's contractual rights relating to the Vehicle (including repossession rights), and Santander's first-priority lien interest in the value of the Vehicle itself.

63.    Yonkers and/or the Tow Companies' actions resulted in the deprivation of Santander's protectible property interests in the Vehicle.

64.    Neither Yonkers nor the Tow Companies had any mechanism for, nor did either secure, review of any of either Defendants' actions in relation to the Vehicle before a judge or other neutral decisionmaker.

65.    Neither Yonkers nor the Tow Companies provided Santander for an opportunity to be heard in relation to any of either Defendants' actions in relation to the Vehicle in any venue at any time.

66.    Because neither Yonkers nor the Tow Companies provided any mechanism for, nor did either secure, review of any of either Defendants' actions in relation to the Vehicle by a judge or other neutral decisionmaker, neither provided Santander with constitutionally adequate notice of that non-existent hearing procedure.

67.    The manner in which Santander became aware of Yonkers and the Tow Companies the Tow Companies' seizure of the Vehicle, as well as the Tow Companies the Tow

12

Companies' continued possession of the Vehicle, did not constitute adequate notice for the purposes of due process.

68.    Defendants' deprivation of Santander's rights in the Vehicle was therefore accomplished without due process of law in violation of the Fourteenth Amendment to the United States' Constitution

69.    Defendants' deprivations of Santander's rights in the Vehicle were accomplished in accordance with the Defendants' standard policy and/or custom for the handling and disposal of seized vehicles.

70.    As a direct and proximate result of Yonkers's and the Tow Companies' violation of Santander's Constitutional right to be free from deprivations without due process of law, Santander has suffered damages based upon the lost value of the Vehicle, interference with its contractual rights in the Vehicle, the lost revenue stream from its finance of the Vehicle, and other damages.

71.    Santander is, therefore, entitled to relief under 42 U.S.C. § 1983.

## COUNT III
### Violation of Civil Rights Pursuant to title 42 U.S.C. § 1983
### (Taking of Property Without Just Compensation)
### (as against Yonkers)

72.    Santander realleges and incorporates herein by reference the allegations set forth in the prior paragraphs herein.

73.    Santander is the holder of a protectible property interest in the Vehicle.

74.    Yonkers compensated the Tow Companies, in whole or in part, by turning over possession of the Vehicle to the Tow Companies, who lawfully possessed the Vehicle only by virtue of having obtained it from Yonkers.

13

75.     the Tow Companies accepted the Vehicle as compensation, in whole or in part, for the services they provided to Yonkers, namely the towing and storage of the Vehicle that Yonkers had seized.

76.     Yonkers destroyed Santander's lien priority in the Vehicle, and its possessory rights pursuant to its contract with its Customer, by turning over the Vehicle to the Tow Companies and permitting the Tow Companies to assert a possessory lien that allegedly took priority over Santander's lien and prevented Santander from exercising its contractual possessory rights in the Vehicle.

77.     Yonkers thereby took Santander's interests in the Vehicle—its right to possession of the Vehicle and its lien priority in the Vehicle—for a public use.

78.     Yonkers did not compensate Santander for the taking of its interests in the Vehicle.

79.     Yonkers therefore took Santander's property for public use without just compensation in violation of the takings clause of the Fifth Amendment to the United States' Constitution.

80.     Yonkers's taking of Santander's rights in the Vehicle was accomplished in accordance with Yonkers's standard policy and/or custom for the handling and disposal of seized vehicles.

81.     As a direct and proximate result of Yonkers's violation of Santander's Constitutional right to be free from takings without just compensation, Santander has suffered damages based upon the lost value of the Vehicle, interference with its contractual rights in the Vehicle, the lost revenue stream from its finance of the Vehicle, and other damages.

82.     Santander is, therefore, entitled to relief under 42 U.S.C. § 1983.

14

## COUNT IV
### Violation of New York Constitution

83.     Santander realleges and incorporates herein by reference to the allegations set forth in the prior paragraphs herein.

84.     Yonkers and the Tow Companies the Tow Companies' actions also violate the corresponding protection of the New York State Constitution as set forth above.

## COUNT V
### Declaratory Relief

85.     Santander realleges and incorporates herein by reference to the allegations set forth in the prior paragraphs herein.

86.     An actual controversy has arisen and now exists between Santander and Defendants warranting declaratory relief pursuant to 28 U.S.C. 2201.

87.     Santander contends Defendants' conduct is unconstitutional.

88.     Defendants assert that their conduct is constitutional.

89.     the Tow Companies also assert a possessory lien in the Vehicle which they claim takes priority over Santander's prior perfected lien, which Santander disputes.

90.     The parties' will not resolve their disagreements over their respective rights in seized vehicles without a judicial declaration.

91.     A judicial declaration will also serve the public interest, insofar as Yonkers seizes hundreds of cars every year under the same or similar circumstances to the Vehicle, which it subjects to the same policies and customs that Santander contends violate the United States and New York constitutions, including many others in which Santander holds liens.

92.     Santander seeks a declaration that, to the extent Defendants seek to rely on any provisions of state or local law to justify the above-described actions, those laws are

unconstitutional as applied in violation of the supremacy clause and the aforementioned constitutional rights.

## COUNT VI
### Replevin
### (as against the Tow Companies only)

93.     Santander realleges and incorporates herein by reference to the allegations set forth in the prior points herein.

94.     Santander holds a valid lien in the Vehicle and is entitled to possession pursuant to its retail installment contract with the Customer.

95.     Santander has demanded that the Tow Companies surrender the Vehicle to Santander's possession.

96.     the Tow Companies have refused, and continue to refuse, to surrender the Vehicle to Santander's possession.

97.     Santander is entitled to an order requiring the Tow Companies to immediately turn over possession of the Vehicle to Santander.

## COUNT VII
### Conversion
### (as Against the Tow Companies only)

98.     Santander incorporates herein by reference the allegations set forth in the above paragraphs, as if fully set forth herein.

99.     Santander has a lien in the Vehicle, and in accordance with its rights under its retail installment contract with the Customer, has become entitled to immediate possession of the Vehicle.

100.    the Tow Companies have refused, and continues to refuse, to surrender possession of the Vehicle to Santander.

16

101.    By these actions, the Tow Companies have purposefully, knowingly and/or intentionally exercised dominion and control over the Vehicle, wrongfully interfering with Santander's rights to possession of the Vehicle.

102.    Santander has suffered, and continues to suffer, damages as a result of the Tow Companies' actions.

### COUNT VIII
### Tortious Interference
### (as Against the Tow Companies only)

103.    Santander incorporates herein by reference the allegations set forth in the above paragraphs, as if fully set forth herein.

104.    the Tow Companies' wrongful actions as set forth above constitute a knowing and intentional tortious interference with Santander's contractual relations and/or prospective economic advantage with respect to the Vehicle.

105.    Santander has suffered, and continues to suffer, damages as a result of the Tow Companies actions.

### COUNT IX
### New York State General Obligations Law 349
### (as Against the Tow Companies only)

106.    Santander incorporates herein by reference the allegations set forth in the above paragraphs, as if fully set forth herein.

107.    The repair and storage of automobiles is a consumer-oriented business as that business is highly regulated under V&T 398-a "to protect the consumers of the state…" Practices relative to the charging of repair and storage fees on automobiles and practices for collecting such fees are consumer-oriented practices.

17

108.    the Tow Companies hold a contract whereby it regularly tows vehicles at the direction of police within a set geographical location and the Tow Companies towed The Subject Vehicle under such contract.

109.    The Tow Companies' towing practices and practices for asserting liens for storage fees on towed vehicles potentially impact any consumer who is operating a vehicle within the geographic area for which the Tow Companies tows under its police contract.

110.    the Tow Companies habitually misrepresent to consumers that the consumer must pay an amount to redeem a vehicle towed under the Tow Companies' police contract that is grossly inflated and exaggerated.

111.    the Tow Companies habitually assert a garageman's lien against consumers and lienholders for such exaggerated storage fees relating to police requested towing even though the Tow Companies know that they have not complied with the requirements of the Lien Law needed in order for a lien to arise.

112.    the Tow Companies habitually misrepresent to consumers and lienholders that police authorization and a hold harmless agreement are required to redeem a vehicle that has been towed at the request of law enforcement, when nothing in the Lien Law permits a garage to impose such conditions.

113.    the Tow Companies habitually detain vehicles from consumers and lienholders based upon demands for police authorizations and hold harmless agreements.

114.    The Tow Companies' assertion of a garageman's lien and detention of vehicles is directly intended to alter the rights of the consumer owner and lienholder in the vehicle.

115.    The sums of money demanded by the Tow Companies in this case relate to the Tow Companies' handling of a consumer's vehicle which was being operated for personal, family or household use.

116.    Imposition of exaggerated or unwarranted fees on consumers satisfies the misleading element of GBL 349.

117.    Here, the Tow Companies, while operating a consumer-oriented business, including the towing and storage of consumer vehicles: a) imposed exaggerated and/or unwarranted storage fees relating to its handling of the subject vehicle; b) misrepresented that it had a garageman's lien when the Tow Companies did not follow the procedures needed to have a lien; c) misrepresented that a police release and hold harmless agreement were needed in order to redeem and recover the vehicle; d) detained The Subject Vehicle to force payment of its unwarranted fees.

118.    Concealing a supposedly increasing lien and ensuring that an interested party cannot then protect its interests is a deceptive practice.

119.    The Tow Companies have engaged in this deceptive practice of not disclosing the basis and amount of their purported lien so that interested parties, including Santander, can consider exercise of the redemption rights mandated by Lien Law 203.

120.    A finance company has standing to assert a GBL 349 cause of action where a garage has used charges generated from the garage's handling of a consumer vehicle to impede the finance company's right to take possession of that vehicle or damage the finance company's interest therein by thwarting the finance company's right to redeem.

121.    Here, the Tow Companies have directly damaged Santander by using the exaggerated and/or unwarranted fees generated from their handling of the subject consumer

vehicle, along with their non-monetary demands for a police release and hold harmless agreement, to deny possession of the vehicle to Santander, a vehicle worth thousands of dollars, which constitutes <u>direct pecuniary harm to Santander.</u>

122.    The Tow Companies have directly damaged Santander by using the exaggerated and/or unwarranted fees generated from their handling of the subject consumer vehicle to impede and deny Petitioner/Plaintiff's statutory right to redeem under Lien Law 203.

123.    The Tow Companies have directly damaged Santander by forcing Santander to incur legal fees to recover the vehicle and determine if there is any legitimate amount to be considered to redeem the vehicle under Lien Law 203. Being forced to incur attorney's fees to obtain mandatory disclosures and to access basic rights constitutes direct harm under GBL 349.

124.    Santander seeks actual damages, attorney's fees and treble damages as the Tow Companies' unlawful and deceptive practices were pursued with actual knowledge that they were wrongful.

125.    Wuestenhoefer is jointly and severally liable with the Tow Companies as he is the person in control of the Tow Companies and the person who asserted the Tow Companies' claims against The Subject Vehicle.

## **Prayers for Relief**

WHEREFORE, Santander requests that this Court:

A.    Grant judgment in favor of Santander and against Defendants on all causes of action asserted herein;

B.    Declare that Defendants violated Santander's rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution;

C.    Declare unconstitutional, in violation of the Fourth, Fifth and/or Fourteenth Amendments to the United States Constitution, Yonkers's policy and/or custom of effectuating the governmental purpose of clearing

motor vehicles from the roadway by compensating impound contractors with the property of others—namely, other persons' motor vehicles and, if appropriate, permanently enjoin such practices;

D.     Declare unconstitutional, in violation of the Fifth and Fourteenth Amendments, Yonkers's policy and/or custom of placing other person's motor vehicles into the possession of third party impound contractors, with no preexisting interest in those vehicles, without just compensation and without providing notice or an opportunity to be heard before a neutral decision maker regarding the propriety of Yonkers's actions in disposing of those vehicles and permanently enjoin such practices;

E.     Permanently enjoin the Tow Companies from detaining possession of motor vehicles it obtains as a result of its relationship with government entities, including the Tow Companies, without providing notice and a hearing whereat persons with protected interests may challenge the government entities' and/or the Tow Companies' actions and permanently enjoin restriction on lienholder rights to recover vehicles upon compliance with unilateral demands;

F.     Award Santander compensatory damages, consequential damages, and nominal damages against all Defendants, jointly and severally;

G.     Award Santander the cost of prosecuting this action together with attorney's fees pursuant to 42 U.S.C. §1988;

H.     Award compensatory damages, consequential damages, punitive damages, statutory treble damages, costs, and attorneys' fees against the Tow Companies, and in favor of Santander;

I.     Declare any reliance by Defendants on local law inconsistent with the within-described constitutional rights, and, therefore, declare that any such state or local law, to the extent determined applicable, to be unconstitutional as applied; and

J.     Award such other and different relief that the Court, in the exercise of its discretion, deems just and proper.

Dated: July 7, 2023

NORRIS, McLAUGHLIN, PA
Attorneys for Plaintiff

By: _/s/_ _Nicholas Duston_____
Nicholas A. Duston

7 Times Square, 21st Fl.
New York, NY 10036
naduston@norris-law.com
(908)-722-0700