## <u>UNITED STATES DISTRICT COURT</u>
## <u>SOUTHERN DISTRICT OF NEW YORK</u>

| | |
|---|---|
| SANTANDER CONSUMER USA, INC.,<br><br>    Plaintiff,<br><br> v.<br><br>THE CITY OF YONKERS, A.P.O.W TOWING LLC, and YONKERS TOWING RECOVERY LLC,<br><br>    Defendants. | Civil Action No.: 7:22-CV-08870-KMK |

---

**PLAINTIFF SANTANDER CONSUMER USA, INC.'S MEMORANDUM
OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST DEFENDANTS THE CITY OF YONKERS AND YONKERS TOWING
RECOVERY LLC**

---

<u>**TABLE OF CONTENTS**</u>

<u>**Page**</u>

TABLE OF AUTHORITIES ................................................................................... iii

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS ..................................................................................... 3

    I.     Santander's interest in the Vehicle. ....................................................... 3

    II.    Yonkers' regular policies and practices for seizing, retaining, and disposing of vehicles under its Vehicle Impounding policy. ................. 3

    III.   Yonkers' seizure of the Vehicle and turnover to Yonkers Tow. ........... 5

LEGAL ARGUMENT ........................................................................................... 7

    IV.    Summary Judgment should be granted where there are no genuine issues of material fact. ...................................................................... 7

    V.    Yonkers and Yonkers Tow are liable to Santander under 42 U.S.C. § 1983 for violating Santander's constitutionally protected rights in the Vehicle. ........... 7

        A.    To establish a claim under 42 U.S.C. § 1983, a plaintiff need only establish that a state actor deprived plaintiff of a constitutional right under color of law ................................. 8

        B.    Santander's lien rights in a motor vehicle are a protected property interest. ................................................................ 9

        C.    Santander is entitled to judgment as a matter of law regarding Defendants' deprivation of Santander's rights in the Vehicle without due process of law. .................................... 10

            i.    The law regarding the process due upon the seizure of a motor vehicle is well settled. ...................................... 10

            ii.    Yonkers's post-seizure Vehicle Impound Policy is unconstitutional per se because it fails to provide constitutionally adequate notice to lienholders. .......................... 12

            iii.    Yonkers's Program is unconstitutional per se because Yonkers has no procedure for providing a hearing following the seizure of a vehicle. ............................... 15

            iv.    Courts universally reject the concept of pretending a vehicle is abandoned as a constitutional work around. ............. 20

        D.    Yonkers unreasonably seized the vehicle in violation of the Fourth Amendment. ................................................. 22

i

E.      Yonkers took Santander's property for a public purpose without just compensation.................................................................... 25

VI.     Yonkers was the moving force behind the deprivation of Santander's constitutional rights.................................................................... 29

VII.    Yonkers Tow is liable as having acted under color of law. ................................. 32

VIII.   Santander's Damages and request for Declaratory Relief. ................................. 33

CONCLUSION.................................................................................................... 35

## <u>TABLE OF AUTHORITIES</u>

<u>**Page**</u>

### <u>FEDERAL CASES</u>

<u>Addante v. Vill. of Elmwood Park</u>,
    541 F. Supp. 497 (N.D. Ill. 1982) ............................................................................9

<u>Alexandre v. Cortez</u>,
    140 F.3d 406 (2d Cir. 1998)............................................................................1, 19

<u>Am. Honda Fin. Corp. v. City of Revere</u>,
    471 F. Supp. 3d 399 (D. Mass. 2020) ....................................................9, 12, 16, 31

<u>American Honda Fin. Corp. v. Twp. of Aston</u>,
    546 F. Supp.3d 371 (E.D. Pa. 2021) ................................................................ passim

<u>Anderson v. Liberty Lobby, Inc.</u>,
    477 U.S. 242 (1986)............................................................................................7

<u>Armstrong v United States</u>,
    364 U.S. 40 (1960)........................................................................................27, 29

<u>Bell v. Burson</u>,
    402 U.S. 535 (1971)..........................................................................................18

<u>Bello v. Rockland Cnty., New York</u>,
    846 Fed. Appx. 77 (2d Cir. 2021)........................................................................23

<u>Bennett v. Dutchess Cnty., N.Y.</u>,
    832 Fed. Appx. 58 (2d Cir. 2020)........................................................................23

<u>Bielevicz v. Dubinon</u>,
    915 F.2d 845 (3d Cir. 1990)................................................................................30

<u>Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n</u>,
    531 U.S. 288 (2001)..........................................................................................32

<u>Brewster v. Beck</u>,
    859 F.3d 1194 (9th Cir. 2017) ............................................................................22

<u>Brown v Legal Found. of Wash.</u>,
    538 U.S. 216 (2003)..........................................................................................28

<u>Burton v. Wilmington Parking Auth.</u>,
    365 U.S. 715 (1961)......................................................................................31, 33

<u>Butler v. Castro</u>,
    896 F.2d 698 (2d Cir. 1990)........................................................................1, 13, 15

Cabral v. City of New York,
    662 Fed. Appx. 11 (2d Cir. 2016) ....................................................................23

Carey v. Piphus,
    435 U.S. 247 (1978) ...............................................................................33, 34

Cedar Point Nursery v. Hassid,
    141 S. Ct. 2063 (2021) ................................................................................26

City of Canton, Ohio v. Harris,
    489 U.S. 378 (1989) ................................................................................8, 29

City of Los Angeles v. David,
    538 U.S. 715 (2003) .........................................................................14, 18, 19

City of Monterey v. Del Monte Dunes at Monterey, Ltd.,
    526 U.S. 687 (1999) ...................................................................................33

City of West Covina v. Perkins,
    525 U.S. 234 (1999) ...................................................................................12

Cleveland Bd. of Educ. v. Loudermill,
    470 U.S. 532 (1985) ....................................................................................9

Coe v. Armour Fertilizer Works,
    237 U.S. 413 (1915) ...................................................................................13

Coleman v. Watt,
    40 F.3d 255 (8th Cir. 1994) ..........................................................................14

Conn. v. Doehr,
    501 U.S. 1 (1991) .....................................................................................18

Craig v. Carson,
    449 F. Supp. 385 (M.D. Fla. 1978) ..............................................................13, 16

DCFS USA, LLC v. D.C.,
    803 F. Supp. 2d 29 (D.D.C. 2011) ...................................................................12

DeCastro v. The City of New York,
    278 F. Supp.3d 753 (S.D.N.Y. 2017) ................................................................12

Delaware & Hudson Ry. Co. v. Consol. Rail Corp.,
    902 F.2d 174 (2d Cir. 1990) ............................................................................7

Dow Jones & Co. v. Harrods, Ltd.,
    237 F. Supp. 2d 394 (S.D.N.Y. 2002) ...............................................................35

iv

Draper v. Coombs,
    792 F.2d 915 (9th Cir. 1986) ....................................................................31

E. Enters. v Apfel,
    524 U.S. 498 (1998)..................................................................................28

Fasciana v. Cnty. of Suffolk,
    996 F. Supp. 2d 174 (E.D.N.Y. 2014) .....................................................22

Ford Motor Credit Co. v. New York City Police Dep't,
    394 F. Supp. 2d 600 (S.D.N.Y. 2005)......................................................21

Ford Motor Credit Co. v. NYC Police Dep't,
    503 F.3d 186 (2d Cir. 2007).............................................................. passim

Foster v. City of Philadelphia,
    No. 12-cv-05851-PBT, 2014 WL 5821278 (E.D. Pa. Nov. 10, 2014) ....................................33

Frein v. Pa. State Police,
    47 F.4th 247 (3d Cir. 2022) ...............................................................24, 27

Fuentes v. Shevin,
    407 U.S. 67 (1972).............................................................................10, 17

Goichman v. Rheuban Motors, Inc.,
    682 F.2d 1320 (9th Cir. 1982) .................................................................14

Gomez v. Toledo,
    446 U.S. 635 (1980)....................................................................................8

Harrell v. City of New York,
    138 F. Supp. 3d 479 (S.D.N.Y. 2015)................................................18, 25

Henry v. City of Middletown, Ohio,
    655 Fed. Appx. 451 (6th Cir. 2016), abrogated by Griffith v. Comm'r of Soc.
    Sec., 987 F.3d 556 (6th Cir. 2021)......................................................21, 31

Hernandez v. European Auto Collision, Inc.,
    487 F.2d 378 (2d Cir. 1993)......................................................................15

Huemmer v. Mayor & City Council of Ocean City,
    632 F.2d 371 (4th Cir. 1980) ...................................................................33

HVT, Inc. v. Port Auth. of N.Y. & N.J.,
    No. 15-CV-5867-MKB-VMS, 2018 WL 3134414 (E.D.N.Y. Feb. 15, 2018) ............... passim

Ill. v. Caballes,
    543 U.S. 405 (2005)..................................................................................22

In re Metmor Financial, Inc.,
    819 F.2d 446 (4th Cir.1987) ...................................................................................29

Jeanty v. City of Yonkers,
    No. 18-cv-5920-KPF, 2021 WL 276553 (S.D.N.Y. Jan. 27, 2021) ........................................34

Jenkins v. United States,
    71 F.4th 1367 (Fed. Cir. 2023) ...................................................................................28

John Corp. v City of Houston,
    214 F.3d 573 (5th Cir. 2000) ...................................................................................28

Johnson v. Bradshaw,
    772 F. Supp. 501 (D. Nev. 1991), aff'd, 5 F.3d 537 (9th Cir. 1993) ........................................31

Kerr v. Morrison,
    664 Fed. Appx. 48 (2d Cir. 2016) ...................................................................................23

Knick v. Twp. of Scott, Pa.,
    139 S. Ct. 2162 (2019) ...................................................................................26, 29

Koontz v St. Johns River Water Mgmt. Dist.,
    570 U.S. 595 (2013) ...................................................................................28

Krimstock v. Kelly,
    306 F.3d 40 (2d Cir. 2002) ...................................................................................1, 22, 23

Krimstock v. Kelly,
    464 F.3d 246 (2d Cir. 2006) ...................................................................................1

Ky. Dept. of Corrs. v. Thompson,
    490 U.S. 454 (1989) ...................................................................................10

Lavan v. City of Los Angeles,
    693 F.3d 1022 (9th Cir. 2012) ...................................................................................12

Lee. U.S. v. Burgard,
    675 F.3d 1029 (7th Cir. 2012) ...................................................................................23

Lee v. City of Chicago,
    330 F.3d 456 (7th Cir. 2003) ...................................................................................23, 24

Lee v. NNAMHS,
    2007 WL 2462616 (D. Nev. Aug. 28, 2007) ...................................................................................31

Lingle v. Chevron U.S.A. Inc.,
    544 U.S. 528 (2005) ...................................................................................26

Loretto v. Teleprompter Manhattan CATV Corp.,
    458 U.S. 149 (1982)................................................................................26

Manuel v. City of Joliet, Ill.,
    137 S. Ct. 911 (2017)..........................................................................22, 23

Mathews v. Eldridge,
    424 U.S. 319 (1976)....................................................................16, 18, 20

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,
    475 U.S. 574 (1986)..................................................................................7

McClendon v. Rosetti,
    460 F.2d 111 (2d Cir. 1972)...............................................................1, 19

McKee v. Heggy,
    703 F.2d 479 (10th Cir. 1983) ................................................................21

Memphis Light, Gas & Water Div. v. Craft,
    436 U.S. 1 (1978)..............................................................................13, 15

Mennonite Bd. of Missions v. Adams,
    462 U.S. 791 (1983)..................................................................................9

Monell v. Dep't of Soc. Servs. of City of New York,
    436 U.S. 658 (2000).....................................................................8, 29, 30

Morgan v. Wofford,
    472 F.2d 822 (5th Cir. 1973) ..................................................................18

Mullane v. Cent. Hanover Bank & Tr. Co.,
    339 U.S. 306 (1950)........................................................................13, 15

Nat'l Collegiate Athletic Ass'n v. Tarkanian,
    488 U.S. 179 (1988)................................................................................32

Nnebe v. Daus,
    931 F.3d 66 (2d Cir. 2019)......................................................................13

Oberhausen v. Louisville-Jefferson Cnty. Metro Gov't,
    527 F. Supp. 2d 713 (W.D. Ky. 2007).....................................................14

Ochoa v. Hernandez y Morales,
    230 U.S. 139 (1912)..................................................................................2

Owen v. City of Indep., Mo.,
    445 U.S. 622 (1980)................................................................................30

Propert v. D.C.,
948 F.2d 1327 (D.C. Cir. 1991) .................................................................... passim

Ridge Line, Inc. v. U.S.,
346 F.3d 1346 (Fed. Cir. 2003) ...................................................................... 26

Rosemont Taxicab Co. v. Philadelphia Parking Auth.,
327 F. Supp. 3d 803 (E.D. Pa. 2018) .............................................................. 25

Santander Consumer USA, Inc. v. City of Yonkers,
2022 WL 4134718 (S.D.N.Y. Sept. 12, 2022) ..................................... 11, 12, 22, 24

Santander Consumer USA, Inc., v. The City of Yonkers,
No. 20-CV-04553-KMK (S.D.N.Y. Aug. 17, 2021) .................................... 11, 24

Santander Consumer USA, Inc. v. Cnty. of Nassau,
623 F. Supp. 3d 6 (E.D.N.Y 2022) ......................................................... 9, 13, 15, 16

Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.,
363 F.3d 177 (2d Cir. 2004) ............................................................................ 23

Smith v. Insley's Inc.,
499 F.3d 875 (8th Cir. 2007) .......................................................................... 32

Stanley v Ill.,
405 U.S. 645 (1972) ........................................................................................ 18

Stypmann v. City & Cnty. of San Francisco,
557 F.2d 1338 (9th Cir. 1977) ................................................................... 14, 33

Sutton v. City of Milwaukee,
672 F.2d 644 (7th Cir. 1982) .......................................................................... 14

Sybalski v. Indep. Grp. Home Living Program, Inc.,
546 F.3d 255 (2d Cir. 2008) ........................................................................... 32

Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,
535 U.S. 302 (2002) .................................................................................. 26, 28

TD Auto Fin. LLC v. Cnty. of Putnam,
No. 21-cv-9080-AEK, 2023 WL 6295116 (S.D.N.Y. Sept. 27, 2023) ........... 16, 35

Tedeschi v. Blackwood,
410 F. Supp. 34 (D. Conn. 1976) .................................................................... 31

Toyota Lease Tr. v. Vill. of Freeport,
No. 20-cv-2207-DG-SIL, 2023 WL 4443992 (E.D.N.Y. Jan. 24, 2023) ........... 22

Toyota Lease Trust v. The City of Yonkers,
No. 19-cv-03199-CS-PED (S.D.N.Y. Apr. 10, 2019), ECF No. 1 ..........................................24

Tulsa Prof'l Collection Services v. Pope,
485 U.S. 478 (1988)..........................................................................................................12

Tyler v. Hennepin Cnty., Minn.,
598 U.S. 631 (2023)...........................................................................................20, 21, 26, 27

U.S. v. Jacobsen,
466 U.S. 109 (1984)..........................................................................................................22

U.S. v. James Daniel Good Real Prop.,
510 U.S. 43 (1993)...............................................................................................10, 17, 18

U.S. v. Pewee Coal Co.,
341 U.S. 114 (1951)..........................................................................................................26

U.S. v. Premises Known as 608 Taylor Ave., Apartment 302, Pittsburgh, Pa.,
584 F.2d 1297 (3d Cir. 1978)............................................................................................25

U.S. v. VERTOL H21C, Reg. No. N8540,
545 F.2d 648 (9th Cir. 1976) ............................................................................................25

United Sates v Indus. Bank,
459 U.S. 70 (1982)............................................................................................................27

W. Funding, Inc. v. S. Shore Towing, Inc.,
No. 19-cv-12853-FLW-TJB, 2021 WL 1399798 (D.N.J. Apr. 14, 2021) ..............................33

Webb's Fabulous Pharmacies, Inc. v Beckwith,
449 U.S. 155 (1980)..........................................................................................................28

West v. Atkins,
487 U.S. 42 (1988)............................................................................................................30

Zinermon v. Burch,
494 U.S. 113 (1990)..........................................................................................................23

## STATE CASES

SK Global Am., Inc. v. John Roberts, Inc.,
6 A.D.3d 179 (1st Dept. 2004)..........................................................................................10

## FEDERAL STATUTES

22 U.S.C. § 2201..............................................................................................................34

42 U.S.C. § 1983.......................................................................................................... passim

## STATUTES

N.Y. Penal Law § 165.05 ................................................................................................32

NY UCC § 9-603 .............................................................................................................9

NY UCC § 9-609(a)(1) .....................................................................................................9

## REGULATIONS

15 NYCRR 18.6 (a) (1).....................................................................................................5

## RULES

CPLR §§ 5001, 5004........................................................................................................34

Fed. R. Civ. P. 56(a) .........................................................................................................7

Federal Rule 30(b)(6)......................................................................................................15

## CONSTITUTIONAL PROVISIONS

U.S. Const. Amendment IV .................................................................................. passim

U.S. Const. Amendment V .................................................................................... passim

U.S. Const. Amendment XIV ................................................................................ passim

## <u>OTHER AUTHORITIES</u>

*Deem*, BLACK'S LAW DICTIONARY (11th ed. 2019).........................................................................20

*Impound*, BLACK'S LAW DICTIONARY (11th ed. 2019)...............................................................32

Restatement (Second) of Torts § 927 (1979)..............................................................................34

Plaintiff Santander Consumer USA, Inc. ("Santander") submits this Memorandum of Law in support of its motion for partial summary judgment against Defendants The City of Yonkers ("Yonkers") and Yonkers Towing and Recovery LLC ("Yonkers Tow").

## PRELIMINARY STATEMENT

For more than fifty (50) years, the Second Circuit[1] has consistently instructed cities in New York that when they seize property (including vehicles), they must notify all persons with interests in those seized vehicles and provide those persons with the opportunity for some kind of hearing where they may dispute the seizure and conditions placed on the release of those vehicles. These holdings are due process at its most basic.

This case arises because Yonkers refuses to afford basic due process protections to lienholders who are deprived of property rights through Yonkers' "Vehicle Impounding and Inventory Searches" policy.[2] Under Yonkers's Vehicle Impounding Policy, Yonkers regularly seizes vehicles but does not have a policy, custom or practice that include the provision of notice and the opportunity for a hearing to lienholders with publicly recorded interests in vehicles subjected to the Vehicle Impounding Policy. It is undisputed that the Vehicle Impounding Policy does not (a) require a search for lienholders, nor (b) require giving lienholders constitutionally appropriate notice that a vehicle has been seized under the policy, nor (c) provide a procedure for a constitutionally adequate opportunity for a post-seizure hearing.  Rather, Yonkers's Vehicle Impound Policy suggests—but does not require—notice be transmitted to lienholders which states, in essence, that if the lienholder disagrees with a vehicles' seizure or conditions for its release, the

---

[1] These include: <u>McClendon v. Rosetti</u>, 460 F.2d 111 (2d Cir. 1972); <u>Alexandre v. Cortez</u>, 140 F.3d 406 (2d Cir. 1998); <u>Butler v. Castro</u>, 896 F.2d 698 (2d Cir. 1990); <u>Krimstock v. Kelly</u>, 306 F.3d 40 (2d Cir. 2002); <u>Krimstock v. Kelly</u>, 464 F.3d 246 (2d Cir. 2006); and <u>Ford Motor Credit Co. v. NYC Police Dep't</u>, 503 F.3d 186 (2d Cir. 2007).

[2] Yonkers describes this relevant policy relating to vehicles impounded incident to an arrest as the "Vehicle Impounding and Inventory Searches" policy.  <u>See</u> Santander Statement of Material Facts ("SMF"), ¶ 16 (citing Duston Decl. Ex. 10) (hereafter the "Vehicle Impounding Policy").

lienholder should sue Yonkers, but must do so quickly or be deemed to have waived all rights.[3] Such a policy fails to comply with basic Fourteenth Amendment jurisprudence.

Over a hundred years ago, the Supreme Court rejected the *ex parte* disposal of property by giving it away without due process, stating: "Whatever else may be uncertain about the definition of the term 'due process of law,' all authorities agree that it inhibits the taking of one man's property and giving it to another . . . without notice or an opportunity for a hearing."[4]  Many years ago the Second Circuit made it clear this basic concept includes lienholders with interests in seized vehicles.[5]  Quite simply, Yonkers' no-notice, no-hearing confiscatory policy is unconstitutional.

Furthermore, it is Yonkers' policy to deem vehicles to have been abandoned when those with pre-existing interests fail to pay Yonkers's towing company (and thereby fund Yonkers's law enforcement efforts).  Once "deemed" to have been abandoned, Yonkers gives seized vehicles to the towing company who provided towing services to Yonkers to assist with Yonkers's seizure of that vehicle.   Yonkers provides the predicate "abandonment" paperwork which the towing company uses to obtain a new title in the towing company's name, free from any pre-existing liens. In this manner, Yonkers's policy violates the Fourth Amendment's prohibition on unreasonable seizures, turning a temporary detention incident to arrest into a permanent deprivation with no connection to that arrest whatsoever.  Similarly, Yonkers's policy violates the Fifth Amendment takings' clause, using a lienholder's collateral to pay Yonkers's towing company for services the towing company has rendered to Yonkers (a healthy portion of which is paid by the tow company **back** to Yonkers for the privilege of assisting Yonkers with its police tows).

There are no disputes of fact relating to Yonkers's subjecting the 2018 Land Rover bearing VIN SALVP2RX8JH267217 (the "Vehicle") to its Vehicle Impounding Policy.  Yonkers took that

---

[3] See SMF, ¶¶ 36-37, quoting Duston Decl., Ex. 16 (Yonkers's optional notification letter).
[4] Ochoa v. Hernandez y Morales, 230 U.S. 139, 161 (1912).
[5] Ford Motor Credit, 503 F. 3d at 186.

vehicle into custody, failed to provide constitutionally adequate notice or opportunity for a hearing to Santander, and then disposed of the vehicle *ex parte* by deeming it abandoned and giving it to a towing company ("Yonkers Tow"), who then retitled it without Santander's lien and sold it for its own profit. All of this was done without any opportunity for a hearing being afforded to Santander.

No material fact is genuinely disputed. Yonkers does not claim that its actions in seizing and disposing of the Vehicle were mistaken or unauthorized. Rather, Yonkers and Yonkers Tow staunchly assert that everything that they did with the Vehicle happened exactly as it should under Yonkers' "Vehicle Impounding" policy.  Accordingly, this matter is ripe for adjudication as a matter of law, and the Court should grant Santander's Motion for Summary Judgment.

## STATEMENT OF FACTS

## I.     Santander's interest in the Vehicle.

By virtue of non-party Shamar Turner's (the "Customer") purchase of the Vehicle, Santander obtained a lien in the Vehicle. See SMF, ¶¶ 5-10. Santander perfected its lien on or about June 9, 2021. Id. at ¶ 9.  By virtue of Yonkers' seizure of the vehicle on or about June 15, 2021, and by virtue of the tow company's detention of the Vehicle and demand for payment of its towing and storage fees, the Customer defaulted on the non-monetary terms of the Customer's agreement with Santander, entitling Santander to immediate possession of the Vehicle. Id. at ¶ 11. In or about July 2021, the Customer also defaulted on the payment terms of the relevant security agreement, thereby further entitling Santander to repossess the Vehicle.  Id.

As of June 18, 2021, Santander discovered that the Vehicle was impounded and began its efforts to regain possession of the Vehicle from the impound.  Id. at ¶ 19.

## II.    Yonkers' regular policies and practices for seizing, retaining, and disposing of vehicles under its Vehicle Impounding policy.

Yonkers' conduct in relation to the Vehicle complied with its standard policies, practices and customs for the seizure, detention, and disposition of vehicles seized under its Vehicle

Impounding Policy.  <u>See</u> SMF, ¶ 31. That Impound Policy involves Yonkers contracting with companies like Yonkers Tow—who *pay* an eye-popping $88,200 annually to work for Yonkers— to be on Yonkers's rotation tow list.  <u>Id.</u> at ¶ 33. Paying Yonkers permits Yonkers Tow to provide Yonkers with towing and storage services in conjunction with police arrests.  <u>Id.</u> at ¶ 33. Being on the "rotation tow program" means Yonkers Tow gets called when the police want a vehicle towed. <u>Id.</u> Yonkers then allows Yonkers Tow (under Yonkers's police authority) to assert a possessory lien on towed vehicles and to either collect fees from *others* or, ultimately, sell the impounded vehicles and retain the proceeds.  <u>Id.</u> This is how Yonkers Tow recoups the $88,200 it pays Yonkers for the privilege of serving Yonkers.  <u>Id.</u>

Yonkers' Vehicle Impound Policy requires that, following the tow of a vehicle, the Yonkers police send a notice solely to the "registered owner" that informs the owner of the tow. But, Yonkers' policy does not require notice to lienholders. Instead, the policy is that the notice to lienholders is optional, at the whim of the arresting officer. <u>Id.</u> at ¶ 36. And, even if Yonkers were to send its essentially "optional" notification to lienholders, Yonkers's notification would be deficient.  SMF, ¶ 37.  Yonkers has no policy for affording the opportunity for hearings relating to vehicles taken into custody; rather, its policy is to inform persons with interests in seized vehicles that they must either convince the County District Attorney to commence a hearing, or else sue Yonkers in New York Supreme Court, to obtain a hearing.  <u>Id.</u> at ¶¶ 34, 37.  Absent someone *other than Yonkers* commencing a proceeding, it is Yonkers's policy to force a lienholder who wishes to recover a vehicle to obey Yonkers's list of demands, including giving Yonkers a hold harmless agreement and paying the fees demanded by Yonkers' contracted tow company. <u>Id.</u> at ¶¶ 39-40.

Yonkers' policy is that if a lienholder does not comply with these *ex parte* demands, the vehicle will be "deemed abandoned."  <u>Id.</u> at ¶¶ 38, 41.  Considering a vehicle to be "deemed abandoned" is a euphemism for "pretending" the vehicle has been abandoned, when it is not,

simply because a person with property interests in that vehicle does not agree to the unilaterally demanded conditions for its release. Once Yonkers has "deemed abandoned" a particular vehicle, its police dispose of that vehicle by providing the tow company (in this case, Yonkers Tow) with the paperwork necessary to re-title the vehicle[6] to the towing company, which then sells the vehicle to cover its towing, storage and auction costs (as well as to cover the $88,200 annual fee it pays back to Yonkers for the right to provide services to Yonkers). SMF, ¶ 41.

### III.  Yonkers' seizure of the Vehicle and turnover to Yonkers Tow.

Yonkers is a municipality. Yonkers uses Yonkers Tow as its towing contractor when it seizes vehicles following the arrest of the drivers. Under its contract with Yonkers, Yonkers Tow tows vehicles when summoned by the Yonkers Police. See id. at ¶ 33. Rather than compensating Yonkers Tow, Yonkers authorizes Yonkers Tow to seek payment for the services Yonkers Tow's provides Yonkers from others. Id. Yonkers does not provide any notice or opportunity for a hearing relating to the fees Yonkers Tow charges for the recovery of seized vehicles. Id. at ¶ 34.

Yonkers seized the Vehicle on June 15, 2021, as part of the arrest of Shamar Turner for the charge of driving while intoxicated. Id. at ¶ 14. Neither Santander nor its Customer requested Yonkers Tow to tow the Vehicle; a Yonkers police officer requested the tow and authorized Yonkers Tow to tow the Vehicle in accordance with Yonkers' ordinary policy for impounding vehicles involving arrests. Id. at ¶¶ 15-16. Yonkers did not obtain a warrant and asserts that no warrant is required for any of the actions it took with respect to the Vehicle. Id. at ¶ 17. Yonkers did not thereafter obtain a detention order or other judicial directive, or otherwise arrange for any hearing, regarding the continued detention of the Vehicle or the turnover of the Vehicle to Yonkers Tow. SMF, ¶ 18.

---

[6] The New York State Department of Motor Vehicles Regulations of the Commissioner, 15 NYCRR 18.6 (a) (1), provide a bill of sale form for purposes of transferring unencumbered title from a government authority.

Yonkers took no action to determine whether there were any lienholders with property interests in the Vehicle at the time it was seized, and sent no notification to Santander of the initial seizure of the Vehicle, which inaction accorded with its Vehicle Impound policy.  SMF, ¶ 22 (first written notice sent by Yonkers Tow on APOW letterhead); id. at ¶ 28 (Yonkers first written notification to Santander sent more than 60 days after the impound).  As of June 18, 2021, Santander became aware the Vehicle had been impounded and sought to retain possession.  Id. at ¶¶ 19-20.  Defendants asserted their ordinary policy and refused to release the Vehicle unless Santander complied with Yonkers and YTR's ordinary demands, per their regular policies.  Id. at ¶ 21.  Specifically, Yonkers Tow required a police release from Yonkers and storage fees to be paid, and Yonkers would not provide the police release without a hold harmless agreement and other paperwork.  Id.  Yonkers Tow confirmed its demand for fees in letters sent to Santander.  Id. at ¶¶ 22-24.

Santander did not agree to comply with these demands.  Id. at ¶ 27.  Accordingly, Yonkers transmitted a letter to Santander stating that the vehicle "will be disposed of" in 10 days if Santander did not "claim" the Vehicle.  SMF, ¶ 28.  The Yonkers Police subsequently "deemed" the Vehicle to have been abandoned, and began to facilitate Yonkers Tow's taking of title and sale of the Vehicle.  Id. at ¶ 30.  Around September 2022, Yonkers Tow then sold the Vehicle and kept all of the $22,000 proceeds for itself.  Id.  Although required to do so in discovery, Yonkers Tow has refused to reveal the exact amount of money it obtained by selling the Vehicle.

The Vehicle's value the day after seizure—June 16, 2021—was approximately $33,318.  Id. at ¶¶ 43-45.

## LEGAL ARGUMENT

**IV.** **Summary Judgment should be granted where there are no genuine issues of material fact.**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," see Fed. R. Civ. P. 56(a), and "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphases in original). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. A fact is material if it "might affect the outcome of the suit under the governing law." Id. The non-moving party cannot rest on mere pleadings or allegations, and conclusory objections will not defeat a motion for summary judgment. Delaware & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177-78 (2d Cir. 1990).

**V.** **Yonkers and Yonkers Tow are liable to Santander under 42 U.S.C. § 1983 for violating Santander's constitutionally protected rights in the Vehicle.**

The parties do not genuinely dispute the material facts, and this matter is therefore ripe for summary judgment. Yonkers seized the Vehicle and treated it in accordance with its regular Vehicle Impounding Policy and practices. Santander's claims are supported by an undisputed series of events (or non-events):

- Yonkers's policy is to **not** to require notification to lienholders of the initial seizure; under Yonkers's Impounding Policy, notification to lienholders is optional and did not occur here;

- Yonkers does **not** have a procedure for affording the opportunity for hearings relative to any of its actions under the Impounding Policy; instead, Yonkers's policy is to tell persons with interests in impounded vehicles that if they wish to challenge Yonkers's actions, they must sue Yonkers to obtain a hearing;

- Yonkers's policy is that to recover a vehicle, an owner or lienholder must obtain a police release, provide a hold harmless agreement, and pay the towing and storage fees demanded by the towing company who holds the vehicle for Yonkers;

- Yonkers's policy is to "deem" (*i.e.* pretends) that vehicles are abandoned where claimants do not obtain a police release, provide a hold harmless agreement, and pay Yonkers's contracted tow company; and

- Yonkers's policy is to compensate Yonkers Tow or similar tow companies by turning over possession of seized vehicles in lieu of Yonkers paying the tow company money, then permitting and facilitating the tow company's collection of money from others and/or its eventual sale of impounded vehicles.  Yonkers receives a substantial portion of the proceeds collected by the tow company as part of its contract with the tow company. Yonkers's contract guarantees that Yonkers Tow or other tow companies will demand money in exchange for possession of seized vehicles, which arrangement subordinates prior perfected liens in favor of a *de facto* lien for Yonkers Tow's towing and storage charges.

- Yonkers's policy is to have no notice or hearing relating to turnover of possession to the tow company, or the accrual of charges, or the eventual sale of the vehicle.

Defendants' practices regarding seized vehicles violate the Fourth, Fifth and Fourteenth Amendments, and these practices caused an unconstitutional deprivation of Santander's rights.

**A.    To establish a claim under 42 U.S.C. § 1983, a plaintiff need only establish that a state actor deprived plaintiff of a constitutional right under color of law.**

Federal law provides a cause of action against any person acting under color of law who deprives "any citizen of the United States... of any rights, privileges, or immunities secured by the Constitution...." 42 U.S.C. § 1983.  A plaintiff must show (1) conduct under color of law, which (2) deprived the plaintiff of a protected right.  Gomez v. Toledo, 446 U.S. 635, 640 (1980).  For a government entity (like Yonkers), a plaintiff must also show that a policy or custom was the "moving force" behind the violation.  City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989) (discussing Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 693-94 (2000)) (internal citation omitted).

8

Yonkers' purported compliance with state law is irrelevant.  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985) ("the right to due process is conferred, not by legislative grace, but by constitutional guarantee...."). "Deprivation of due process may be effected by compliance—as well as by non-compliance—with a state statute. Statutes as well as people must live up to the Due Process Clause." Addante v. Vill. of Elmwood Park, 541 F. Supp. 497, 498 (N.D. Ill. 1982) (finding the argument that defendants complied with a state statute regarding towing and impounding a vehicle to be "without merit").

The analysis at issue here rests solely on whether Defendants deprived Santander of a constitutionally protected right through the Vehicle Impound policy.   They did.

**B.      Santander's lien rights in a motor vehicle are a protected property interest.**

Santander satisfies the first stage of the analysis, because a lien is a protected property interest.  See Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 800 (1983) (requiring due process for "any party" whose interests will be adversely affected).  This includes liens in motor vehicles.  See, e.g. Ford Motor Credit, 503 F.3d at 194 (finding a lienholder's "interest in the present value of a seized vehicle" to be "considerable."). "[W]hile courts have acknowledged that the owner of a seized vehicle is most negatively affected by its loss, lienholders . . . have an equally valid interest. . . ." Am. Honda Fin. Corp. v. City of Revere, 471 F. Supp. 3d 399, 406 (D. Mass. 2020); Santander Consumer USA, Inc. v. Cnty. of Nassau, 623 F. Supp. 3d 6, 19 (E.D.N.Y 2022); American Honda Fin. Corp. v. Twp. of Aston, 546 F. Supp.3d 371, 380 (E.D. Pa. 2021).

Lienholders have both contractual rights and rights in the value of the collateral itself, *i.e.* the seized vehicles.  Ford Motor Credit, 503 F. 3d at 191.  A lienholder has a right to the present value of a seized vehicle "as of the time the City seized the vehicle." Id.  A lienholder's contractual rights, also protected by statute, includes the right to repossess upon default. NY UCC § 9-603 (the parties to a security agreement may define default); NY UCC § 9-609(a)(1) (secured creditor

may take possession upon default); <u>see also</u> SMF ¶¶ 11-12 (defining default as to this particular Vehicle and outlining Santander's repossession rights upon default).  The contractual repossession right, protected by the UCC, may be asserted against a third party who refuses to return the collateral. <u>SK Global Am., Inc. v. John Roberts, Inc.</u>, 6 A.D.3d 179, 180 (1st Dept. 2004).

**C.     Santander is entitled to judgment as a matter of law regarding Defendants' deprivation of Santander's rights in the Vehicle without due process of law.**

A due process claim implicates a two-stage analysis; first, the court determines whether the asserted individual interests are encompassed within the Fourteenth Amendment's protection, and second, the court determines what procedures constitute due process of law. <u>Ky. Dept. of Corrs. v. Thompson</u>, 490 U.S. 454, 460 (1989).  Santander meets the first prong.  <u>See</u> Legal Argument <u>supra</u> Part II(B). The question then remains whether Yonkers's policies provide due process of law. Yonkers' policy fails this analysis for several reasons.

> ***i.     The law regarding the process due upon the seizure of a motor vehicle is well settled.***

In 1972, the Supreme Court stated, "it is now well settled that a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment." <u>Fuentes v. Shevin</u>, 407 U.S. 67, 84–85 (1972).  Therefore, even a temporary delay in regaining possession of a vehicle constitutes a deprivation of a lienholder's due process rights.  <u>Ford Motor Credit</u>, 503 F.3d at 192.  "[I]ndividuals must receive notice and opportunity to be heard before the Government deprives them of property."  <u>U.S. v. James Daniel Good Real Prop.</u>, 510 U.S. 43, 48 (1993) (citing <u>Mathews v. Eldridge</u>, 424 U.S. 319, 348-49 (1976)).

All Courts to have considered the process due in the context of seized vehicles have uniformly required post-seizure notice and a hearing, at a minimum.  <u>See</u> <u>Propert v. D.C.</u>, 948 F.2d 1327, 1332 (D.C. Cir. 1991).  The procedures must:

> [A]t a minimum... include that the notice must be sent to titled owners, registered owners and record lienholders of the seized vehicles...; that notice must be sent

promptly after the seizure; that notice must clearly provide an opportunity for a
hearing; and that the government must be responsible for arranging… the hearing....

HVT, Inc. v. Port Auth. of N.Y. & N.J., No. 15-CV-5867-MKB-VMS, 2018 WL 3134414, at *9

(E.D.N.Y. Feb. 15, 2018) (internal citations omitted), rept. and rec. adopted, 2018 WL 1409821

(E.D.N.Y. Mar. 21, 2018).  These requirements apply to any vehicle, "whether illegally parked,

**abandoned**, or junked." Propert, 948 F. 2d at 1332 (emphasis added).

Yonkers has already admitted that its no-notice, no-hearing policy for addressing

lienholders' rights in vehicles seized for violations of law is constitutionally deficient and must be

reformed.  Specifically, Yonkers allowed judgment to be entered requiring Yonkers to afford

lienholders notice and the opportunity to be heard relative to vehicles seized by Yonkers:

> Judgment is entered against Yonkers requiring Yonkers to further revise the
> Defendant City's Code at Chapter 109-132 and any other releated provisions and
> practices to provide for prompt notice of towing or removal as well as an
> opportunity to be heard before a person or party independent of the Defendant City
> to any… lien holder [sic] of any motor vehicle being towed or removed for non-
> payment of parking tickets or other violations of law or Code or otherwise amend
> the aforesaid City Code to reflect all current legal requirements.

Judgment, Santander Consumer USA, Inc., v. The City of Yonkers, No. 20-CV-04553-KMK

(S.D.N.Y. Aug. 17, 2021), ECF No. 191.  This Court subsequently ruled in the very same case that

forcing a party with an interest in a seized vehicle to "t[ake] it upon herself to go… and request

the hearing" is insufficient to comply with due process.  Santander Consumer USA, Inc. v. City of

Yonkers, 2022 WL 4134718 at *9 (S.D.N.Y. Sept. 12, 2022) (citing HVT, 2018 WL 3134414, at

*11).  The entry of that judgment, as well as the prior ruling, has collateral estoppel effect

precluding Yonkers from arguing that its no-notice, no-hearing policy requiring lienholders to sue

11

Yonkers to obtain a hearing, is constitutionally adequate.[7] <u>DeCastro v. The City of New York</u>, 278 F. Supp.3d 753, 763-65 (S.D.N.Y. 2017).

> ### ii. *Yonkers's post-seizure Vehicle Impound Policy is unconstitutional* **per se** *because it fails to provide constitutionally adequate notice to lienholders.*

"[W]hen law enforcement agents seize property..., due process requires them to take reasonable steps to give notice that the property has been taken." <u>City of West Covina v. Perkins</u>, 525 U.S. 234, 240 (1999). As the Ninth Circuit colorfully summarized this requirement: "[t]he government may not take property like a thief in the night; rather, it must announce its intentions and give the property owner a chance to argue against the taking." <u>Lavan v. City of Los Angeles</u>, 693 F.3d 1022, 1032 (9th Cir. 2012); <u>see also</u> <u>Tulsa Prof'l Collection Services v. Pope</u>, 485 U.S. 478, 484 (1988) ("state action affecting property must generally be accompanied by notification of that action…"). Thus, seizing authorities are required to notify lienholders of vehicle seizures *at least* shortly after initially taking a vehicle into custody. <u>See</u> <u>West Covina</u>, 525 U.S. at 240 (finding individualized notice to be required because there would be "no other reasonable means of ascertaining who was responsible for [the] loss."); <u>see also</u> <u>HVT</u>, 2018 WL 3134414 at *14-15; <u>Revere</u>, 471 F. Supp. 3d at 407; <u>Aston</u>, 546 F. Supp. 3d at 381.

Santander's lien was publicly recorded. <u>See</u> SMF, ¶¶ 8-9. Yonkers was therefore obligated to search for and identify Santander's publicly recorded interest. <u>DCFS USA, LLC v. D.C.</u>, 803 F. Supp. 2d 29, 43 (D.D.C. 2011). Yet, Yonkers confirms that its official policy is to *solely* notify

---

[7] Yonkers Tow has made much ado—and no doubt will again nonsensically make much ado—about this action involving a seizure incident to arrest while the prior litigation was a "parking" case. Yonkers Tow has not explained, nor will it be able to explain, why the due process analysis is altered in a so-called "parking" case or why a seizure incident to arrest is different. That's because the analysis isn't different. <u>Propert</u>, 948 F.2d at 1332. And the prior judgment against Yonkers, and prior ruling against Yonkers and Yonker's Tow's predecessor, APOW, is similarly not limited to any specific peculiarity of a "parking" seizure. <u>Santander Consumer USA, Inc. v. City of Yonkers</u>, 2022 WL 4134718 at *9 ("Defendants seized the Vehicle without a warrant, notice, or a pre-deprivation hearing…Thus… Defendants' warrantless sizure of the Vehicle violated the Fourth and Fourteenth Amendments.")

the "registered owner," and notice to the lienholder is not required (but is optional at the whim of the arresting officer). See SMF, ¶ 36.

Any claim that optional notice to lienholder satisfies due process fails outright.

First, the Supreme Court has held that to satisfy due process, notice "must be provided as an integral part of the statutory provisions and not awarded as a mere matter of favor or grace." Coe v. Armour Fertilizer Works, 237 U.S. 413, 424 (1915); Aston, 546 F. Supp. 3d at 381 ("A delay of twenty-five days before even attempting to notify lienholders simply does not comport with due process"); Nassau, 623 F. Supp. 3d at 17 ("delays and conditions for release can interfere with a lienholder's property interest in collateral and its ability to enforce a lien").

Second, neither Yonkers Tow nor Yonkers provide notice *of a hearing*, which does not exist; at most they provide notification of their unilateral demands. Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 14 (1978) ("notification procedure, while adequate to apprise [property owner] of the threat... was not 'reasonably calculated' to inform them of the availability of 'an opportunity to present their objections'") (quoting Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950)); Butler v. Castro, 896 F.2d 698, 703 (2d Cir. 1990) (Second Circuit already ruling that a city's policy of failing to publish procedure for hearing, and failing to send notice informing property owner of procedure for hearing, violated due process); Craig v. Carson, 449 F. Supp. 385, 395 (M.D. Fla. 1978) (stating that where "the notice is merely of a *fait accompli*," it does not satisfy due process).

For these reasons alone, summary judgment should be granted finding that Yonkers' Vehicle Impounding policy, as well as Yonkers' seizure of this Vehicle, to have been unconstitutional. Nnebe v. Daus, 931 F.3d 66, 88 (2d Cir. 2019) ("[I]n the absence of effective notice, the . . . right to a timely hearing . . . [is] rendered fundamentally hollow. . . . For notice to

be effective, it must inform the affected party of what "critical issue" will be determined at the hearing.") (citations and quotations omitted); HVT, 2018 WL 3134414 at *15.

Yonkers Tow's first letter[8] (dated July 13, 2021) demanding fees and threatening disposal was not constitutionally adequate notice for several reasons. First, the document was untimely, as it was transmitted 28 days after the Vehicle's impound. See SMF, ¶ 22. This timing alone warrants a finding that Defendants violated Santander's due process rights. Aston, 546 F. Supp. 3d at 381 ("A delay of twenty-five days before even attempting to notify lienholders simply does not comport with due process"). Notice and a hearing should be provided within a matter of a few days. Compare Propert, 948 F.2d 1327 (citing Sutton v. City of Milwaukee, 672 F.2d 644, 645 (7th Cir. 1982)) (notice by mail within 24 hours of tow was sufficiently prompt); Goichman v. Rheuban Motors, Inc., 682 F.2d 1320, 1325 (9th Cir. 1982) ("provision for a post-seizure hearing within forty-eight hours [of demand] satisfies the requirements of due process"); HVT, 2018 WL 3134414, at *15 (period for "proper notice and a hearing" is no more "than a few days"); Oberhausen v. Louisville-Jefferson Cnty. Metro Gov't, 527 F. Supp. 2d 713, 724 (W.D. Ky. 2007) (hearing available within 72 hours with City of Los Angeles v. David, 538 U.S. 715, 716 (2003) (25 day delay of hearing only acceptable because a procedure existed to obtain possession prior to hearing); Coleman v. Watt, 40 F.3d 255, 261 (8th Cir. 1994) ("a seven-day delay [between vehicle's seizure and the provision of a hearing—is clearly excessive"); Stypmann v. City & Cnty. of San Francisco, 557 F.2d 1338, 1344 (9th Cir. 1977) ("A five-day delay in justifying detention of a private vehicle is too long.").

---

[8] This letter was sent on letterhead using the predecessor tow company's name, "APOW Towing LLC." Yonkers Tow took an assignment of the towing contract from APOW—which has the same owner—and according to Yonkers Tow, it had some of this old letterhead lying around and it was inadvertently used.

Second, the letter demanding fees and threatening disposal did not provide notice of a hearing, it provided only notification of Yonkers Tow's unilaterally imposed demands and threat of *ex parte* disposal if its demands were not met.[9] "The purpose of notice . . . is to apprise the affected individual of... an impending 'hearing.'  Notice . . . does not comport with constitutional requirements when it does not advise... of the availability of a procedure for protesting" the governments' actions.  Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 14-15 (1978).

A policy that does not afford the opportunity for a hearing, and a policy of sending unilateral demands by mail, cannot possibly involve adequate notice.  Id. at 14 ("notification procedure, while adequate to apprise [property owner] of the threat... was not 'reasonably calculated' to inform them of the availability of 'an opportunity to present their objections'") (quoting Mullane, 339 U.S. at 314); see also Butler, 896 F.2d at 703 (policy of failing to publish procedure for hearing, and failing to send notice informing property owner of procedure for hearing, violated due process); Nassau, 623 F. Supp. 3d at 18 (policy that precludes ability to "contest the conditions of release or the towing company's assertion of a lien... affords the plaintiff no process, let alone due process").  Since neither Yonkers Tow's notification nor any other publicly available information informed Santander of a procedure for challenging the loss of its property (either the Vehicle or its money), Defendants violated the notice portion of due process.

### iii. *Yonkers's Program is unconstitutional* per se *because Yonkers has no procedure for providing a hearing following the seizure of a vehicle.*

Yonkers provided testimony through Frank DiDomizio as its designee under Federal Rule 30(b)(6), which details the policies and procedures of the Vehicle Impounding policy which were

---

[9] In Hernandez v. European Auto Collision, Inc., 487 F.2d 378, 382-83 (2d Cir. 1993) the Second Circuit found that a Plaintiff's complaint pled facts under which an *ex parte* sale procedure would be unconstitutional, remanding for further discovery.  At least one district court also stated that, *if* called upon to review *ex parte* disposal, the Court would have found it unconstitutional.  HVT, 2018 WL 3134414, at *12.

applied to this Vehicle. See Declaration of Nicholas Duston, Ex. 7. Conspicuously absent from such policies and procedures is any opportunity for a hearing following seizure of a vehicle being afforded to *anyone*. There is simply no hearing procedure whatsoever. Instead, Yonkers proceeds unilaterally, which is to say, *ex parte*.

A no-hearing policy is a *per se* due process violation which does not even require analysis under the Mathews Test. See TD Auto Fin. LLC v. Cnty. of Putnam, No. 21-cv-9080-AEK, 2023 WL 6295116, at *9 (S.D.N.Y. Sept. 27, 2023) ("[T]he absence of any hearing whatsoever will fail the *Mathews* balancing test"); HVT, 2018 WL 3134414 at *9 ("[T]he question is whether Defendant can summarily deprive Plaintiff of its property without any opportunity for a hearing. The law is quite clear that it cannot."); Nassau, 623 F. Supp. 3d at 18 (where "defendant… does not give a lienholder the opportunity to contest the conditions of release… [t]his affords the plaintiff no process, let alone due process"); Revere, 471 F. Supp. 3d at 407 ("If the government does not… provide a hearing prior to seizing property, that is a per se violation of the interested party's Due Process rights"); Craig, 449 F. Supp. at 395 (finding due process violation where the "assessment of the charges… retention of the car… the creation of a lien… for those charges, and the automatic… forfeiture… to foreclose the lien are all final, unilateral, irrebuttable, and unalterable actions.").

But even the most cursory review confirms that Yonkers' no-hearing, *ex parte* policy fails on every Mathews Test element.  Mathews, 424 U.S. at 335.  The factors are (1) the private interest affected by the official action, (2) the risk of erroneous deprivation of such interest through the procedures used, and the probably value of additional or different procedural safeguards, and (3) the government's interest, including the function involved and the fiscal/administrative burdens of the additional or different procedures.  Id.

As to the first Mathews factor, <u>Ford Motor Credit</u> holds that this factor weighs in favor of the lienholder as a lienholder's interest in a vehicle is "considerable." Indeed, the Second Circuit confirmed that a lienholder's protected interest is its "property right, which is in the collateral itself—the seized vehicle," *as well as* its "contractual right," which includes repossession on default under the contract and the UCC. <u>Ford Motor Credit</u>, 503 F.3d at 191, 194.  Both are significant rights.

As to the second Mathews factor, it is inarguable that *ex parte* appropriations of property create an unacceptable risk of error under the Mathews Test. <u>James Daniel</u>, 510 U.S. at 54 ("The practice of *ex parte* seizure, moreover, creates an unacceptable risk of error.").  There are currently no procedural protections in place, *other* than a lienholder filing a separate lawsuit.  And courts have repeatedly rejected the idea that the of a filing a lawsuit provides sufficient due process where the deprivation is effectuated by compliance with municipal policy (as opposed to those actions which involve random and unauthorized activities).  <u>HVT</u>, 2018 WL 3134414, at *13 ("the suggested remedy of an Article 78 proceeding does not provide a prompt and effective means for claimants to challenge the legitimacy of the [Port Authority]'s retention of their vehicles pendente lite.") (quoting <u>Krimstock</u>, 306 F.3d at 60); <u>c.f.</u> <u>Fuentes</u>, 407 U.S. at 80 (finding unconstitutional a Pennsylvania statute that "allows a post-seizure hearing if the aggrieved party shoulders the burden of initiating one").

The Second Circuit has confirmed that the second Matthews factor weighs in the lienholder's favor where the lienholder is not permitted to participate in the government action that impacts its property. <u>Ford Motor Credit</u>, 503 F.3d at 194. That is exactly the case here—Yonkers does not allow lienholder participation. The Fifth Circuit condemnation of a no-hearing approach is *apropos*:

> Few procedures. . . are more likely to encourage such miscarriages, than this one;
> a unilateral statement taken from one party, that the other party owes him money,

is accepted as a true and enforceable obligation, and that the other party is never allowed to challenge the accuracy of the amount claimed.

Morgan v. Wofford, 472 F.2d 822, 827 (5th Cir. 1973); see also James Daniel, 510 U.S. at 56 (neutral review is "of particular importance here, where the government has a direct pecuniary interest in the outcome...").

It is inescapable that Yonkers' *ex parte* lienholder deprivation procedures, which are dictatorial, unilateral, and final, create an unacceptable risk of error, as there is *no* neutral review *whatsoever* of either Yonkers or its towing companies' unilateral demand for money or decision to "deem" a vehicle abandoned if its demands are not met.

Third, and finally, Yonkers' interest in refusing to allow lienholders (such as Santander) to participate is "small." Ford Motor Credit, 503 F. 3d at 194. Yonkers has no interest in holding property solely to secure payment of unadjudicated amounts of money that Yonkers or its contractor want to collect. See Bell v. Burson, 402 U.S. 535, 540 (1971) (government interest in security for desired payments is minimal); Harrell v. City of New York, 138 F. Supp. 3d 479 (S.D.N.Y. 2015) (cities cannot "summarily seize property... and hold the property as leverage to ensure payment..."). The only other argument Yonkers could possibly make is that it is administratively inconvenient to afford due process to lienholders, but this assertion is entitled to little, if any weight. Stanley v Ill., 405 U.S. 645, 656 (1972) ("[T]he Constitution recognizes higher values than speed and efficiency.").

The Supreme Court has said time and time again that the form of the hearing is flexible (and therefore need not be onerous). Mathews, 424 U.S. at 334; Conn. v. Doehr, 501 U.S. 1, 10 (1991). The Supreme Court applied the Mathews Test to a $134.50[10] parking ticket and determined

---

[10] Mr. David regained possession of his vehicle. See David, 538 U.S. 715 (2003). If the loss of $134.50 warrants a hearing, then certainly seizure of valuable vehicles and extraction of thousands of dollars *(*and destruction of property interests in such vehicles) must as well.

that while administrative convenience could *delay* the hearing by 30 days—and only where the vehicle could be repossessed in the meantime—the City of Los Angeles was still required to hold a hearing before the government could permanently take Mr. David's $134.50. David, 538 U.S. 715.  By comparison, Yonkers and Yonkers Tow demanded $35.00 per day for every day the vehicle was held (resulting in thousands of dollars demanded) before Yonkers and Yonkers Tow permanently took and destroyed Santander's rights in the Vehicle, selling it and keeping the entirety of the approximately $22,000 proceeds. SMF, ¶¶ 23-24, 30.  If Mr. David was entitled to judicial review before taking his $135.50, there can be no debate that Defendants were required to provide for judicial review before taking for themselves the entire value of a vehicle worth $33,318 on the date of seizure and sold for $22,000 a year later.  Id. at ¶¶ 30, 44-45.

Even Yonkers's "optional" notice to lienholders merely tells lienholders to file a lawsuit, and does not indicate Yonkers itself will set up any sort of hearing.  Compare SMF, ¶ 37 (quoting the notification as saying "you must contact the… District Attorney for any opportunity to be heard," or "make such application to the Supreme Court of the State of New York") with McClendon, 460 F.2d at 113 n.4 ("It seems to me a shocking thing that our police can seize a citizen's property and then when he seeks to get it back challenge him to prove his title to the satisfaction of a jury.")(citations and quotations omitted) and Ford Motor Credit, 503 F.3d at 193 ("a party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation") (quoting Mennonite, 462 U.S. at 799).  Because the harm complained of is authorized by Yonkers's established policy, the existence of a theoretical court remedy is irrelevant. See Alexandre, 140 F.2d at 411.

Yonkers need only set one hearing before a neutral where it can do the following: present its case for disposal, including delineating whatever conditions it wants to attach to release; state its legal position regarding entitlement to these things; and request the neutral grant the relief

embodying what would happen if the neutral decides in Yonkers' favor. Assembling the facts needed for this position is exactly what Yonkers does now (but it does so unilaterally). Thus, there is little to no added burden in Yonkers presenting its "disposal case" to a neutral rather than to itself. And regardless of the flexibility and form of hearing, "the amount of process required can never be reduced to zero—that is, the government is never relieved of its duty to provide.... *some* opportunity to be heard prior to final deprivation of a property interest." Propert, 948 F.2d at 1332.

Yonkers has not shown that any Matthews factor favors its *ex parte* lienholder policy. All three Mathews factors favor Santander, confirming Yonkers' Vehicle Impounding Policy and Program violates due process.

### iv.   *Courts universally reject the concept of pretending a vehicle is abandoned as a constitutional work around.*

Yonkers acknowledges that its policy includes the concept that a failure of a lienholder to obey its unilateral demands will result in the vehicle being "deemed abandoned."  The word "deemed" is a legal euphemism for "pretend;" otherwise, Yonkers would just say it ***is*** abandoned, not *deemed* abandoned.  *Deem*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("deem vb… To treat (something) as if (1) it were really something else, or (2) it has qualities that it does not have.")

Pretending a vehicle has been abandoned as a constitutional work around has been universally rejected.  Only last year, the Supreme Court had the opportunity to analyze the proposition that a property owner had "constructively abandoned" property by "failing to pay" (in that case, failing to pay "her taxes.") Tyler v. Hennepin Cnty., Minn., 598 U.S. 631, 646 (2023). Chief Justice Roberts found the idea so thoroughly repugnant to traditional common law property rights that he began the Court's unanimous discussion of so-called "constructive abandonment" by noting "[t]he principle that a government may not take more from a taxpayer than she owes can trace its origins at least as far back as… 1215" in the "Magna Carta…" Id. at 639. Justice Roberts elaborated: "[T]he County cites no case suggesting that failing to pay… is itself sufficient for

abandonment." <u>Id.</u> at 648 (citation omitted). Rather, "[a]bandonment requires the surrender or relinquishment or disclaimer of all rights," such that one must fail to make "any use of the property—and for a lengthy period of time" to "cause[] the lapse of the property right." <u>Id.</u> (citations and quotations omitted). The Supreme Court found that County's:

> forfeiture scheme is not about abandonment at all. It gives no weight to the [owner's] use of the property… Minnesota cares only about the taxpayer's failure to contribute her share to the public fisc. The County cannot frame that failure as abandonment to avoid the demands of the Takings Clause.

<u>Id.</u> So too is Yonkers' policy not about abandonment at all; it gives no weight to an owner or lienholder's desire to regain possession of property, caring only about the failure to "contribute… to the public fisc" by paying for the services Yonkers Tow provided to Yonkers (for free).

Other Courts have rejected municipalities' reliance on inapplicable abandoned vehicle statutes as a "short cut" for disposing of seized vehicles. <u>McKee v. Heggy</u>, 703 F.2d 479, 482 (10th Cir. 1983) ("A state's ability to dispose of abandoned property does not enable its law enforcement… to take a citizen's property and dispose of it as they see fit simply by labeling it 'abandoned.'"); <u>Henry v. City of Middletown, Ohio</u>, 655 Fed. Appx. 451, 464 (6th Cir. 2016), <u>abrogated by</u> <u>Griffith v. Comm'r of Soc. Sec.</u>, 987 F.3d 556, 565 (6th Cir. 2021) (due process violated by city's use of inapplicable abandoned vehicle statute); <u>Ford Motor Credit Co. v. New York City Police Dep't</u>, 394 F. Supp. 2d 600, 614 (S.D.N.Y. 2005) ("the City cannot escape constitutional limitations . . . by simply labeling vehicles abandoned."); <u>Aston</u>, 546 F. Supp. 3d at 380 (rejecting use of Pennsylvania abandonment statute for vehicles that had been seized).

Yonkers's practice here of "deeming" (*i.e.* pretending) that a vehicle is abandoned violates Due Process, as there is no opportunity afforded for a hearing relative to the decision to pretend a vehicle is abandoned merely because unilateral demands have not been complied with.

**D.      Yonkers unreasonably seized the vehicle in violation of the Fourth Amendment.**

Yonkers' actions also violate the Fourth Amendment's prohibition on unreasonable searches and seizures.  See U.S. Const. amend. IV.  Even assuming Yonkers' initial warrantless seizure was valid, "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition...."  U.S. v. Jacobsen, 466 U.S. 109, 113 (1984); see also Ill. v. Caballes, 543 U.S. 405, 407 (2005); Manuel v. City of Joliet, Ill., 137 S. Ct. 911, 919 (2017) (finding Plaintiff's "ensuing pretrial detention, no less than his original arrest, violated his Fourth Amendment rights.").

Other Courts have applied this reasoning to impounded vehicles.  "The Fourth Amendment doesn't become irrelevant once an initial seizure has run its course."  Brewster v. Beck, 859 F.3d 1194, 1197 (9th Cir. 2017).  "A seizure is justified... only to the extent that the government's justification holds force.  Thereafter, the government must cease the seizure or secure a new justification." Id. at 1197.  "If the government... cannot establish probable cause for the initial seizure **or**… justify continued impoundment, **retention**... runs afoul of the Fourth Amendment." Krimstock, 306 F.3d at 50; see also Toyota Lease Tr. v. Vill. of Freeport, No. 20-cv-2207-DG-SIL, 2023 WL 4443992, at *8 (E.D.N.Y. Jan. 24, 2023), rept. and rec. adopted, 2023 WL 4449333 (E.D.N.Y. Mar. 30, 2023) (finding a "seven-month retention" to secure payment of parking tickets "is a separate Fourth Amendment violation."); Santander Consumer USA, Inc. v. City of Yonkers, 2022 WL 4134718 at *9 ("Defendant's warrantless seizure of the Vehicle violated the Fourth and Fourteenth Amendments"); Fasciana v. Cnty. of Suffolk, 996 F. Supp. 2d 174, 179, 182 (E.D.N.Y. 2014) (finding that the "[r]elease of the vehicle is not contingent on any condition, agreement, or circumstance….").

Although now-Justice Sotomayor directly said in the Krimstock case that the Fourth Amendment could be violated by "retention" of a vehicle, there are seemingly inconsistent holdings from the Second Circuit. See, e.g., Shaul v. Cherry Valley-Springfield Cent. Sch. Dist., 363 F.3d 177, 187 (2d Cir. 2004) ("unlawful retention was too 'novel' a theory to warrant Fourth Amendment protection…") (citing Lee v. City of Chicago, 330 F.3d 456, 461-65 (7th Cir. 2003)). However, the Supreme Court resolved this issue as to liberty interests in Manuel, 137 S. Ct. 911, 919 (2017), finding the Fourth Amendment had as much relevance to detention as to an original arrest. Manuel expressly overruled a line of Seventh Circuit cases—the same Circuit from which Shaul borrowed the "novel" line first appearing in the Lee case—calling the Seventh Circuit an "outlier" in this regard. Manuel, 137 S. Ct. at 917. Manuel thus also implicitly resolved this apparent conflict as to detentions of property, as the Court has also said there is no "support... for a categorical distinction between a deprivation of liberty and… property." Zinermon v. Burch, 494 U.S. 113, 132 (1990).

There is also no true disagreement between Shaul and Krimstock, because Shaul involved a reasonable seizure resulting in *accidental loss* of property the government intended to return,[11] *not* intentional detention accompanied by conditions for release. Shaul, 363 F.3d at 184 ("The reasonableness standard must be satisfied both at the inception of [the] intrusion and throughout its scope."). The Seventh Circuit itself later similarly distinguished Lee. U.S. v. Burgard, 675 F.3d 1029, 1032 (7th Cir. 2012) (stating "[a] seizure reasonable at its inception… may become

_____

[11] The Second Circuit has cited Shaul without elaboration in more recent, unpublished summary orders. See, e.g. Bennett v. Dutchess Cnty., N.Y., 832 Fed. Appx. 58, 60 (2d Cir. 2020); Bello v. Rockland Cnty., New York, 846 Fed. Appx. 77, 79 (2d Cir. 2021). However, where it has analyzed Shaul in any amount of detail, it has recognized the distinction, advocated here, between negligence and intentional withholding of property. See, e.g. Kerr v. Morrison, 664 Fed. Appx. 48, 52 (2d Cir. 2016) ("Even if we assume arguendo Municipal Defendants' negligence in failing *sua sponte* to return the computer sooner, more than negligence is required...") Cabral v. City of New York, 662 Fed. Appx. 11, 14 (2d Cir. 2016) ("Cabral had to adduce evidence of more than negligence in responding to his requests to survive summary judgment").

unreasonable as a result of its duration" while stating "we reject the notion that anything in this court's opinion in <u>Lee</u>... undermined [that] holding.").  As the Third Circuit more recently held, while relying on the long-settled Supreme Court rulings that a lawful seizure may become *unreasonable* in its manner of execution, "[t]hough valid warrants immunize officers who stay within their scope, they are not blank checks." <u>Frein v. Pa. State Police</u>, 47 F.4th 247, 252 (3d Cir. 2022).

This is now the fourth time that this Court has been called upon to review Yonkers' tactic of detaining seized vehicles in order to extract money from interested persons. <u>See</u> Complaint, <u>Toyota Lease Trust v. The City of Yonkers</u>, No. 19-cv-03199-CS-PED (S.D.N.Y. Apr. 10, 2019), ECF No. 1 ("In seizing [t]he [s]ubject [v]ehicle… to leverage payment….Yonkers violated Toyota's right to… be free from unreasonable seizures"); Complaint, <u>Santander Consumer USA, Inc. v. City of Yonkers</u>, No. 20-cv-04553-KMK-PED (S.D.N.Y. Jun. 15, 2020), ECF No. 1 ("Yonkers and APOW leverage the hardship of seizure and subsequent threat of disposal… to force payment of unadjudicated parking tickets *and*… additional… monies"); Complaint, <u>Santander Consumer USA., Inc. v. City of Yonkers</u>, No. 21-cv-10715-PHM (S.D.N.Y. Dec. 15, 2021), ECF No. 1 (describing Yonkers's "policy" of "detaining those vehicles on the sole justification of leveraging the hardship of seizure and detention so that Yonkers can collect the unpaid fees and fines" as well as "financ[ing]" its "activities" by permitting detention "until the towing/impound providers'… charges are *also* paid….").  Two of these cases resulted in Judgements requiring Yonkers to change.  Judgment, <u>Toyota Lease Trust v. The City of Yonkers</u>, No. 19-cv-03199-CS-PED (S.D.N.Y. May 15, 2020), ECF No. 21; Judgment, <u>Santander Consumer USA, Inc., v. The City of Yonkers</u>, No. 20-CV-04553-KMK (S.D.N.Y. Aug. 17, 2021), ECF No. 191.  One resulted in an opinion directly finding that Yonkers's and its tow companies' practice of withholding vehicles pending payment violates the Fourth Amendment.  <u>Santander Consumer</u>

USA, Inc. v. City of Yonkers, 2022 WL 4134718 at *9 ("Defendant's warrantless seizure of the Vehicle violated the Fourth and Fourteenth Amendments").

While each of these cases involved vehicles that Yonkers had seized due to unpaid parking tickets, there is no meaningful reason to treat this case—involving a seizure incident to arrest— any differently, and Defendants will not provide one.  Even when Yonkers validly seizes property under its Vehicle Impounding policy, it then immediately gives the property away to Yonkers Tow. See SMF, ¶¶ 16, 33.  But "[t]he government may not by exercising its power to seize, effect a *de facto* forfeiture by retaining the property," which "must be returned."  U.S. v. Premises Known as 608 Taylor Ave., Apartment 302, Pittsburgh, Pa., 584 F.2d 1297, 1302 (3d Cir. 1978).  The practice of holding a vehicle for fees has been repeatedly rejected.  Rosemont Taxicab Co. v. Philadelphia Parking Auth., 327 F. Supp. 3d 803, 822 (E.D. Pa. 2018); Harrell v. City of New York, 138 F. Supp. 3d 479, 492 (S.D.N.Y. 2015) (finding a seizure of property to "hold... as leverage to ensure payment" violated the Fourth Amendment); U.S. v. VERTOL H21C, Reg. No. N8540, 545 F.2d 648, 651 (9th Cir. 1976) (holding the government may not "summarily take property as a security").

What Yonkers could not do directly (by demanding fees itself) cannot be accomplished indirectly by giving vehicles to Yonkers Tow knowing it will demand payment.  Yonkers' initially valid seizure therefore became unreasonable in violation of the Fourth Amendment.

**E.     Yonkers took Santander's property for a public purpose without just compensation.**

Yonkers obtained Yonkers Tow's towing and storage services by calling Yonkers Tow, instructing Yonkers Tow to remove the Vehicle, and requiring Yonkers Tow to hold it under the written terms of the Vehicle Impounding policy as well as the contract in place between Yonkers and Yonkers Tow. But Yonkers Tow was not directly compensated by Yonkers; in fact, Yonkers Tow paid Yonkers. Then, Yonkers Tow placed a *de facto* possessory lien on the Vehicle to secure

payment of its fees, *i.e.* the fees incurred while providing towing and impound services to Yonkers. SMF, ¶¶ 16, 33.  In short, Yonkers used possession of the Vehicle to compensate Yonkers Tow in lieu of providing Yonkers Tow monetary consideration.

The Takings Clause of the Fifth Amendment states that "private property [shall not] be taken for public use, without just compensation."  <u>See</u> U.S. Const. amend. V.  Even a temporary taking requires payment of just compensation. <u>U.S. v. Pewee Coal Co.</u>, 341 U.S. 114 (1951). "A property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it."  <u>Knick v. Twp. of Scott, Pa.</u>, 139 S. Ct. 2162, 2167 (2019);[12] <u>see also</u> <u>Tyler</u>, 598 U.S. at 647.

In 2021, the Supreme Court recognized that regardless of the reason the government interferes with the property, "[t]he essential question is… whether the government has physically taken property for itself or someone else—by whatever means…" <u>Cedar Point Nursery v. Hassid</u>, 141 S. Ct. 2063, 2072 (2021). A physical taking is "paradigmatic"—"a direct government appropriation or physical invasion of private property." <u>Lingle v. Chevron U.S.A. Inc.</u>, 544 U.S. 528, 537 (2005). Such a taking destroys the entire "bundle" of property rights: possession, use and disposal. <u>Loretto v. Teleprompter Manhattan CATV Corp.</u>, 458 U.S. 149, 435 (1982). Accordingly, when the government effects a physical taking of private property for a public purpose, "it has a categorical duty to compensate the former owner[.]" <u>Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency</u>, 535 U.S. 302, 322 (2002). The public purpose element is satisfied where the intrusion appropriates a benefit to the government. <u>Ridge Line, Inc. v. U.S.</u>, 346 F.3d 1346, 1356 (Fed. Cir. 2003).

---

[12] <u>Knick</u> reversed earlier precedent that required exhaustion of state law remedies before the filing of a takings claim under 42 U.S.C. § 1983, which is why plaintiffs in the myriad cases on due process surrounding vehicle seizures did not, prior to 2019, raise such claims.

Although the Takings Clause often arises in the context of real property, its requirements apply to personal property as well: "The Government has a categorical duty to pay just compensation when it takes your car, just as when it takes your home." <u>Horne</u>, 576 U.S. at 358. The Supreme Court has held that liens are property protected by the Takings Clause of the Fifth Amendment such that the government violates the Takings Clause by destroying valid liens on property for public use without just compensation. <u>United Sates v Indus. Bank</u>, 459 U.S. 70, 75, 78 (1982); <u>Armstrong v United States</u>, 364 U.S. 40, 48 (1960); <u>Ford Motor Credit Co.</u>, 503 F.3d at 191 (in analyzing City's due process argument, stating "were this a Takings Clause case, Ford Motor Credit might well be entitled to the value of its security interest as of the time the City seized the vehicle.").

Earlier this year, the Supreme Court issued a unanimous opinion finding that Hennepin County, Minnesota violated the Takings Clause when it sold Tyler's condo for $40,000 to satisfy a $15,000 tax lien while retaining the additional $25,000 rather than returning Ms. Tyler's home equity to her. <u>Tyler</u>, 598 U.S. at 647 ("Tyler has plausibly alleged a taking under the Fifth Amendment").  And in the recent <u>Frein</u> matter, the Third Circuit held that retention of seized property could violate the Fifth Amendment:

> The parents correctly charge the government with taking their "private property... for public use, without just compensation." U.S. Const. amend. V. They challenge not the searching officers' initial seizure under a warrant, but the state police's continued retention of the guns once the criminal case ended….

> The Fifth Amendment's text supports the parents. After all, their guns are "private property." And they were "taken" by the officials. Plus, the parents have never gotten a dime, let alone "just compensation." <u>Id.</u> Finally, the officials pressed the property into "public use." <u>Id.</u> The parents' property was seized by public officials (police) to help public prosecutors enforce state law at a public trial. So their claim checks all the Fifth Amendment boxes.

<u>Frein</u>, 47 F.4th at 251.

A violation of the Takings Clause can occur even if the property owner never actually loses property and instead is given the alternative of paying money in order to avoid the taking. A "demand for money" that "operate[s] upon …an identified property interest" can violate the Takings Clause because a "monetary obligation burden[s]" ownership of property. Koontz v St. Johns River Water Mgmt. Dist., 570 U.S. 595, 613 (2013) (quoting E. Enters. v Apfel, 524 U.S. 498, 540, (1998) (Kennedy, L., concurring in the judgment and dissenting in part.)) Were we to find otherwise, the government could avoid the strictures of the Takings Clause by purporting to "simply give the owner a choice of either surrendering [property] or making a payment equal to the [property's] value. Id. at 612.

Thus, "when the government commands the relinquishment of funds linked to specific, identifiable property interests such as a piece of personal property, the "*per se* [takings] approach' is the proper mode of analysis." Id. at 614, (alteration in original) (quoting Brown v Legal Found. of Wash., 538 U.S. 216, 235 (2003). Webb's Fabulous Pharmacies, Inc. v Beckwith, 449 U.S. 155, 162 (1980) (holding that the government's taking of money is protected by the Fifth Amendment.) Quite simply, a Hobson's choice of - pay or you will lose your property - violates the Takings Clause.

There is no exception to the Takings Clause for an exercise of the police power. Tahoe-Sierra Pres. Council, Inc. v Tahoe Reg'l Planning Agency, 535 U.S. 302, 342 (2002). Rather:

> the government is not liable under the takings clause for property seizure during a criminal investigation or for damage to such property in its custody, even if the decrease in value renders the property essentially worthless…. [H]owever… [w]hile the United States' police power may insulate it from liability for an initial seizure, **there is no police power exception that insulates the United States from takings liability for the period after seized property is no longer needed**….

Jenkins v. United States, 71 F.4th 1367, 1373 (Fed. Cir. 2023) (emphasis added). "[A] city's exercise of its police power can go too far, and if it does, there has been a taking." John Corp. v City of Houston, 214 F.3d 573, 578 (5th Cir. 2000).

Yonkers' act of taking Santander's rights in the Vehicle by deeming the Vehicle to be abandoned and then transferring the Vehicle as payment to Yonkers Tow resulted in an uncompensated taking of Santander's property.  Ford Motor Credit Co., 503 F.3d at 191 (in analyzing City's due process argument, stating "were this a Takings Clause case, Ford Motor Credit might well be entitled to the value of its security interest as of the time the City seized the vehicle.");[13] In re Metmor Financial, Inc., 819 F.2d 446, 448-49 (4th Cir.1987) (where government forfeiture of seized property subject to a lien would "transform that note into one that is unsecured and interest free" the result "would constitute a taking without due process"); Armstrong v United States, 364 U.S. 40, 49 (1960) (holding that a valid Takings Clause claim lay where plaintiffs' liens remained in effect but were unenforceable against the collateral following forfeiture of the property subject to the lien to the United States).

Yonkers' use of Santander's collateral—and subordination of Santander's lien rights to Yonkers Tow's *de facto* possessory lien and Yonkers' demand for payment resulting in Yonkers Tow getting a new title free from Santander's lien—constituted an uncompensated taking of Santander's rights.  Yonkers's subsequent action of facilitating Yonkers Tow's sale of the Vehicle and retention of the *entirety* of the proceeds (some of which it indirectly shares with Yonkers) effectuated another, separate taking.

## VI.  Yonkers was the moving force behind the deprivation of Santander's constitutional rights.

For a municipal entity (like Yonkers) to be liable for unconstitutional practices, a plaintiff must show the municipality's policy or custom was the "moving force" behind the violation.  City of Canton, Ohio, 489 U.S. at 389 (discussing Monell, 436 U.S. at 693-94). "[W]hen execution of

---

[13] Though not discussed in the opinion, it is likely the plaintiff in Ford Motor Credit did not raise a taking challenge because that case was litigated before Knick removed the state-remedy-exhaustion barrier to making such a claim in Federal Court.

a government's policy or custom... inflicts the injury... the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694.

A plaintiff need only demonstrate "a plausible nexus or affirmative link between the municipality's custom and the specific deprivation of constitutional rights at issue." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) (citations and quotations omitted).  It is irrelevant whether Yonkers' officers or agents acted in good faith.  Owen v. City of Indep., Mo., 445 U.S. 622, 638 (1980).

Yonkers has explained both its written policies and its regular practices and customs in response to discovery in this case.  See generally SMF, ¶¶ 31-41.  Yonkers has also confirmed that its actions in relation to the Vehicle comported with its written policies and regular customs.  Id. at ¶ 42.  There is, therefore, no genuine dispute of material fact regarding the content of Yonkers' policies and customs or the actions Yonkers took in relation to the Vehicle.

Yonkers' policies and customs were the "moving force" behind the deprivation of Santander's rights.  Santander was entitled to possess the Vehicle at the time of Yonkers' seizure on June 15, 2021.  See SMF, ¶ 9.  Yet, Yonkers did not notify Santander about the seizure, and also put the Vehicle in a position where it was inevitable that Yonkers Tow would assert a possessory lien and demand payment (to, *inter alia*, use some of the money it obtained to pay Yonkers). **Yonkers was solely responsible for deeming the Vehicle abandoned and executing the paperwork that allowed Yonkers Tow to obtain a new title free from Santander's lien.**

The fact that Yonkers Tow is an independent contract is irrelevant.  West v. Atkins, 487 U.S. 42, 55-56 (1988) ("Contracting out… does not relieve the State of its constitutional duty….").  Yonkers cannot knowingly accept the benefit of Yonkers Tow's conduct—*i.e.* providing Yonkers services without charging Yonkers, while given part of the proceeds charged to others back to

Yonkers—and wash its hands of the consequences. <u>Burton v. Wilmington Parking Auth.</u>, 365 U.S. 715 (1961).

Yonkers' turnover of the Vehicle to Yonkers Tow set in motion a chain of events that led to Yonkers Tow's placement of a possessory lien on the Vehicle, Yonkers deeming the Vehicle abandoned and the ultimate sale of the vehicle to cover the costs of work done for Yonkers. <u>Johnson v. Bradshaw</u>, 772 F. Supp. 501, 505 (D. Nev. 1991), <u>aff'd</u>, 5 F.3d 537 (9th Cir. 1993) ("Plaintiff clearly was deprived of his property when, without notice to him, it was given by the police department to a third party.").

In finding a Massachusetts statute unconstitutional which permitted the exact arrangement here, the Court found the government entity to be a "proper defendant," even though its tow contractor sold the vehicle, because:

> Revere does not reimburse the garages for any uncompensated losses, so by the time the vehicle is sold, the sale proceeds are the only source of compensation and reimbursement available to garage owners. As a result, the garages treat the profits from the sales [of the vehicles it tows] as reimbursement for their towing jobs.

<u>Revere</u>, 471 F.Supp.3d at 405. Other cases have found both government and towing contractor liable. <u>See</u>, <u>e.g.</u>, <u>Draper v. Coombs</u>, 792 F.2d 915, 917 (9th Cir. 1986) (government actors liable even though "Draper's automobile [was] towed away by Sam's Towing," who "required... pay[ment of] towing and other charges before it would release the automobile"); <u>Henry</u>, 655 F. App'x 451 (holding Middletown liable for the sale of all three vehicles involved, even though one had been "impounded and towed to Mark's Towing."); <u>Tedeschi v. Blackwood</u>, 410 F. Supp. 34, 41 (D. Conn. 1976); <u>Lee v. NNAMHS</u>, 2007 WL 2462616, at *3 (D. Nev. Aug. 28, 2007).

But for Yonkers' policy of paying Yonkers Tow with Santander's collateral and applying its own conditions for release of the Vehicle, Santander would have been able to retake possession immediately and unconditionally.  Santander's lien would not have been supplanted by Yonkers Tow's *de facto* lien, created by Yonkers on the very day Yonkers seized the Vehicle.  But for

31

Yonkers' policy of deeming vehicles abandoned when its dictates are not met, Santander's lien would not have been wiped out.

Yonkers Tow has confirmed that everything that it did relative to the vehicle was in accordance with its regular practices pursuant to its written contract with Yonkers. Thus, Yonkers Tow is jointly and severally liable with Yonkers for the violation of Santander's constitutional rights that occurred through the deliberate, combined actions of the Defendants.

**VII.**    **Yonkers Tow is liable as having acted under color of law.**

A private entity's actions may be considered state action where "there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'"   Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288 (2001).  There are a "host of facts that can bear on the fairness of such an attribution." Id. at 296; see also Sybalski v. Indep. Grp. Home Living Program, Inc., 546 F.3d 255, 257 (2d Cir. 2008) (distilling the Sybalski discussing to three tests).

Here, Yonkers Tow is liable under several theories.  First, it exercised an exclusive prerogative of the state in securing seized vehicles against the will of those vehicles' owners, *i.e.* by impounding the Vehicle.  Smith v. Insley's Inc., 499 F.3d 875, 880 (8th Cir. 2007) (private company "was performing the traditional governmental function of seizing and securing property for a criminal investigation"); see also *Impound*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("impound vb. (15c) 1. To place something, such as a car . . . in the custody of the police or the court . . . .").  Yonkers Tow also acted with the help of and in concert with Yonkers, by its own admission and pursuant to a written contract for such joint action. See SMF, ¶¶ 16, 30.

Without Yonkers' authority, Yonkers Tow may have been committing a crime when it took someone else's property against their will, sold it, and kept the proceeds.  See, e.g., N.Y. Penal Law § 165.05; Nat'l Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 192 (1988) ("[W]e ask

whether the State provided a mantle of authority that enhanced the power of the harm-causing individual actor."). And Yonkers insinuated itself into a position of interdependence with Yonkers Tow by accepting the benefit of Yonkers Tow's services, without monetary compensation to Yonkers Tow, such that Yonkers Tow must be considered a joint participating in state action. Burton, 365 U.S. at 724.

For these reasons, the overwhelming majority of Courts to have reviewed the issue have found companies like Yonkers Tow to have acted under color of law.  Stypmann, 557 F.2d at 1341 ("The towing company detains the vehicle and asserts the lien for towing and storage charges pursuant to a statutory scheme designed solely to accomplish the state's purpose of enforcing its traffic laws."); Huemmer v. Mayor & City Council of Ocean City, 632 F.2d 371, 372 (4th Cir. 1980) (truck operator, who removed a vehicle pursuant to a municipal ordinance, was a state actor); W. Funding, Inc. v. S. Shore Towing, Inc., No. 19-cv-12853-FLW-TJB, 2021 WL 1399798, at *1, *8 (D.N.J. Apr. 14, 2021) (finding South Shore Towing could be held liable where the NJTA "instructed South Shore to tow a car in which Western has a first-priority security interest, then South Shore refused to release the car unless Western paid the towing/storage fees"); Foster v. City of Philadelphia, No. 12-cv-05851-PBT, 2014 WL 5821278, at *22 (E.D. Pa. Nov. 10, 2014) ("[Towing company] is a state actor for § 1983 purposes by virtue of maintaining an ongoing salvor relationship and contract with . . . Philadelphia.").

## VIII.   **Santander's Damages and request for Declaratory Relief.**

First, "the denial of procedural due process should be actionable for nominal damages without proof of actual injury." Carey v. Piphus, 435 U.S. 247, 266 (1978). Second, the Court can award compensatory damages on the theory that 42 U.S.C. § 1983 creates a species of tort liability where the damages are measured by reference to tort law. City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687 (1999) (the court interprets "the statute in light of the background

of tort liability."); <u>Carey</u>, 435 U.S. at 257-58 (stating that "the common law of torts" is the "starting point for the inquiry under § 1983").

The most similar tort to this sort of deprivation of property is conversion, and the remedy for conversion includes "the value. . . at the time and place of the conversion," ***and*** "any further pecuniary loss of which the deprivation has been a legal cause" and "not otherwise compensated." Restatement (Second) of Torts § 927 (1979).

Yonkers used its standing as a government entity to create paperwork that allowed Yonkers Tow to wipe Santander's lien off the Vehicle's title. Yonkers Tow ultimately sold the Vehicle on September 1, 2022 for approximately $22,000, but has refused to disclose the amount of money it obtained from such sale. <u>See</u> SMF, ¶ 30. Santander is entitled to the value of the Vehicle at the time Defendants seized the Vehicle, on June 16, 2021.  <u>Ford Motor Credit</u>, 503 F.3d at 191. The Court may take judicial notice of a vehicle's value as established in the J.D. Power (formerly N.A.D.A.) vehicle guidebook, which on June 16, 2021, was $33,318. <u>Id</u>. at ¶ 44.

Additionally, recoverable compensation for damages includes interest.  <u>Jeanty v. City of Yonkers</u>, No. 18-cv-5920-KPF, 2021 WL 276553, at *8 (S.D.N.Y. Jan. 27, 2021) (under 42 U.S.C. § 1983, the "purpose of the remedial scheme… is to fully compensate" the plaintiff, and "prejudgment interest is usually a necessary component of any award").  Accordingly, Santander asks the court to use a prejudgment interest calculation to account for the time period during which Santander was deprived of the Vehicle value from June 16, 2021, to present.[14]

In addition, the Court may "declare the rights and other legal relations of any interested party seeking such declaration."  22 U.S.C. § 2201.

> [A] court may properly render declaratory judgment (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2)

---

[14] As damages for conversion, interest accrues at the NYS statutory rate of 9% from the June 16, 2021. NYS CPLR §§ 5001, 5004.

when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.

Putnam, 2023 WL 6295116, at *13 (quoting Dow Jones & Co. v. Harrods, Ltd., 237 F. Supp. 2d 394, 432 (S.D.N.Y. 2002)).  Where a government's "policies and procedures for seizing vehicles incident to arrest violate the constitutional rights of lienholders, "[a]warding declaratory relief under these circumstances serves the useful purpose of clarifying legal relations and providing relief from uncertainty." Id. at *14.

Here, Yonkers' challenged policies create an ongoing controversy every time Yonkers seizes one of Santander's—or anyone else's—vehicle. Santander has brought this action to require Yonkers to "afford greater due process protections" to lienholders impacted by Yonkers' seizure activity which is not a one-off problem given how frequently vehicles are purchased on credit (with an attendant lien). Aston, 546 F. Supp. 3d at 373.

Santander requests that this Court declare Yonkers' Vehicle Impounding policy and practices to be unconstitutional insofar as Yonkers (a) does not require notice to a lienholder and (b) does not provide for any opportunity for a hearing regarding Yonkers' actions in seizing, detaining and deeming vehicles to be abandoned, (c) retains seized property beyond any legitimate law enforcement requirement to do so, and (d) effects an uncompensated taking when using seized vehicles to compensate a towing contractor (who returns part of the proceeds to Yonkers).

## **CONCLUSION**

Not only does the Constitution require, at minimum, notice after a vehicle is taken into custody, but so does common sense. Yonkers cannot pretend a vehicle has been abandoned when Yonkers has failed to take the minimally required step of locating and notifying all interested parties and affording the opportunity for lienholders to participate in and protest Yonkers' actions. The fundamental legal issue in this case is straightforward: lawful seizure does not dispense with constitutional oversight of the disposal of such seized property, especially notice and the

opportunity for protest and neutral review. Yonkers' existing *ex parte*, self-help disposal policy is unconstitutional and needs reform. Reform will benefit everyone. Yonkers' *ex parte* enforcement of its Vehicle Impounding policy caused Santander indisputable loss of rights in the Vehicle.

There are no issues of fact. Summary judgment should be granted to Santander.

Dated:  March 28, 2024

**NORRIS MCLAUGHLIN, P.A.**

By:   */s/ Nicholas Duston*
        Nicholas A. Duston
        7 Times Square, 21st Floor
        Yonkers, NY 10036
        212-808-0700
        naduston@norris-law.com

        *Counsel for Plaintiff Santander*
        *Consumer USA, Inc.*