## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SANTANDER CONSUMER USA, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE CITY OF YONKERS, A.P.O.W TOWING LLC, and YONKERS TOWING RECOVERY LLC, <br> Defendants. | Civil Action No.: 7:22-CV-08870-KMK |

**PLAINTIFF SANTANDER CONSUMER USA, INC.'S MEMORANDUM
OF LAW IN OPPOSITION TO DEFENDNATS' CROSS MOTIONS FOR SUMMARY
JUDGMENT AND IN FURTHER SUPPORT OF SANTANDER'S MOTION FOR
PARTIAL SUMMARY JUDGMENT**

**NORRIS McLAUGHLIN P.A.**
Nicholas A. Duston, Esq.
7 Times Square, 21st Fl.
New York, NY 10036
(908) 252-4208
naduston@norris-law.com
*Attorneys for Plaintiff*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................................... 1

ARGUMENT .................................................................................................................................. 3

   **I.**   Yonkers and YTR unreasonably seized the Vehicle ................................................. 3

   **II.**   Yonkers and YTR deprived Santander of property without procedural due process. ......... 9

      **A.**   Both Defendants' intellectually disingenuous arguments about "notice". ............ 10

      **B.**   Defendants were not permitted to permanently deprive Santander of its rights in the Vehicle simply because Santander was unable to obtain a release form. ........ 12

   **III.**   Yonkers took Santander's property interests without just compensation. .......................... 17

   **IV.**   New York State Constitution ................................................................................. 20

   **V.**   Santander is entitled to damages and declaratory relief .......................................... 21

CONCLUSION ............................................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>FEDERAL CASES</u>

<u>Acadia Tech., Inc. v. United States</u>,
    458 F.3d 1327 (Fed. Cir. 2006)..................................................17, 18

<u>Adenariwo v. Fed. Mar. Comm'n</u>,
    808 F.3d 74 (D.C. Cir. 2015)..................................................23

<u>American Honda Fin. Corp. v. Twp. of Aston</u>,
    546 F. Supp.3d 371 (E.D. Pa. 2021) ..................................................16

<u>AmeriSource Corp. v. United States</u>,
    525 F.3d 1149 (Fed. Cir. 2008)..................................................17, 18

<u>Bennett v. Dutchess Cnty., New York</u>,
    832 F. App'x 58 (2d Cir. 2020 ..................................................7

<u>Bennis v. Michigan</u>,
    516 U.S. 442 (1996)..................................................17, 18

<u>Brewster v. Beck</u>,
    859 F.3d 1194 (2017)..................................................5, 18

<u>Brewster v. City of Los Angeles</u>,
    672 F. Supp. 3d 872 (C.D. Cal. 2023) ..................................................18, 19

<u>Cabral v. City of New York</u>,
    662 Fed. Appx. 11 (2d Cir. 2016) ..................................................8

<u>Cedar Point Nursery v. Hassid</u>,
    141 S. Ct. 2063 (2021)..................................................19

<u>City of W. Covina v. Perkins</u>,
    525 U.S. 234 (1999)..................................................4

<u>Coe v. Armour Fertilizer Works</u>,
    237 U.S. 413 (1915)..................................................21

<u>Conn. v. Doehr</u>,
    501 U.S. 1 (1991)..................................................12

<u>Craig v. Carson</u>,
    449 F. Supp. 385 (M.D. Fla. 1978)..................................................15, 23

Culley v. Marshall,
    601 U.S. 377 (2024)...................................................................................2, 5

DCFS USA, LLC v. D.C.,
    803 F. Supp. 2d 29 (D.D.C. 2011)..........................................................12

Ford Motor Credit Co. v. NYC Police Dep't,
    503 F.3d 186 (2d Cir. 2007)..............................................................14, 23

Ford Motor Credit Co. v. NYC Police Dep't,
    394 F. Supp. 2d 600 (S.D.N.Y. 2005).....................................................15

Fuentes v. Shevin,
    407 U.S. 67 (1972)....................................................................................12

Harrell v. City of New York,
    138 F. Supp. 3d 479 (S.D.N.Y. 2015)....................................................5, 6

Hawaii Hous. Auth. v. Midkiff,
    467 U.S. 229 (1984)..................................................................................19

Hines v. Albany Police Dep't,
    520 F. App'x 5 (2d Cir. 2013) ................................................................5, 6

Hines v. City of Albany,
    No. 06-cv-01517-NPM, 2011 WL 2620381 (N.D.N.Y. July 1, 2011), aff'd sub
    nom. Hines v. Albany Police Dep't, 520 F. App'x................................14

Horne v. Dep't of Agric.,
    576 U.S. 350 (2015).................................................................................19

Ill. v. Caballes,
    543 U.S. 405 (2005)................................................................................4, 7

Jenkins v. United States,
    71 F.4th 1367 (Fed. Cir. 2023) ...............................................................18

Kerr v. Morrison,
    664 Fed. Appx. 48 (2d Cir. 2016).............................................................8

Koontz v. St. Johns River Water Mgmt. Dist.,
    570 U.S. 595 (2013).................................................................................20

Krimstock v. Kelly,
    306 F.3d 40 (2d Cir. 2002), abrogated on other grounds by Culley v. Marshall,
    601 U.S. 377 (2024).................................................................................4, 5

Lee v. City of Chicago,
    330 F.3d 456 (7th Cir.2003) .................................................................8

Manuel v. City of Joliet, Ill.,
    137 S. Ct. 911 (2017) ....................................................................4, 7

McMenemy v. City of Rochester,
    241 F.3d 279 (2d Cir. 2001)..............................................................13

McMillan v. City of New York,
    No. 03-cv-626-SLT-LB, 2009 WL 261478 (E.D.N.Y. Feb. 4, 2009) ............................ passim

Memphis Light, Gas & Water Div. v. Craft,
    436 U.S. 1 (1978)............................................................................12

Mennonite Bd. of Missions v. Adams,
    462 U.S. 791 (1983)....................................................................12, 14

Mullane v. Cent. Hanover Bank & Tr. Co.,
    339 U.S. 306 (1950).........................................................................11

Nnebe v. Daus,
    644 F.3d 147 (2d Cir. 2011)..............................................................14

Propert v. D.C.,
    948 F.2d 1327 (D.C. Cir. 1991) .........................................................12

Rodriguez v. United States,
    575 U.S. 348 (2015)......................................................................4, 7

Rutigliano v. City of New York,
    No. 07-cv-4614-JSR, 2008 WL 110946 (S.D.N.Y. Jan. 2, 2008) ...........................13

Santander Consumer USA, Inc. v. City of Yonkers,
    No. 20-cv-4553-KMK, 2022 WL 4134718 (S.D.N.Y. Sept. 12, 2022)................................1, 20

Santander Consumer USA, Inc. v. Cnty. of Nassau,
    623 F. Supp. 3d 6 (E.D.N.Y 2022) ..............................................5, 6, 15

Santander Consumer USA, Inc. v. Cnty. of Suffolk,
    No. 20-CV-2656-JS-AKT-, 2021 WL 4480574 (E.D.N.Y. Sept. 30, 2021) ............................7

Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.,
    363 F.3d 177 (2d Cir. 2004)..........................................................6, 7, 8

TD Auto Fin. LLC v. Cnty. of Putnam,
    No. 21-cv-9080-AEK, 2023 WL 6295116 (S.D.N.Y. Sept. 27, 2023)........................12, 15, 20

Thompson v. Consol. Gas Utilities Corp.,
    300 U.S. 55 (1937)........................................................................................19

Toyota Lease Tr. v. Vill. of Freeport,
    No. 20-cv-2207-DG-SIL, 2023 WL 4443992 (E.D.N.Y. Jan. 24, 2023) ......................5, 6, 23

Tyler v. Hennepin Cnty., Minnesota,
    598 U.S. 631 (2023)..............................................................................2, 16, 20

U.S. v. Jacobsen,
    466 U.S. 109 (1984)..................................................................................4, 9

United States v. Burgard,
    675 F.3d 1029 (7th Cir. 2012) ........................................................................8

United States v. VERTOL H21C, Reg. No. N8540,
    545 F.2d 648 (9th Cir. 1976) ..........................................................................5

Walling v. Helmerich & Payne,
    323 U.S. 37 (1944)......................................................................................21

## STATUTES

N.Y. Veh. & Traf. Law § 1224(1) ........................................................................16

N.Y. Veh. & Traf. Law § 1224(1)(a-c)....................................................................16

N.Y. Veh. & Traf. Law § 1224(1)(d)......................................................................16

## CONSTITUTIONAL PROVISIONS

42 U.S.C. § 1983............................................................................................20

Fifth Amendment.......................................................................................19, 23

Fourth and Fourteenth Amendments ............................................................... passim

Federal Constitution.......................................................................................20

New York State Constitution...............................................................................20

Plaintiff Santander Consumer USA, Inc. ("Santander") submits this Memorandum of Law in further support of its motion for partial summary judgment against Defendants The City of Yonkers ("Yonkers") and Yonkers Towing and Recovery LLC ("Yonkers Towing"), and in opposition to Yonkers's and Yonkers Tow's cross-motions for summary judgment.[1]

## PRELIMINARY STATEMENT

It is astounding that we find ourselves *still* arguing with Yonkers about providing notice and a hearing to lienholders in seized and impounded vehicles, considering this is the *fourth* time Yonkers's practices have been reviewed by this Court, with the first three resulting in judgments requiring Yonkers to change.[2] In one of those cases, the Court issued a written opinion outlining Yonkers's Fourth and Fourteenth Amendment failures, as well as those of the predecessor entity to Yonkers Towing (A.P.O.W. Towing, LLC) along with the owner of Yonkers Towing, Mr. Wuestenhoefer. Santander Consumer USA, Inc. v. City of Yonkers, No. 20-cv-4553-KMK, 2022 WL 4134718, at *9 (S.D.N.Y. Sept. 12, 2022), ("Defendants' warrantless seizure of the Vehicle violated the Fourth and Fourteenth Amendments").

Yet here we are, with neither Defendant even so much as choosing to *mention* the word "hearing" in its brief, and with both paying lip service to the word "notice" without seriously addressing what that word means in a procedural due process litigation: notice *of a hearing*. Both merely claim that Santander "had notice" of the events surrounding the Vehicle, suggesting that any happenstance that provided Santander information about *what defendants did* suffices to overcome a due process challenge to their actions. The Defendants know these essential and basic

---

[1] Santander's moving brief (Dkt. No. 81) shall be cited as "Santander Mv. Br.", Yonkers opposition and cross-motion brief (Dkt. No. 100) shall be cited as "Yonkers Br.", Yonkers Towing's opposition brief (Dkt. No. 88) shall be cited as "YTR Opp'n Br.", and Yonkers Towing's cross-motion brief (Dkt. No. 94) shall be cited as "YTR Mv. Br."  It is unclear why Yonkers Towing filed two separate sets of papers given the Courts' scheduling order (Dkt. No. 79).

[2] See Judgments cited in Santander Mv. Br. at 24-25.

requirements of due process, having already lost a nearly identical litigation in this Court, discussion of which both Defendants curiously omit. They cannot seriously think that demonstrating Santander's notice *of the deprivation* will carry the day, when it clearly will not.

What is really going on—and what neither Defendant will acknowledge—is that Yonkers would prefer to force others to pay for its police activity, and having taken things that far, to actually *raise* $88,200 in annual revenue through the monetization of its police's community caretaking seizures. But transforming "community caretaking" seizures into an opportunity to force others to pay Yonkers's vendors is repugnant to the purported "community caretaking" function Yonkers claims to have been performing. And Yonkers's policy takes it a step further in a way neither Defendant addresses by deeming (pretending) that the Vehicle had been abandoned simply because Santander did not pay Yonkers Towing and was not—for whatever reason—able to jump through every single hoop Defendants placed in its path. But as recently as April, 2023, the Supreme Court chastised Hennepin County, Minnesota for arguing that a homeowner's failure to comply with a "reasonable condition[]" placed on the property (the payment of taxes) meant the homeowner could "be considered to have abandoned her property and therefore [was] not entitled to any compensation for its taking." <u>Tyler v. Hennepin Cnty., Minnesota</u>, 598 U.S. 631, 646 (2023). Chief Justice Roberts found the idea of pretending that non-abandoned property had been abandoned so repugnant that he began his discussion with the "Magna Carta." <u>Id.</u> at 639.

Just this year, the Supreme Court assessed due process in the vehicle *forfeiture* context, reaffirming ***in its very first sentence*** that "[w]hen police seize . . . a car . . . the Constitution requires a timely forfeiture hearing," or some other form of hearing. <u>Culley v. Marshall</u>, 601 U.S. 377, 144 (2024). Given this recent ruling, there is little doubt how the Supreme Court would decide the pending case: Defendants cannot condition the release of a seized Vehicle on payment of over $7,000 to fund Yonkers's police activity; Santander did not constructively abandon its Vehicle

simply by not paying Yonkers Towing or obtaining a form; and in the absence of a forfeiture proceeding (or even a lawful basis to seek forfeiture), it was improper for these Defendants to do anything—much less sell the Vehicle and keep the proceeds—without any hearing whatsoever.

## ARGUMENT

### I.    Yonkers and YTR unreasonably seized the Vehicle.

Yonkers's overarching Fourth Amendment argument is that "[w]here an initial seizure of property was reasonable, purported failure to return the property does not give rise to a claim for unlawful seizure under the Fourth Amendment." Yonkers Br. at 1. In other words, if Yonkers is permitted to seize the Vehicle even for one second, it can do whatever it wants with the Vehicle thereafter. This, of course, completely ignores the requirement that a seizure be *both* permitted by an exception to the warrant requirement (or a warrant) *and* conducted in a reasonable manner. Yonkers's alleged "community caretaking" seizure of this vehicle fails the latter test.

Yonkers begins with an irrelevancy unrelated to Santander's Fourth Amendment claim: that Yonkers lawfully impounded the Vehicle pursuant to the community caretaking function. Compare Yonkers Br. at 4-5 with Santander Br. at 22 (arguing that "[e]ven assuming Yonkers' initial warrantless seizure was valid," a lawful seizure can become *unreasonable* in violation of the Fourth Amendment). Yonkers Towing, for its part, wastes even more ink on the completely pointless contention that the government may seize vehicles incident to a lawful drunk driving arrest and/or as part of its community caretaking function. YTR Opp'n Br. at 4-6; YTR Mv. Br. at 4-6. The Court may assume that Yonkers is correct that it could remove the Vehicle from the roadway as part of its community caretaking function. The problems arose thereafter.

Yonkers makes no serious effort to address the multitude of on-point Supreme Court and Second Circuit cases which indicate that "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory

interests'" in the seized property. U.S. v. Jacobsen, 466 U.S. 109, 113 (1984). For example, Santander previously cited Caballes, wherein the Supreme Court stated that "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful **if it is prolonged** beyond the time reasonably required to complete that mission." Ill. v. Caballes, 543 U.S. 405, 408 (2005) (emphasis added). And Santander cited Rodriguez, wherein the Supreme Court found that "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures" when the police required a stopped vehicle to wait an extra *eight minutes* for a "dog-sniff" unrelated to the reason the vehicle had been initially stopped. Rodriguez v. United States, 575 U.S. 348, 350 (2015). And Santander cited Jacobsen, wherein the Supreme Court found a separate Fourth Amendment analyses to be required for an initial, temporary seizure and a later destructive test which "converted what had been only a temporary deprivation of possessory interests into a permanent one." Jacobsen, 466 U.S. at 124. And Santander cited Manuel, wherein the Supreme Court stated that Plaintiff's "ensuing pretrial detention, no less than his original arrest, violated his Fourth Amendment rights." Manuel v. City of Joliet, Ill., 137 S. Ct. 911, 919 (2017). And Santander cited W. Covina, wherein the Supreme Court reminded governments that even where property has been lawfully seized, they nonetheless have an "ultimate obligation to return it." City of W. Covina v. Perkins, 525 U.S. 234, 240 (1999).

Yonkers does not even mention *any* of these cases. Nor does Yonkers explain the multitude of district courts and other circuit courts' holding that retention of a seized vehicle may violate the Fourth Amendment. For example, Santander cited Krimstock, in which now-Justice Sotomayor wrote that under certain circumstances, "retention of the seized property runs afoul of the Fourth Amendment." Krimstock v. Kelly, 306 F.3d 40, 50 (2d Cir. 2002), abrogated on other grounds by

4

<u>Culley v. Marshall</u>, 601 U.S. 377 (2024);[3] <u>see also</u> <u>Hines v. Albany Police Dep't</u>, 520 F. App'x 5, 8 (2d Cir. 2013) (holding that where the Albany "Police Department" decided to "continue to **retain** the vehicle[,] [t]hat decision violated the Fourth Amendment…."); <u>Harrell v. City of New York</u>, 138 F. Supp. 3d 479, 492 (S.D.N.Y. 2015) (holding Fourth Amendment violated by "hold[ing] the property as leverage to ensure payment"); <u>Toyota Lease Tr. v. Vill. of Freeport</u>, No. 20-cv-2207-DG-SIL, 2023 WL 4443992, *8 (E.D.N.Y. Jan. 24, 2023), rept. and rec. adopted, 2023 WL 4449333 (E.D.N.Y. Mar. 30, 2023) (finding a "seven-month retention" to be "a separate Fourth Amendment violation" apart from the invalidity of the initial seizure); <u>Santander Consumer USA, Inc. v. Cnty. of Nassau</u>, 623 F. Supp. 3d 6, 19 n. 11 (E.D.N.Y 2022) (noting that the Defendant violated the Fourth Amendment rights of those who have a present possessory interest in a towed car, in part, by "attach[ing] conditions to its release, including the payment of towing and storage fees…");[4] <u>see also</u> <u>United States v. VERTOL H21C, Reg. No. N8540</u>, 545 F.2d 648, 651 (9th Cir. 1976) (noting that the government may not "summarily take property as security"); <u>Brewster v. Beck</u>, 859 F.3d 1194, 1197 (2017) (stating "[t]he exigency that justified the seizure vanishe[s] once the vehicle arrived in impound" and "[t]he Fourth Amendment doesn't become irrelevant once an initial seizure has run its course.").

Could it be that Justice Sotomayor made a mistake when stating in <u>Krimstock</u> that "retention . . . runs afoul of the Fourth Amendment," <u>Krimstock</u>, 306 F. 3d at 50, while ignoring

---

[3] <u>Culley</u> held there to be no need for a preliminary hearing before the filing of a forfeiture lawsuit as to vehicles seized and held with the intention of filing forfeiture actions, instead holding that the forfeiture action—if filed promptly—provides sufficient due process.  601 U.S. at 386 ("[D]ue process requires a timely forfeiture hearing but does not require a separate preliminary hearing"). That holding precludes the need for what is now known as a <u>Krimstock</u> hearing relating to the propriety of holding a vehicle while awaiting the filing of a forfeiture case, but does not abrogate the <u>Krimstock's</u> discussion and reasoning as to the Fourth Amendment.

[4] The <u>Nassau</u> court "decide[d] this case on due process grounds," and so did "not address the extent to which the plaintiff had a present possessory interest in the car" for Fourth Amendment purposes.  623 F. Supp. 3d at 19 n. 11.

the concept outlined in Shaul that retaining seized property is "too novel" to warrant protection of the Fourth Amendment, Shaul v. Cherry Valley-Springfield Cent. Sch. Dist., 363 F.3d 177, 187 (2d Cir. 2004)? Could it be that Circuit Judges Hall, Livingston and Droney made a mistake when, 9 years *after* Shaul, they found the Albany police violated the Fourth Amendment when they "continue[d] to retain the vehicle"? Hines, 520 F. App'x at 8. Could it be that Judges Caproni, Locke, and Donnelly made a mistake in deciding Harrell, Freeport, and Nassau (respectively) without noticing or discussing Shaul? Or is there perhaps an important nuance that distinguishes cases involving *intentional* retention while attaching conditions (like payment) from those matters where the police intended to return property, but either never had it or had misplaced it? The latter is quite clearly the explanation, as described in Santander's moving papers and ignored by both Defendants. See Santander Mv. Br. at 23-24.

Yonkers largely relies on a single unreported district court case to suggest there is a blanket rule that does not exist, arguing: "[i]f property is lawfully seized in the first instance, which it was here, there is no Fourth Amendment claim for wrongful retention." Yonkers Br. at 5 (citations omitted). That is simply wrong. The McMillan case involved a *pro se* complaint that "contain[ed] no factual allegations relating to the NYPD's . . . confiscation of Plaintiff's" bullhorn, merely asking in the *ad danmnum* clause that the police return it. McMillan v. City of New York, No. 03-cv-626-SLT-LB, 2009 WL 261478, at *6 (E.D.N.Y. Feb. 4, 2009). The Court held there to be "a genuine issue of material fact with respect to whether the police ever returned" the plaintiff's bullhorn, because the police provided "ample evidence that the bullhorn was returned," but Plaintiff insisted they did not. Id. at *10. Like all the other cases Yonkers cites, McMillan merely quotes the Shaul case, and its holding is narrower than what Yonkers recites: "Where . . . an initial seizure of property was reasonable, defendants' failure to return the items does not, **by itself**, state

a separate Fourth Amendment claim of unreasonable seizure." Id. at *11 (citing Shaul, 363 F.3d at 187)  (bold and underline added).

Yonkers similarly cites Benett, a non-precedential summary order that merely regurgitates the same quotation from Shaul, and makes clear that a claim based solely on the "failure to return" property does not a lead, ***by itself***, to a valid Fourth Amendment claim. Bennett v. Dutchess Cnty., New York, 832 F. App'x 58, 60 (2d Cir. 2020) (citing Shaul, 363 F. 3d at 187). And Yonkers's only other citation is blatantly to a page "34" of the Suffolk case that does not even exist. See Yonkers Br. at 5 (citing 2021 WL 4480574 at *34, a case that only goes to page 15). That case partially ***<u>supports</u>*** Santander's argument by finding "the Complaint states a Fourth Amendment claim . . . to the extent that Plaintiff alleges that the County has a policy or procedure of: (1) indefinitely detaining Subject Vehicles." Santander Consumer USA, Inc. v. Cnty. of Suffolk, No. 20-CV-2656-JS-AKT-, 2021 WL 4480574, at *11 (E.D.N.Y. Sept. 30, 2021). And while the case goes on to discuss a "retention" theory under Shaul, it again notes that such a theory is invalid only if "based [<u>solely</u>] on the unlawful retention of property that was lawfully seized . . . ." Id. at *12 (quoting Bennett, 832 F. App'x at 60) (underline of word "solely" added by Suffolk Court).

None of these cases, nor Yonkers's brief, addresses Santander's actual argument: here, there is more than "solely" retention, and the theory is no longer "novel." See Santander Br. at 23-24.

To begin with, the Second Circuit decided Shaul in 2004, ***before*** the aforementioned Supreme Court holdings in Caballes (2005), Rodriguez (2015), and Manuel (2017). The language in Shaul also does not suggest that the retention theory was precluded forever, only that the theory was then "too novel," *i.e.* that the Fourth Amendment jurisprudence *at that time* was too undeveloped. *Novel*, Merriam-Webster's Collegiate Dictionary (10th ed. 1993) ("Adj . . . . 1: new and not resembling something formerly known or used"). And sure enough, in the intervening

years, the theory that was "too novel" in 2004 has since been confirmed repeatedly by the Supreme Court in subsequently-decided cases. Meanwhile, the Seventh Circuit—which decided the <u>Lee</u> case from which <u>Shaul</u> borrowed the "too novel" quote—has since clarified that "[a] seizure reasonable at its inception… may become unreasonable as a result of its duration" while stating "we reject the notion that anything in this court's opinion in <u>Lee v. City of Chicago</u>, 330 F.3d 456 (7th Cir.2003) undermined [that] holding." <u>United States v. Burgard</u>, 675 F.3d 1029, 1032 (7th Cir. 2012).

Thus, the intellectual and precedential underpinnings of the <u>Shaul</u> "too novel" discussion are gone, as are any other district courts' decisions which rely on it. The Fourth Amendment may be violated through retention, which is a theory that is no longer "novel" at all. But even more importantly, there is no need to decide whether <u>Shaul's</u> reasoning has been overruled, because a deeper understanding of <u>Shaul</u> and the cases that rely on it—like <u>McMillan</u>—indicate that <u>Shaul</u> and its progeny are no barrier to this Court holding that Yonkers's *intentional* conduct violated the Fourth Amendment even while those defendants' *negligence* did not. <u>Shaul</u> involved property that, at most, the government *intended* to return but *negligently* lost. <u>Shaul</u>, 363 F.3d at 187 (discussing plaintiff's complaint that "certain items were missing" when the government sought to return all of plaintiff's property). So too with <u>McMillan</u>, where the Police claimed not only that they intended to return the seized property, *but that they actually did*, and without any pre-condition. 2009 WL 261478, at *10. The Second Circuit has elsewhere similarly concluded that "negligence in failing *sua sponte* to return the [property] sooner" was not enough, and "more than negligence is required." <u>Kerr v. Morrison</u>, 664 Fed. Appx. 48, 52 (2d Cir. 2016); <u>see also</u> <u>Cabral v. City of New York</u>, 662 Fed. Appx. 11, 14 (2d Cir. 2016) ("Cabral had to adduce evidence of more than negligence in responding to his requests to survive summary judgment").

Here, Yonkers did not accidentally lose the Vehicle. Yonkers intentionally gave it to Yonkers Towing as payment for Yonkers Towing's services, and then intentionally facilitated Yonkers Towing's refusal to return it without payment, *i.e.* insisted that Santander relinquish *other* property (its money) to regain possession of the Vehicle. Santander SMF, ¶¶ 16, 25. Yonkers then facilitated the *intentional* destruction of Santander's interest in the Vehicle by assisting Yonkers Towing in taking title and selling it. Santander SMF, ¶¶ 28-30. see also Jacobsen, 466 U.S. at 124 (discussing a separate Fourth Amendment analysis when the government "converted what had been only a temporary deprivation of possessory interests into a permanent one.").

Yonkers's only other (wrong) argument is that it did not "cause" the violation because "the City had no interest in retaining the vehicle and repeatedly notified Santander as to how to obtain it." Yonkers Br. at 5. This is an admission of liability, and *not* a helpful for Yonkers: if the City "had no interest in retaining the Vehicle," why did its vendor retain the Vehicle? And why would it assist in the complete destruction of Santander's property interests? The answer is that the City *did* have an interest in retaining the Vehicle, and a monetary one at that. Yonkers obtained services from Yonkers Towing for free (and indeed, obtained $88,200 a year from Yonkers Towing as its share of the fees extracted from others). Yonkers was solely responsible for placing the Vehicle in the hands of its Yonkers Towing, and solely responsible for "deeming" the Vehicle abandoned, and solely responsible for processing the paperwork needed to sell it. This easily meets the standard for showing that Yonkers caused the deprivation of Santander's property rights. See Santander Br. at 29-32 (addressing numerous cases on causation that Yonkers never mentions).

## II.    **Yonkers and YTR deprived Santander of property without procedural due process.**

Due Process may, indeed, be flexible, as Yonkers contends. See Yonkers Br. at 6. But Due Process must exist. The need to have some hearing, at some time, can never be fully disregarded. Defendants' discussion of due process demonstrates a severe misunderstanding of the two most

important due process words: "notice" and "hearing." Indeed, *none of Defendants' briefs* even so much as *say* the word "hearing." Not even once. See Yonkers Br., *passim;* YTR Mv. Br., *passim*; YTR Opp'n Br., *passim*. Rather, what limited discussion either Defendant has about "process" focuses on the "process for retrieving the vehicle," Yonkers Br. at 1, even though that "process" does not involve any sort of hearing, and is therefore not "due process." Defendants also barely mention the word "notice," with Yonkers, for example, using the word a mere five times, each time using it colloquially (that Santander knew something) and not in the due process sense (that Santander received written notice of a hearing). Given that Defendants are (supposedly) opposing Santander's motion relating to Santander's loss of its property interest in the Vehicle without a hearing (or notice of the nonexistent hearing), these omissions are dispositive.

**A.    Both Defendants' intellectually disingenuous arguments about "notice".**

Defendants both discuss Santander having "notice" of the impound, as though the word means whatever they want. Yonkers says this four[5] times, each in the passive voice to hide that Yonkers was not the party doing the notifying. Yonkers Br. at 1 ("Santander was on notice….."); at 9 ("Santander was provided adequate notice"); at 9 ("Santander was provided with constitutionally adequate notice of the impoundment"); at 12 ("Santander received notice…").

Yonkers Towing's argument is even more nonsensical, as it claims that it has "unequivocally establishe[d] that Plaintiff had notice of the impound of the subject vehicle," YTR Mv. Br. at 7; YTR Opp'n Br. at 7, which it claims means that "the Submission by Plaintiff's witness, Mr. "Vargas, was without merit." Id. But how so? What did Yonkers Towing "establish" that Santander had not already acknowledged? Santander SMF, ¶ 19 (acknowledging Santander discovered the fact of the impound on June 18, 2021, a few days after the impound); Id. at ¶ 20

---

[5] Yonkers fifth use of the word "notice" indicates that it has changed its policy to include a mailing to Santander, albeit one that continues to omit any mention of a hearing. Yonkers Br. at 12.

(acknowledging telephone communications with Yonkers Towing); Id. at ¶ 22 (acknowledging later written correspondence from Yonkers Towing); Id. at ¶ 28 (acknowledging it eventually received correspondence from Yonkers about the alleged abandonment of the Vehicle). Setting aside Yonkers Towing's (wrong) argument about the admissibility of Mr. Vargas's declaration—which is properly based on business records—it is completely unclear what fact dispute Yonkers Towing believes render his declaration "without merit."

Sound legal arguments stem from what the law *is*, not what a Defendant *wishes* the law to be. The defendants' citation-free discussion of Santander "having notice" is intentional and intellectually dishonest. Santander never claimed ignorance *of the events that occurred*. Santander very clearly argues that the "notice" it had *of events* was not "notice" for procedural due process purposes. Santander Br. at 12-15 (an entire, three-page point heading dedicated to "constitutionally adequate notice."). Every due process case begins with the premise that:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties **of the pendency of the action** and afford them **an opportunity to present their objections**

Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950) (emphasis added). Mullane is a case that has been in law school textbooks for more than half a century, and it did *not* merely require that a party "have notice" of a deprivation, as the Defendants' wrong argument implies.

It is indeed undisputed that Santander "had notice" of the deprivation. But it is also undisputed that Santander did *not* have notice "of the pendency of the action" or "an opportunity to present their objections," as required by Mullane. These are the things of which Santander had a right to notice. Yonkers does not address Yonkers's failure to even *find out about* Santander's lien, much less inform them of an opportunity for a hearing (which does not exist). That someone happened to call Santander on June 18 is irrelevant, because the only information provided was an address and phone number. Yonkers SMF, ¶ 6 ("Plaintiff learned that the Vehicle was impounded

11

and was provided with the phone number and address of the location where the Vehicle was being held."). Notification of these facts is not "notice" for Procedural Due Process. Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 14 (1978) (notification of threat to property is not notice where it does not refer to the availability of a hearing). The phone notification is particularly irrelevant in that it was apparently fortuitous, and did not originate with Defendants.

Santander was entitled to its own, individualized, written notice *of a hearing*, which did not occur. Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 799 (1983) ("Personal service or mailed notice is required even though sophisticated creditors have means at their disposal to discover" the threat to their property interests); DCFS USA, LLC v. D.C., 803 F. Supp. 2d 29, 43 (D.D.C. 2011) (Defendants are required to search DMV records and locate lienholders to notify).

## B.    Defendants were not permitted to permanently deprive Santander of its rights in the Vehicle simply because Santander was unable to obtain a release form.

Even a temporary, non-final deprivation of property requires a hearing to occur at some point, including upon the attachment of a lien to the property (like the towing and storage lien here). Fuentes v. Shevin, 407 U.S. 67, 84–85 (1972); Conn. v. Doehr, 501 U.S. 1, 12 (1991). It is similarly beyond debate that a hearing must occur before a deprivation becomes final (like when the Vehicle was sold free of Santander's lien), and that there can never be *no* hearing at all attendant on the seizure and impound of a vehicle. Propert v. D.C., 948 F.2d 1327, 1332 (D.C. Cir. 1991) ("the government is never relieved of its duty to provide . . . some opportunity to be heard prior to final deprivation of a property interest."). This district reiterated the basic rule only last year in a nearly identical case. TD Auto Fin. LLC v. Cnty. of Putnam, No. 21-cv-9080-AEK, 2023 WL 6295116 (S.D.N.Y. Sept. 27, 2023) ("Some form of hearing is required . . . .").

Defendants omit any discussion of what type of hearing process is due, and do not explain why it is appropriate to have provided *none*. Compare Santander Br. at 15-20 with Yonkers Br. at 6-9 and YTR Mv. Br., *passim*; YTR Opp'n Br., *passim*. That is because it wasn't appropriate.

Instead, Yonkers claims there to be a made-up prerequisite to establishing a due process violation, arguing that "[a] plaintiff's failure to follow procedures for obtaining confiscated property does not give rise to a constitutional violation." Yonkers Br. at 7 (citing McMillan, 2009 WL 261478). Yonkers cites McMillan's statement that "[t]o even plead a procedural due process violation, a plaintiff must 'allege where and from whom he attempted to retrieve the [property] and what he did to attempt to retrieve [it].'" Yonkers Br. at 7. But McMillan involved a *pro se* plaintiff who "[b]y his own account . . . suffered serious physical and mental problems," where the Court found there to be an issue of fact regarding *whether* the property had been taken at all. McMillan, 2009 WL 261478, at *1, 10. McMillan is hardly an appropriate source to cite for a blanket proposition on Due Process jurisprudence, although McMillan does accurately cite a Second Circuit case for the real elements of a due process claim: (1) that the plaintiff "possessed a protected liberty or property interest" and (2) "that he was deprived of that interest without due process." McMenemy v. City of Rochester, 241 F.3d 279, 285 (2d Cir. 2001).

Setting aside that this alleged pleading requirement does not exist,[6] Yonkers's argument is also bizarre where Yonkers recognizes Santander's myriad efforts to regain possession of the Vehicle: "Santander then undertook initial steps to retrieve the vehicle from impound," assigned a repossession agent to "physically" go "to the YPD precinct no less than 17 times," and "had 'three conversations' with 'supporting emails' to 'pick up this car'" with Yonkers Towing. Id. at 9. There

---

[6] Aside from the Second Circuit's McMenemy decision—which recites the actual standard for a due process challenge—McMillan solely relies on the Rutigliano decision, another unpublished district court decision addressing Police that allegedly *lost* the Plaintiff's property while he was briefly in custody. Rutigliano v. City of New York, No. 07-cv-4614-JSR, 2008 WL 110946, at *4 (S.D.N.Y. Jan. 2, 2008). Neither McMillan nor Rutigliano—which are both unpublished district court cases—cite any binding precedent for the alleged requirement that a Plaintiff plead "where and from whom he attempted to retrieve" the property. They are more accurately understood to stand for the unremarkable proposition that where a Plaintiff cannot even plead the government deprived him of property at all, a Due Process claim cannot proceed because the Plaintiff has not pled a deprivation of property, the first actual element of a due process claim.

is no dispute that the Defendants had the Vehicle, that Santander wanted to retrieve it, and that Defendants provided zero opportunity for a hearing relating to their actions.

Yonkers apparently believes—incorrectly—that the case is about retrieving a form from the District Attorney. Id. ("Santander's own delay… in obtaining the District Attorney release… was the cause of the continued retention of the vehicle"). The "blame the prosecutor" excuse has already been discarded by the Northern District of New York in a case affirmed by the second circuit. Hines v. City of Albany, No. 06-cv-01517-NPM, 2011 WL 2620381, at *15 (N.D.N.Y. July 1, 2011), aff'd sub nom. Hines v. Albany Police Dep't, 520 F. App'x at 5 ("Defendants cannot avoid liability here based on [the Office of the Attorney General's] involvement in the seizure and detention of the Escalade.").

The argument that "requiring a District Attorney release form . . . comports with due process and, in fact, is common practice" also misses the point. Yonkers Br. at 6 (citation omitted). Procedural Due Process is not concerned with substance, and the reasonableness of a paperwork requirement is not pertinent to the analysis of the hearing process required to be attendant on the deprivation of property. Whether Santander could have "tried harder" to obtain the form is similarly irrelevant to the due process analysis, because a party's "ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation." Ford Motor Credit Co. v. NYC Police Dep't, 503 F.3d 186, 193 (2d Cir. 2007) (quoting Mennonite, 462 U.S. at 799). Deprivation of property is *only* acceptable if "some form of hearing is provided before an individual is finally deprived of the property interest" at issue. Nnebe v. Daus, 644 F.3d 147, 158 (2d Cir. 2011) (cleaned up) (citations omitted).

This case is also not about District Attorney paperwork at all. The case is about Defendants' demand for thousands of dollars in exchange for possession of the Vehicle, and their ultimate hearing-free decision to "deem" (pretend) that the Vehicle had been abandoned by Santander when

it had not been, along with the hearing-free sale of the Vehicle with the Defendants pocketing the proceeds. Courts have held time and again that an alleged "process" of forcing a lienholder to obey unilateral demands is not due process at all. See, e.g. TD Auto Fin., 2023 WL 6295116, at *10, *16 (finding due process violation even though "County typically will offer a lienholder the opportunity to gain possession of the vehicle in exchange for an administrative fee, but without any hearing . . . to determine the propriety of the County's request to the lienholder to pay . . . ."); Nassau, 623 F. Supp. 3d at 18 (where "defendant . . . does not give a lienholder the opportunity to contest the conditions of release or the towing company's assertion of a lien," such a policy "affords the plaintiff no process, let alone due process."). It makes no difference that Santander could have—and even obtained approval—to pay Yonkers Towing *something*. The requirements were unilateral and final with no opportunity to contest the loss of either the Vehicle or money. Craig v. Carson, 449 F. Supp. 385, 395 (M.D. Fla. 1978) ("finding due process violation where the "assessment of the charges . . . retention of the car . . . the creation of a lien . . . and the automatic . . . forfeiture . . . to foreclose the lien, are all final, unilateral, irrebuttable, and unalterable actions.")

Finally, Yonkers assumes, without any explanation or any citation, that deeming (pretending) the vehicle to have been abandoned, when it was not abandoned, was acceptable because "[c]ontrary to Santander's claims, the vehicle was not deemed abandoned . . . until . . . almost *one year after* the initial impoundment."[7] Yonkers Br. at 9 (emphasis in original). So what? Pretending a vehicle is abandoned has been universally rejected as a due process "workaround," including by this very district, a concept Yonkers completely ignores. See Santander Br. at 20-21 (citing, *inter alia*, Ford Motor Credit Co. v. NYC Police Dep't, 394 F. Supp. 2d 600, 614 (S.D.N.Y.

---

[7] It is unclear where this argumentative statement originates, as Santander accurately indicated that Yonkers began this process on June 29, 2022, *after* the May 2022 date in Yonkers's brief. Disputes of fact must be material; this clearly is not, as the salient point is the deeming of Santander's rights to have been abandoned, on whatever date it happened.

2005) ("the City cannot escape constitutional limitations . . . by simply labeling vehicles abandoned.")).

Yonkers's reliance on New York's abandoned vehicle law is also misplaced, as the facts do not indicate *this* Vehicle was abandoned at all. N.Y. Veh. & Traf. Law § 1224(1). It was not on any public road. Id. at § 1224 (1)(a-c). Nor was it "left... on property of another... without permission." Id. at 1224(1)(d). The Vehicle was not "left" anywhere; it was intentionally brought to Yonkers Towing by Yonkers Towing. Nor was the Vehicle on Yonkers Towing property "without permission." Yonkers Towing entered a contract with Yonkers to intentionally place impounded vehicles on Yonkers Towing's property, and then to intentionally keep them there pending payment. Nobody abandoned this Vehicle; they simply did not pay Yonkers Towing for services it rendered to Yonkers. Tyler, 598 U.S. at 646 (discussing "constructive abandonment" and stating that "[a]bandonment requires the surrender or relinquishment or disclaimer of all rights" or the failure to make "any use of the property—and for a lengthy period of time.").

The Eastern District of Pennsylvania recently treated the blatantly false claim that a vehicle was abandoned, when it did not meet the statutory definition, quite harshly:

> [Pennsylvania's abandoned vehicle statute] § 7303.1 does not apply in the circumstances presented here. Rather, it governs requests by police for "licensed salvor[s]" to "remove, possess and further process" abandoned vehicles. **It says nothing about mischaracterizing a vehicle seizure incident to arrest as an abandonment**.... [I]t appears that the Accord did not meet the statutory definition of 'abandoned' when [the officer] declared it so on September 24. Compare 75 Pa. C.S.A. § 102 (defining an "abandoned vehicle" as, *inter alia*, one that "has remained on the private property of a salvor for 20 days") with 75 Pa. C.S.A. § 7301 (statutory scheme distinguishes a "salvor" from a "repair or towing business") and Aston Inter. Resp. No. 3 (Luongo's [towing company] acts as "police impound" from date of police seizure until [the town of] Aston's declaration of abandonment).

American Honda Fin. Corp. v. Twp. of Aston, 546 F. Supp.3d 371, 376 (E.D. Pa. 2021). This Court should treat Yonkers's attempt to put the square peg of this seized Vehicle into the inapplicable round hole of abandonment no differently.

### III.    Yonkers took Santander's property interests without just compensation.

Yonkers argues that "Santander's claim of an unlawful taking fails. . . because. . . the subject property was removed pursuant to police power, not eminent domain." Yonkers Br. at 2. Yonkers claims there is a blanket rule that "a government's seizure of private property under a power other than that of eminent domain does not require compensation . . . ." Yonkers Br. at 10 (emphasis removed) (citing Bennis v. Michigan, 516 U.S. 442, 452 (1996)). But Yonkers's own quotation—that the government "may not" be required to provide compensation—indicates how blatantly they have overstated the rule, because this of course means that it "may be" required to provide compensation, depending on the circumstances. Bennis, 516 U.S. at 452. In fact, Yonkers omits the entire quote and thereby obscures its much narrower meaning:

> Petitioner also claims that the forfeiture in this case was a taking of private property for public use in violation of the Takings Clause of the Fifth Amendment . . . . But if the forfeiture proceeding here in question did not violate the Fourteenth Amendment, the property in the automobile was transferred by virtue of that proceeding from petitioner to the State. The government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain.

Id. at 452. Bennis involved civil forfeiture with due process galore, a completely legitimate exception to the warrant requirement (detention pending forfeiture), and the government taking title to the property because it was contraband or an instrumentality of a crime.

The cases Yonkers cites from the Federal Circuit—Acadia Tech and AmeriSource— similarly indicate a much narrower rule than the one Yonkers's pushes here:

> When property has been seized pursuant to the criminal laws or subjected to in rem forfeiture proceedings, such deprivations are not "takings" for which the owner is entitled to compensation. The same rule applies even if the property is seized as evidence in a criminal investigation or as the suspected instrumentality of a crime, but is ultimately returned to the owner either because the government does not pursue forfeiture proceedings or because the owner prevails in a forfeiture action.

Acadia Tech., Inc. v. United States, 458 F.3d 1327, 1331–32 (Fed. Cir. 2006) (internal citations omitted) (holding a civil forfeiture is not an unconstitutional taking); see also AmeriSource Corp.

v. United States, 525 F.3d 1149, 1154 (Fed. Cir. 2008) ("[o]nce the government has lawfully seized property **to be used as evidence in a criminal prosecution**, it has wide latitude to retain it so long as the investigation continues.") (emphasis added). The Federal Circuit clarified only last year that:

> [T]he government is not liable under the takings clause for property seizure during a criminal investigation or for damage to such property in its custody, even if the decrease in value renders the property essentially worthless. None of these cases, however, suggests or even considers whether the police power exception immunizes the government from liability for failing to return property legally seized **after the government's need to retain the property ends**.

> While the United States' police power may insulate it from liability for an initial seizure, **there is no police power exception that insulates the United States from takings liability for the period after seized property is no longer needed** . . . .

Jenkins v. United States, 71 F.4th 1367, 1373 (Fed. Cir. 2023) (emphasis added).

Yonkers did not hold this Vehicle as evidence, nor in anticipation of a criminal or civil forfeiture, as in Bennis, Acadia Tech, or AmeriSource. Rather, as in Frein and Brewster, the car was not forfeitable as contraband or the instrumentality of a crime, and Yonkers even vehemently insists that it "had no interest in retaining the vehicle and repeatedly notified Santander as to how to obtain it." Yonkers Br. at 5. Rather, Yonkers removed the Vehicle from the road as part of its community caretaking function. Yonkers Br. at 4 ("the vehicle was removed… in the interests of public safety, under the 'community caretaking function'"). It then unreasonably executed that seizure by immediately giving the Vehicle away to its vendor (Yonkers Towing) as compensation, and then insisted that Santander either fund Yonkers's police activity or lose its rights in the Vehicle. Where Defendants "exceeded the scope of their police powers by adopting means inconsistent with the Fourth Amendment," they are also liable for a taking. Brewster v. City of Los Angeles, 672 F. Supp. 3d 872, 975 n. 52 (C.D. Cal. 2023). And where Defendants' actions were accomplished without any procedural due process whatsoever—a fact Yonkers concedes by not once using the word "hearing"—Bennis's reasoning is inapplicable" because "forfeiture proceedings . . . are all conducted pursuant to a judicial process, and here Defendants accomplished

the takings without any involvement by a court." <u>Brewster</u>, 672 F. Supp. 3d at 975 (citation omitted).

Any argument that Yonkers's actions in facilitating the transfer of title to Yonkers Towing was a private action, and not a taking for public purpose, fails because "one person's property may not be taken for the benefit of another private person without a justifying public purpose, even though compensation be paid." <u>Thompson v. Consol. Gas Utilities Corp.</u>, 300 U.S. 55, 80 (1937); <u>Hawaii Hous. Auth. v. Midkiff</u>, 467 U.S. 229, 240 (1984) ("[t]he 'public use' requirement is. . . coterminous with the scope of a sovereign's police powers."). "The essential question is. . . . whether the government has physically taken property for itself or someone else—by whatever means . . . ." <u>Cedar Point Nursery v. Hassid</u>, 141 S. Ct. 2063, 2072 (2021).

In 2015, The Supreme Court applied the Fifth Amendment takings clause to the government's physical taking of personal property (not real estate) pursuant to a scheme that had nothing to do with eminent domain. <u>Horne v. Dep't of Agric.</u>, 576 U.S. 350, 367 (2015). Although the case involved an uncompensated taking of raisins, Chief Justice Roberts outright said that:

> Nothing in the text or history of the Takings Clause, or our precedents, suggests that the rule is any different when it comes to appropriation of personal property. **<u>The Government has a categorical duty to pay just compensation when it takes your car, just as when it takes your home</u>**.

<u>Id.</u> at 358 (emphasis added). He went on to describe the history of the Takings Clause:

> [E]arly Americans bridled at appropriations of their personal property during the Revolutionary War, at the hands of both sides. John Jay, for example, complained to the New York Legislature about military impressment by the Continental Army of "**<u>Horses, Teems, and Carriages</u>**," . . . . According to the author of the first treatise on the Constitution . . . the Takings Clause was "probably" adopted in response to "the arbitrary and oppressive mode of obtaining supplies for the army, and other public uses, by impressment, as was too frequently practiced [sic] during the revolutionary war, without any compensation whatever.

<u>Id.</u> at 359 (emphasis added) (citations and quotations omitted). If the framers adopted the Fifth Amendment to prohibit the uncompensated taking of horses and carriages for the military, it takes

very little imagination to believe they also would intend it to prohibit the taking of Vehicles to be used as payment for agents of the police. Nor is it of any consequence that Santander "could have" paid to get its Vehicle back, because a "demand for money" that "operate[s] upon . . . an identified property interest" can be a taking, and it is akin to another relevant form of taking requiring "the government [to] pay just compensation when it takes a lien." <u>Koontz v. St. Johns River Water Mgmt. Dist.</u>, 570 U.S. 595, 613 (2013) (citations and quotations omitted).

Yonkers wanted Santander to pay for Yonkers's law enforcement activities by paying their towing vendor, Yonkers Towing. In lieu of Santander paying the city's tow bill, Yonkers "deemed" (pretended) that the Vehicle had been abandoned so that, instead, the proceeds of the sale of the Vehicle could be used to pay for Yonkers's law enforcement activities. That is precisely why this matter is a taking. Yonkers "cares only about [Santander's] failure to contribute… to the public fisc. The [City] cannot frame that failure as abandonment to avoid the demands of the Takings Clause." <u>Tyler</u>, 598 U.S. at 647.

## IV.    <u>New York State Constitution</u>

If indeed this Court finds Defendants liable under 42 U.S.C. § 1983, then it need not address the New York State Constitution. What is fascinating in this instance is Yonkers's reliance, to make this point, on two cases ***which both dictate that it should lose*** on the § 1983 issue. <u>See</u> Yonkers Br. at 11 (citing <u>TD Auto Fin.</u>, 2023 WL 6295116 at *13 and <u>Santander Consumer USA Inc., v. City of Yonkers</u>, 20-CV-4553-KMK, 2022 WL 4134718, at *9 (S.D.N.Y. Dec. 1,2022)). Indeed, ***Yonkers itself***, along with Yonkers's Towing predecessor company (APOW), lost the latter litigation. 2022 WL 4134718, at *9 ("Defendants' warrantless seizure of the Vehicle violated the Fourth and Fourteenth Amendments . . . ."). Santander notes that, should the Court deny its partial summary judgment motion and determine that Defendants conduct did not violate the Federal Constitution, New York's constitution is more extensive and must be analyzed separately.

**V.        Santander is entitled to damages and declaratory relief**

Yonkers claims that a declaratory judgment is not necessary because the policy at issue here indicated that a lienholder "could be notified" of an impoundment. Yonkers Br. at 12. But that proposition has been wrong for over 100 years. Coe v. Armour Fertilizer Works, 237 U.S. 413, 424 (1915) (stating that notice "must be provided as an essential part of the statutory provision, and not awarded as a mere matter of favor or grace."). Yonkers also claims that declaratory relief is "moot" because "the City revised its impound policy in 2022 to require such notice" to lienholders. Yonkers Br. at 12. Wrong again: "a controversy between the parties over the legality" of the conduct "still remains" because "[v]oluntary discontinuance of an alleged illegal activity does not operate to remove a case from the ambit of judicial power." Walling v. Helmerich & Payne, 323 U.S. 37, 43 (1944). More importantly, the *only* thing Yonkers changed is the requirement that notice be sent to lienholders, which used to be a mere suggestion. Yet every other problem remains, particularly the complete lack of a hearing, the requirement that a lienholder fund Yonkers's police activities with its money or through the loss of its collateral, and the due process "work around" of pretending vehicles are abandoned when they are not. See Yonkers Certification, Ex. 12, at Dkt. No. 97-12, at 6 of 9 (requiring notice *of the impound* to be sent to lienholders but not otherwise changing Yonkers's policies). A declaration should be issued.

Yonkers does not even address monetary damages, conceding the point. Yonkers Br. at 11-12. Even as to Santander's measure of damages, Yonkers does not point to record evidence—as required by Rule 56—to show there is a dispute of fact to be tried on damages; it simply claims that it "lacks knowledge of or information regarding [Santander's] alleged use of [the] J.D. Power Used Car Guide." See Dkt. No. 99, Yonkers Counterstatement, ¶¶ 43-45. Yonkers Towing "defers" to Santander's statement of undisputed material facts, and therefore confirms there are no fact questions about damages or anything else. See Dkt. No. 95 at 1. In fact, Yonkers Towing

outright says that "[n]o question of fact also exists as to Plaintiff's entitlement to damages." YTR Mv. Br. at 8. Thus, neither Defendant has pointed to any record evidence to dispute that, if there is liability, the Vehicle was worth $33,318 at the time of impound.

Yet Yonkers Towing elsewhere says "[a] material fact also exists as to Plaintiff's . . . damages." YTR Opp'n Br. at 8. And, buried in Yonkers Towing's papers, its owner, Mr. Wuestenhoefer, argues that he "showed during his deposition that the subject vehicle was in fact damaged and said damage affects the 'high value' of the vehicle." See Dkt. No. 89. Generously construing this argument notwithstanding Yonkers Towing's complete failure to follow the appropriate procedure, Mr. Wuestenhoefer hardly 'established' anything by claiming the Vehicle was damaged, given that the photos Yonkers Towing produced show little, if any, actual damage to the Vehicle, and certainly none so great as to affect the Vehicle's value. See June 19, 2024 Declaration of Nicholas A. Duston, at Ex. 1. But regardless, a trial on whether the Vehicle was worth $33,318 or something between $33,318 and the $22,000 would be more wasteful than the difference ($11,318) justifies. Therefore, in the event the Court believes that Yonkers Towing has raised a dispute of fact as to the value of the Vehicle—albeit having done so in a procedurally improper manner—then Santander is willing to accept $22,000 in damages. This is the admitted value of the Vehicle when Yonkers Towing sold it, and there can be no serious debate that the Vehicle was worth *at least* $22,000 a year *before* Yonkers Towing achieved a $22,000 sale price at an arms-length auction.

Turning to Yonkers Towing's repeated statement that Santander should have "mitigated" its damages, Yonkers Towing does not entirely say what it thinks Santander should have done to mitigate damages, but implies that it had "the opportunity to retrieve the subject motor vehicle." YTR Opp'n Br. at 8; YTR Mv. Br. at 8. Santander is not obligated to have tolerated a violation of its rights to mitigate its damages. It does not matter that Yonkers Towing would have been willing

to "negotiate[] the amount of money" that it wanted, Id. at 9, because Santander was not obligated to party with *any* of its money in the absence of due process merely to save the loss of its car in the absence of due process. Craig, 449 F. Supp. at 395 (M.D. Fla. 1978) (describing this as an unconstitutional to force a "Hobson's choice" between "payment of fees or loss of a vehicle."). One Circuit Court recently assessed the argument that a wronged party should have paid storage fees to the wrongdoer to rescue its illegally-withheld property, finding the concept is "absurd." Adenariwo v. Fed. Mar. Comm'n, 808 F.3d 74, 79 (D.C. Cir. 2015). As the Second Circuit has already ruled, the damages in this type of case are "the value of its security interest as of the time the City seized the vehicle." Ford Motor Credit Co., 503 F.3d at 191.

The remainder of Yonkers Towing's discussion of damages is so nonsensical that it barely warrants comment. For example, Santander is not "seek[ing] damages by virtue of the breach of the contract with the owner," since neither defendant is a party to that contract. YTR Opp'n Br. at 9; YTR Mv. Br. at 9. The contract simply establishes that Santander had a right to repossess the Vehicle. Nor is Santander seeking "to punish the Defendant, City of Yonkers, for its purported failure to speedily comply with the dictates of the Order issued in the Toyota matter." YTR Mv. Br. at 8. And nothing about the pending motion is "Plaintiff's repeated attempt to receive attorneys fees," YTR Mv. Br. at 8, though it will be entitled to seek them if it succeeds. None of this, or any of YTR's other nonsensical asides within the subject of damages, relates to the damages sought here: the value of the vehicle at the time of impound and declaratory relief. These nonsensical arguments can, therefore, be disregarded.

## CONCLUSION

For the foregoing reasons, the Court should grant Santander's motion, hold both Defendants liable for violating Santander's Fourth and Fourteenth Amendment rights, find Yonkers liable for violation Santander's Fifth Amendment rights, issue an appropriate declaration,

and hold Defendants jointly and severally liable for the $33,318 Vehicle (or, at the lowest, the $22,000 value of the Vehicle), and any other relief the Court deems appropriate.

Dated: June 19, 2024

**NORRIS MCLAUGHLIN, P.A.**

By: _/s/ Nicholas Duston_____
      Nicholas A. Duston
      7 Times Square, 21st Floor
      Yonkers, NY 10036
      212-808-0700
      naduston@norris-law.com

      *Counsel for Plaintiff Santander*
      *Consumer USA, Inc.benne*