UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SANTANDER CONSUMER USA, INC.,

                        *Plaintiff*,

      v.

THE CITY OF YONKERS, A.P.O.W.
TOWING, LLC, *and* YONKERS TOWING &
RECOVERY LLC,

                        *Defendants*.

No. 22-CV-8870 (KMK)

<u>OPINION & ORDER</u>

---

<u>Appearances</u>:

Alexander Ryan Sokolof, Esq.
Nicholas Andrew Duston, Esq.
Norris McLaughlin, PA
New York, NY
*Counsel for Plaintiff*

Darius Patrick Chafizadeh, Esq.
Jared Andrew Kasschau, Esq.
Jessica Molinares Kalpakis, Esq.
White Plains, NY
*Counsel for Defendant City of Yonkers*

Dennis E.A. Lynch, Esq.
Blanchard & Wilson, LLP
White Plains, NY
*Counsel for Defendant City of Yonkers*

Paul William Meyer, Esq.
Law Office of Paul W. Meyer, Jr.
Yonkers, NY
*Counsel for Defendants A.P.O.W. Towing, LLC, and Yonkers Towing & Recovery LLC*

KENNETH M. KARAS, United States District Judge:

Santander Consumer USA, Inc. ("Plaintiff") brings this Action under 42 U.S.C. § 1983 ("Section 1983") against Defendants The City of Yonkers ("Yonkers"), and A.P.O.W. Towing, LLC, and Yonkers Towing & Recovery LLC (together, "YTR"), alleging constitutional and state law violations in connection with the seizure of Plaintiff's car.  (*See generally* Am. Compl. (Dkt. No. 59).)  Before the Court are:  (1) Santander's Motion for Partial Summary Judgment, (2) Yonkers' Cross Motion for Summary Judgment, and (3) YTR's Cross Motion for Summary Judgment.  For the reasons discussed below, Santander's Motion is granted in part and denied in part, Yonkers' Motion is granted in part and denied in part, and YTR's Motion is granted in part and denied in part.

## I.  Background

### A.  Factual Background

The following facts are taken from Plaintiff's 56.1 Statement ("Pl's 56.1") (Dkt. No. 82), YTR's Counter 56.1 Statement ("YTR's Counter 56.1") (Dkt. No. 90), Yonkers' 56.1 Statement ("Yonkers' 56.1") (Dkt. No. 98), Yonkers' Counter 56.1 Statement ("Yonkers' Counter 56.1")

(Dkt. No. 99)[1], Plaintiff's Counter to Yonkers' 56.1 Statement ("Pl's Counter 56.1") (Dkt. No.

102-2), and the admissible evidence submitted by the Parties.[2]

_____

[1] Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Civ. R. 56.1(a). The nonmoving party, in turn, must submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short[,] and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Local Civ. R. 56.1(b). A court may not accept a conclusory denial in a Rule 56.1 counterstatement if the denial is not supported by admissible evidence. *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 354–55 (E.D.N.Y. 2015) (granting summary judgment where nonmoving party "relie[d] solely on his own general statements" rather than admissible evidence in disputing moving party's statement of material facts).

Here, Yonkers and YTR's counterstatements include denials where they cite no admissible evidence and simply state that they "ha[ve] no knowledge or information regarding" the disputed fact. (*See* Yonkers' Counter 56.1 ¶¶ 1, 6–7, 11; YTR's Counter 56.1 ¶¶ 1, 6–13, 17–19, 26, 29–32, 35–39, 41–42.) At the very least, because both Defendants have failed to specifically controvert material facts at paragraphs 1, 6, 7, and 11, they will be deemed admitted. *See Mae v. Quickway Estates LLC*, No. 22-CV-3048, 2023 WL 6162927, at *1 n.2 (S.D.N.Y. Sept. 21, 2023) (citing Local Civ. R. 56.1(c) and deeming facts admitted where defendants noted they had no information as to those facts).

Yonkers also includes a number of responses that admit the fact "for the limited purpose of this dispositive motion" but deny the fact "to the extent that it is a material fact relevant to Plaintiff's claims. . . ." (*See* Yonkers' Counter 56.1 ¶¶ 8–10, 13.) Because Yonkers explicitly admits these facts, and because Yonkers' "denials" fail to specifically controvert the asserted fact, the Court will deem these facts admitted.

Finally, a number of Yonkers' denials completely miss the mark. For example, in response to a fact about how repossession of an impounded vehicle requires the party seeking possession to pay a fee and obtain a release, Yonkers responds: "Denied except to admit that as the subject vehicle was towed subsequent to the criminal arrest of the non-party registered owner and operator of the vehicle for driving while intoxicated, a District Attorney's Release was required to be obtained in order to retrieve the vehicle." (*Id.* ¶ 25.) That the vehicle was towed subsequent to an arrest does not address whether a party seeking repossession needs to pay a fee. Yonkers' Counter 56.1 Statement is littered with these kinds of denials. (*See id.* ¶¶ 25, 28, 36–40.) Yet, these denials do not specifically controvert Santander's asserted facts, and so the facts are deemed admitted to the extent the Court determines that they are supported by record evidence. *See Mae*, 2023 WL 6162927, at *1 n.2 (deeming facts to which defendant asserted general denials admitted once the Court "scrutinized [p]laintiff's submitted evidence to determine whether the evidence supports [p]laintiff's statements").

[2] In response to Plaintiff's 56.1 Statement, YTR filed a Counter 56.1 Statement that fails to comply with the Court's Individual Rules of Practice § II.D, which requires that the opposing

1.  Defendants' Policies, Customs, and Practice

Yonkers' policies and procedures regarding the handling of impounded vehicles seized

pursuant to the driver's arrest are derived in the first instance from Yonkers Police Department

("Yonkers P.D.") Policy 180-4.  (*See* Decl. of Darius P. Chafizadeh in Supp. of Yonkers' Mot.

("Chafizadeh Decl."), Ex. 2 ("Vehicle Impound Policy") (Dkt. No. 97-2) 3.)  Police officers

decide whether to impound a vehicle in situations where the vehicle is inoperable, the vehicle is

needed for evidence in connection with an investigation, or when the vehicle operator is

"removed from a vehicle in connection with an arrest . . . and no other person present can legally

_____

party "must reproduce each entry in the moving party's Rule 56.1 Statement and set out the
opposing party's response directly beneath it."  Instead, YTR simply numbers its admissions or
denials in bullet form.  YTR's "failure to reproduce [Plaintiff's] Rule 56.1 Statement defeats the
purpose of [the Court's] individual [rule], which is designed to obviate the need to go back and
forth between the two Rule 56.1 Statements."  *Gilani v. Teneo, Inc.*, No. 20-CV-1785, 2021 WL
3501330, at *1 n.1 (S.D.N.Y. Aug. 4, 2021).
    YTR's failure to comply with the rules does not end there.  In moving for summary
judgment itself, YTR was obligated to submit its own Rule 56.1 Statement.  YTR's 56.1
Statement states in sum that, "[p]ursuant to the provisions of Federal Rule of Civil Procedure
56(f)(1) and Local Rule 56.1, [YTR] defer[s] to [Plaintiff's 56.1] and [YTR's Counter 56.1]."
(*See* YTR's 56.1 Statement in Supp. of its Mot. (Dkt. No. 95) 1.)  YTR offers no statements of
material facts, undisputed or otherwise.  Its citations are inapposite, as they do not relieve a
movant of the burden to submit a Rule 56.1 statement.  Plaintiff correctly notes that YTR's filing
fails to comply with Rule 56.1.  (*See generally* Pl's Counter to YTR's 56.1 Statement (Dkt. No.
102-3).)
    Courts regularly deny summary judgment where a movant fails to comply with Rule
56.1, including when the movant fails to submit a 56.1 Statement.  *See Antwi v. Health & Human
Sys. (Ctrs.) F.E.G.S.*, No. 13-CV-835, 2014 WL 4548619, at *4 (S.D.N.Y. Sept. 15, 2014) ("The
failure to file a Rule 56.1 Statement is, on its own, grounds for denial of a motion for summary
judgment." (citation omitted)); *Bristol v. Schenk*, No. 14-CV-6647, 2017 WL 9485715, at *4–5
(E.D.N.Y. July 31, 2017) (collecting cases).  However, the Court has "broad discretion to
determine whether to overlook a party's failure to comply with local court rules."  *Commerzbank
AG v. U.S. Bank, N.A.*, 100 F.4th 362, 377 (2d Cir. 2024) (citation omitted).
    The Court will exercise its discretion here and overlook YTR's repeated deficiencies.
The Court cautions YTR, however, that compliance with local rules and individual rules of
practice is not a matter to be taken lightly or ignored and that any future transgressions may be
met with sanctions.

assume control of the vehicle." (*Id.* 3–4.)  Yonkers P.D. keeps a tow list from which towing

companies are summoned to impound vehicles.  (*See id.* 3.)  To join the list, towing companies

enter into an "Emergency Towing & Impound Services" contract with Yonkers.  (*See* Decl. of

Nicholas A. Duston ("Duston Decl."), Ex. 4 ("Towing Contract") (Dkt. No. 80-6) 8.)  Towing

companies pay Yonkers annually to be included on the tow list.  (*Id.* 14; *see also* Yonkers'

Counter 56.1 ¶ 33.)  Towing companies are to respond within 20 minutes of being called by

Yonkers P.D.  (Towing Contract 9.)  The contract further dictates requirements for the towing

company's impound lot to which vehicles are towed.  (*Id.* 9–11.)  The towing company "shall

look to the owner of the vehicle for payment of all fees at the time the vehicle is release from the

[i]mpound [l]ot." (*Id.* 12.)  Vehicles may not be disposed of for a minimum of 60 days.  (*Id.* 13.)

The contract states that vehicles may be "authorized for disposal," but does not elaborate further

on the process for authorization or disposal, except to say that the towing company "will dispose

of abandoned and unclaimed vehicles in accordance with the law." (*Id.* 13–14.)  Yonkers "will

not be responsible for the payment of any fees and/or charges for privately owned vehicles that

are towed, removed[,] or stored for any period of time." (*Id.* 12.)

　　　All impounded vehicles are towed to the towing company's storage facility unless

directed otherwise.  (Vehicle Impound Policy 3.)  Whenever a vehicle is impounded, Yonkers

P.D. prepares a YPD-11 "Impound/Recovered Vehicle Report." (*Id.* 4–5.)  The officer who

impounds a vehicle is responsible for notifying the vehicle's listed owner via a YPD-44

"Impound Notification and Release Information Letter." (*Id.* 5.)

　　　At the time of the seizure relevant to this Action, Policy 180-4 permitted, but did not

require, notice via a YPD-44 letter to lienholders.  (Pl's Counter 56.1 ¶ 18.)  In 2022, Policy 180-

4 was revised to require that a YPD-44 letter be sent to a vehicle's registered owners, titled

owners, and lienholders. (*Id.*; *see also* Chafizadeh Decl., Ex. 12 ("Updated Vehicle Impound Policy") (Dkt. No. 97-12) 6.) The contract between the towing company and Yonkers does not explicitly require the towing company to notify an impounded vehicle's owner. (*See generally* Towing Contract.)

An individual who wishes to retrieve a vehicle impounded pursuant to this policy must receive a release from the Westchester County District Attorney's office (the "DA") that says that the vehicle is not needed in any prosecution as evidence, case enhancement, or discovery. (Pl's Counter 56.1 ¶ 5.) The DA release should be taken to Yonkers P.D., which then produces its own release that can be taken to the towing company. (*Id.* ¶ 14.) The towing company will release the vehicle if the owner or property interest holder provides a release from Yonkers P.D. and pays towing and storage fees. (Yonkers' Counter 56.1 ¶ 25.)

If the vehicle is not claimed and repossessed, Yonkers may deem a vehicle abandoned pursuant to N.Y. Vehicle and Traffic Law ("VTL") § 1224, which provides that vehicles are abandoned:

> if left unattended (a) with no number plates affixed thereto, for more than six hours on any highway or other public place; (b) for more than twenty-four hours on any highway or other public place, except a portion of a highway or public place on which parking is legally permitted; (c) for more than forty-eight hours, after the parking of such vehicle shall have become illegal, if left on a portion of a highway or public place on which parking is legally permitted; (d) for more than ninety-six hours on property of another if left without permission of the owner.

VTL § 1224(1). "Ownership of such abandoned vehicles, if unclaimed, shall vest in such local authority from the date [notice to the last owner] is given." *Id.* § 1224(3)(c). Yonkers' custom is to then transfer the abandoned vehicle to the towing company, which can sell or auction the vehicle. (*See* Pl's Counter 56.1 ¶ 17.)

## 2. Seizure and Impounding

On April 23, 2021, a non-party car dealership sold Shamar Turner ("Turner") a 2018 Land Rover (the "Vehicle"). (Yonkers' Counter 56.1 ¶¶ 5–6.) The dealership and Turner entered into a retail installment contract that was assigned to Santander. (*Id.* ¶¶ 6–7.) By virtue of the assignment, Santander obtained a lien on the Vehicle, which it perfected via a title issued on June 9, 2021. (*Id.* ¶¶ 8–9.)

The contract stated that Turner would default on its terms if he missed a payment or "expose[d] the [V]ehicle to . . . seizure, confiscation, or involuntary transfer." (Decl. of Edward Vargas in Supp. of Pl's Mot., Ex. A (Dkt. No. 80-1) 8.) Santander reserved the right to repossess the Vehicle in the event of a default. (*Id.*)

On June 15, 2021, Turner was arrested for driving while intoxicated. (Yonkers' Counter 56.1 ¶ 14.) As a result, Yonkers seized the Vehicle, which YTR towed to its secure lot. (*Id.* ¶ 16; *see also* Duston Decl., Ex. 5 ("Yonkers' Resp. to Req. for Adm.") (Dkt. No. 80-7) 3 (admitting that YTR towed and stored the Vehicle pursuant to an agreement with Yonkers).)

## 3. Post-Impound Events

On June 18, 2021, Santander learned that the Vehicle was impounded. (Pl's Counter 56.1 ¶ 6.) Santander retained the services of PAR North America ("PAR") to retrieve the Vehicle from YTR. (*Id.* ¶ 9.) Santander and PAR were told that there was a "hold" placed on the Vehicle and that it could not be released without a release from the DA. (*Id.*) Santander received a letter from YTR dated July 13, 2021, that notified it of the Vehicle's impounding. (*Id.* ¶ 11.) Yonkers sent letters dated August 5, 2021, to Santander and Turner informing them that they had 10 days to claim the Vehicle, otherwise it would be "disposed of" in accordance with VTL § 1224. (*Id.* ¶ 12.)

The Parties dispute the reasons Santander and PAR did not successfully contact the DA to obtain a release, (*id.* ¶ 10 (disputing Santander and PAR's diligence in attempting to contact the DA via phone, mail, or visit)), but it is undisputed that neither Santander nor PAR successfully contacted the DA or obtained a DA release, (*id.* ¶ 15). It is similarly undisputed that Yonkers did not hold any hearing regarding the Vehicle. (Yonkers' Resp. to Req. for Adm. 6.)

On May 1, 2022, Yonkers deemed the Vehicle abandoned pursuant to VTL § 1224. (Pl's Counter 56.1 ¶ 17.) It appears that YTR titled the vehicle on or about June 29, 2022. (*See* Chafizadeh Decl., Ex. 10 (Dkt. No. 97-10) 3 (a bill of sale regarding the Vehicle listing YTR as the seller.) On September 1, 2022, YTR sold the Vehicle. (*Id.*)

B. Procedural Background

Santander initiated this Action on October 18, 2022. (*See* Dkt. No. 1.) Defendants answered on November 14 and 15, 2022. (*See* Dkt. Nos. 13, 16.) While Defendants initially opposed Santander's Motion for Leave to File an Amended Complaint, (*see* Dkt. Nos. 41–43, 49–52), they later withdrew their Oppositions, (*see* Dkt. No. 54), and Plaintiff filed its Amended Complaint on July 11, 2023, (*see* Dkt. No. 59). Defendants filed their Answers on July 27 and August 8, 2023. (*See* Dkt. Nos. 63, 65.)

Following close of discovery, Santander filed a Motion for Partial Summary Judgment on March 28, 2024. (*See* Not. of Mot. (Dkt. No. 80).) On May 29, 2024, Defendants filed their Opposition and Cross-Motions for Summary Judgment. (*See* Dkt. Nos. 87–101.) On June 19, 2024, Santander and Yonkers each filed a Reply. (*See* Dkt. Nos. 102, 103.)

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (same); *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In deciding whether to award summary judgment, the court must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  *Torcivia v. Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021); *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) (same).  "It is the movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration, citation, and quotation marks omitted).  Further, "[t]o survive a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . .").

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharms. Tech. Corp. v. Barr Laby's. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323–24).

When ruling on a motion for summary judgment, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits or deposition testimony to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity v. Kralik*, 51 F. Supp. 3d 414, 419 (S.D.N.Y. 2014) (disregarding

"statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (citation omitted)).

**B.  Section 1983 (Counts I, II, and III)**

Santander's first three causes of action are for "violation[s] of civil rights" pursuant to 42 U.S.C. § 1983 ("Section 1983"). (Am. Compl. ¶¶ 50–82.) Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. To prevail on a claim arising under Section 1983, a plaintiff must prove that the conduct at issue was "committed by a person acting under color of state law" and "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quotation marks omitted).

Santander argues that YTR was a state actor for Section 1983 purposes. (*See* Plaintiff's Mem. in Supp. of its Mot. ("Pl's Mem.") (Dkt. No. 81) 32–33.) Neither YTR nor Yonkers argues that YTR's towing of the Vehicle was not performed under color of state law. (*See generally* YTR's Mem., Yonkers' Mem. in Opp. to Santander's Mot. and in Supp. of its Cross-Mot. ("Yonkers' Mem.") (Dkt. No. 100).) Even if Defendants' briefing could be read to infer such an argument, it fails to carry the day. "Actions of a private entity are attributable to the State if there is a sufficiently close nexus between the State and the challenged action of the entity so that the action of the latter may be fairly treated as that of the State itself." *Barrows v. Becerra*, 24 F.4th 116, 135 (2d. Cir. 2022). The nexus exists "(1) when the entity acts pursuant

to the coercive power of the state or is controlled by the state ('the compulsion test'); (2) when

the state provides significant encouragement to the entity, the entity is a willful participant in

joint activity with the state, or the entity's functions are entwined with state policies ('the joint

action test' or 'close nexus test'); [or] (3) when the entity has been delegated a public function by

the state ('the public function test')." *Id.* (quoting *Fabrikant v. French*, 691 F.3d 193, 207 (2d

Cir. 2012) (alteration and internal citation omitted)).  A private entity does not become a state

actor for the purposes of Section 1983 merely on the basis of licensing by the government.  *See*

*Fabrikant*, 691 F.3d at 207.  "The touchstone of joint action is often a 'plan, prearrangement,

conspiracy, custom, or policy' shared by the private actor and the [state actors]."  *Forbes v. City*

*of New York*, No. 05-CV-7331, 2008 WL 3539936, at *5 (S.D.N.Y. Aug. 12, 2008) (quoting

*Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999)).

   Here, there is more than mere licensing—YTR's towing of the Vehicle is joint action

with and directed by Yonkers.  (*See* Yonkers' Counter 56.1 ¶ 3–4 (admitting that Yonkers

contracts with entities, including YTR, "to tow certain vehicles when [Yonkers] resources do not

provide for that activity," and that YTR towed the Vehicle at Yonkers' direction).)  *See Dennis v.*

*Sparks*, 449 U.S. 24, 27–28 (1980) ("Private persons, jointly engaged with state officials in the

challenged action, are acting . . . 'under color' of law for purposes of [Section] 1983 actions.");

*see also Ali ex rel. Cofield v. Liggett*, No. 22-CV-944, 2022 WL 17478264, at *5 n.1 (N.D.N.Y.

Sept. 20, 2022) ("[T]here is authority finding that a tow truck operator is a state actor for

purposes of a Section 1983 claim."), *report and recommendation adopted*, 2022 WL 16918289

(N.D.N.Y. Nov. 14, 2022); *Walters v. T&D Towing Corp.*, No. 17-CV-681, 2018 WL 1525696,

at *5 n.5 (E.D.N.Y. Mar. 28, 2018) (same).  Courts outside the Second Circuit have also held

towing companies to be state actors.  *See, e.g.*, *Stypmann v. City & County of San Francisco*, 557

12

F.2d 1338, 1341–42 (9th Cir. 1977) (finding a towing company a state actor where it was "a willful participant in a joint activity with the State or its agents" (quoting *United States v. Price*, 383 U.S. 787, 794 (1966))); *Tarantino v. Syputo*, No. 03-03450, 2006 WL 1530030, at * 7 (N.D. Cal. June 2, 2006) ("[T]owing companies are deemed to be state actors because they tow vehicles in response to orders by law enforcement officials").

Related to YTR's status, the Court must determine whether Yonkers is subject to municipal liability pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Neither YTR nor Yonkers argues that Santander has failed to establish such liability. (*See generally* YTR's Mem., Yonkers' Mem.) "The elements of a *Monell* claim are (1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020). "Inherent in the principle that a municipality can be liable under [Section] 1983 only where its policies are the moving force behind the constitutional violation, is the concept that the plaintiff must show a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Anilao v. Spota*, 27 F.4th 855, 874 (2d Cir. 2022) (quoting *Outlaw v. City of Hartford*, 884 F.3d 351, 373 (2d Cir. 2018) (alteration adopted)).

Santander argues that Yonkers is liable because it was the "moving force behind the [alleged] constitutional violation," in that its policies formed the basis of the Vehicle's seizure and impounding. (Pl's Mem. 29–32.) Yonkers and YTR admit that the treatment of the Vehicle followed Yonkers' standard policies, practices, and customs for dealing with vehicle seized incident to arrest. (*See* Yonkers' Counter 56.1 ¶ 42; YTR Counter 56.1 ¶ 42; *see also* Pl's Counter 56.1 ¶¶ 2, 4–6, 11–12, 14, 17 (where Santander does not meaningfully dispute Yonkers' material facts that demonstrate that the treatment of the Vehicle complied with Yonkers'

policies).)  Courts have found municipal liability where the governmental entity admits that it

acted pursuant to its policies.  *See TD Auto Fin. LLC v. County of Putnam*, No. 21-CV-9080,

2023 WL 6295116, at *12 (S.D.N.Y. Sept. 27, 2023) (finding that "because the County admits

that its treatment of the Vehicle followed its own standard policies, practices, and customs . . .

municipal liability attaches"); *Am. Honda Fin. Corp. v. Township of Aston*, 546 F. Supp. 3d 371,

383–84 (E.D. Pa. 2021) (finding *Monell* liability attaches "[b]ecause the Township admits that its

treatment of the [vehicle] followed [the Township's] standard practice for dealing with vehicles

seized similarly").  That YTR, not Yonkers, effected the seizure, does not defeat liability.

Santander has demonstrated a "direct causal link" between Yonkers' policies and the alleged

constitutional deprivation.  As mentioned above, Yonkers concedes that the towing procedures

executed by YTR "were consistent with their regular policies, customers, and/or practices."

(Yonkers' Counter 56.1 ¶ 42.)  This is sufficient to demonstrate the necessary causal link and

expose Yonkers to municipal liability.  *See Am. Honda Fin. Corp. v. City of Revere*, 471 F. Supp.

3d 399, 404 (D. Mass. 2020) (holding the defendant city liable under *Monell* where it admitted

that a third-party towing company effected a seizure at the defendant city's direction and in

compliance with its policies).

  Having determined that Yonkers and YTR may be liable, the Court now turns to the

alleged constitutional violations.

  1.  Fourth Amendment – Unreasonable Seizure (Count I)

  Santander argues that Defendants' seizure of the Vehicle was unreasonable because they

retained it longer than the justification for seizure warranted.  (*See* Pl's Mem. 22–25.)  Yonkers

argues that there is no constitutional violation because the seizure was incident to an arrest and

that there can be no Fourth Amendment claim for wrongful retention when property is lawfully seized in the first instance. (Yonkers' Mem. 4–5.)

The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. "A seizure occurs when the Government interferes in some meaningful way with the individual's possession of property." *Kiss v. Torres*, No. 21-CV-10391, 2024 WL 1210941, at *13 (S.D.N.Y. Mar. 19, 2024) (quoting *United States v. Ganias*, 755 F.3d 125, 133 (2d Cir. 2014)). "The impoundment of a vehicle may implicate rights guaranteed by the Fourth Amendment's protection against unreasonable searches and seizures." *Vasquez v. Yadali*, No. 16-CV-895, 2020 WL 1082786, at *7 (S.D.N.Y. Mar. 5, 2020) (quoting *Bey v. Dist. of Columbia,* No. 17-CV-620, 2018 WL 5777021, at *5 (E.D.N.Y. Nov. 1, 2018)). "However, 'in the interests of public safety and what the Supreme Court has called community caretaking functions, automobiles are frequently taken into police custody.'" *Santander Consumer USA, Inc. v. Port Auth. of New York and New Jersey*, No. 20-CV-1997, 2022 WL 3099239, at *5 (E.D.N.Y. Aug. 4, 2022) (quoting *South Dakota v. Opperman*, 428 U.S. 364, 368–69 (1976)) (alteration adopted) (internal quotation marks omitted); *see also United States v. Morris*, No. 20-CR-100, 2022 WL 1651408, at *4 (W.D.N.Y. Apr. 12, 2022) ("It is well established that police have the authority, despite the absence of a warrant, to seize and remove from the streets automobiles in the interests of public safety and as part of their community caretaking functions—an authority that is beyond reasonable challenge." (quoting *United States v. Lyle*, 919 F.3d 716, 728 (2d Cir. 2019))), *report and recommendation adopted*, 2022 WL 1645261 (W.D.N.Y. May 24, 2022). Vehicle impoundments "do not need to be justified by probable cause, but only on a showing of reasonableness." *United States v. Rivera*, 700 F. Supp.

3d 60, 73 (S.D.N.Y. 2023).  "[W]hether a decision to impound is reasonable under the Fourth Amendment is based on all the facts and circumstances of a given case."  *Lyle*, 919 F.3d at 731.

Under the totality of the circumstances, the initial seizure of the Vehicle was reasonable. It is undisputed that the Vehicle was seized incident to Turner's arrest for driving while intoxicated.  (*See* Yonkers' Counter 56.1 ¶ 14.)  Santander initially gestures at an argument that the initial seizure was unreasonable, (*see* Pl's Mem. 22; Am. Compl. ¶¶ 54–55 (alleging that the seizure of the Vehicle was warrantless and that there was no legitimate exception to the warrant requirement)), but later concedes that the Court "may assume that Yonkers . . . could remove the Vehicle from the roadway as part of its community caretaking function," (Pl's Mem. in Opp. to Yonkers' Cross-Mot. ("Pl's Opp.") (Dkt. No. 102) 3).  And that is just as well, because, as noted, law enforcement does not need a warrant to seize vehicles "in the interests of public safety and as part of their community caretaking functions."  *See Rivera*, 700 F. Supp. 3d at 73 (quoting *Lyle*, 919 F.3d at 728).

Santander instead argues that the prolonged retention of the Vehicle "runs afoul of the Fourth Amendment."  (Pl's Mem. 22 (quoting *Krimstock v. Kelly*, 306 F.3d 40, 50 (2d Cir. 2002), *abrogated on other grounds by Culley v. Marshall*, 601 U.S. 377 (2024)).)[3]  Not so.  The Second Circuit explicitly "concluded that a seizure claim based on the unlawful retention was too 'novel' a theory to warrant Fourth Amendment protection."  *Shaul v. Cherry Valley-Springfield*

---

[3] *Krimstock* represents a line of cases holding, inter alia, that in the case of vehicles seized in the case of crimes "for which a motor vehicle could be considered an instrumentality," 306 F.3d at 43, plaintiffs must "be afforded a prompt post-seizure, pre-judgment hearing before a neutral judicial or administrative officer," *id.* at 61.  This holding, however, was abrogated by the Supreme Court in *Culley*, where it held that due process requires a timely forfeiture hearing, but not a separate preliminary hearing.  *See* 601 U.S. at 393.

*Cent. Sch. Dist.*, 363 F.3d 177, 187 (2d Cir. 2004) (citing *United States v. Jakobetz*, 955 F.2d

786, 802 (2d Cir. 1992)).  The Second Circuit has since clarified that:

> 'Where . . . an initial seizure of property was reasonable,' the government's 'failure
> to return the items does not . . . state a separate Fourth Amendment claim of
> unreasonable seizure.'  [*Shaul*, 363 F.3d at 187.]  Consistent with this rule, it is
> unconstitutional for the government to keep property that was seized based on a
> warrantless arrest, as that basis is not 'sufficient by itself to ensure the legality of
> the initial seizure.'  [*Krimstock*, 306 F.3d at 50.]  But 'a seizure claim based [solely]
> on the unlawful retention' of property that was lawfully seized has been recognized
> as 'too novel a theory to warrant Fourth Amendment protection.'  *Shaul*, 363 F.3d
> at 187 (internal quotation marks omitted).  Thus, '[t]o the extent the Constitution
> affords . . . any right with respect to a government agency's retention of lawfully
> seized property, it would appear to be procedural due process."  *Id.*

*Bennett v. Dutchess County, New York*, 832 F. App'x 58, 60 (2d Cir. 2020) (summary order); *see*

*also Vasquez v. Warren*, 630 F. Supp. 3d 524, 542–43 (S.D.N.Y. 2022) (citing *Shaul*, 363 F.3d at

187, *Bennett*, 832 F. App'x at 60, and *Ahlers v. Rabinowitz*, 684 F.3d 53, 62 (2d Cir. 2012), for

the proposition that the failure to return property that was lawfully initially seized does not state

a Fourth Amendment claim of unreasonable seizure, but could sound in procedural due process).

Santander argues that *Shaul* can be distinguished because it "involved a reasonable seizure

resulting in *accidental loss* of property the government intended to return, *not* intentional

detention accompanied by conditions for release."  (Pl's Mem. 23 (emphases in original).)  In

Santander's view, "here, there is more than 'solely' retention, and the theory is no longer

'novel.'"  (Pl's Opp. 7.)  Importantly, Santander does not actually elaborate on how there is more

than solely retention here and focuses primarily on the theory's novelty or lack thereof.

Santander claims that three Supreme Court cases, *Illinois v. Caballes*, 543 U.S. 405

(2005), *Rodriguez v. United States*, 575 U.S. 348 (2015), and *Manuel v. City of Joliet*, 580 U.S.

357 (2017), (*see* Pl's Opp. 7), indicate that the time has come for the theory that *Shaul* deemed

"too novel"— a Fourth Amendment seizure claim based solely on the unlawful retention of

property that was lawfully seized, (*see id.* 8).  Yonkers is correct that these cases are inapposite

and do not bear the weight that Santander puts upon them.  (*See* Yonkers' Reply in Supp. of its Cross-Mot. ("Yonkers' Reply") (Dkt. No. 103) 1–3.)  In *Caballes*, the Supreme Court held that a dog sniff during a lawful traffic stop does not violate the Fourth Amendment's proscription of unreasonable seizures.  543 U.S. at 408.  In *Rodriguez*, another case about traffic stop lengths, the Supreme Court held that "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures."  575 U.S. at 350.  In *Manuel*, a case about a detainee's suit alleging that his arrest and detention violated the Fourth Amendment, the Supreme Court held that "the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of the legal process."  580 U.S. at 369.  These cases about the length of lawful traffic stops and the application of the Fourth Amendment to pretrial detention do not herald changes in *Shaul*'s "intellectual and precedential underpinnings."  (Pl's Opp. 8.)  Yes, these four cases concern the Fourth Amendment.  But that is where their similarities end.  Most notably, *Caballes*, *Rodriguez*, and *Manuel* do not, in any way, concern seizure of *property*.  The Court finds that, despite Santander's reading of the caselaw, a seizure claim based solely on the unlawful retention of property that was lawfully seized remains too novel to warrant Fourth Amendment Protection.  *See Shaul*, 363 F.3d at 187; *Vasquez*, 630 F. Supp. 3d at 543; *Bennett*, 832 F. App'x at 60.

Santander pivots again, arguing that Second Circuit caselaw following *Shaul* concerns property that the Government failed to return to its owner through negligence, whereas this Action involves intentional conduct.  (Pl's Opp. 8.)  But Santander offers no support for the proposition that this distinction matters or that it should lead the Court away from the Second Circuit's caselaw.  It is undisputed that the initial seizure of the Vehicle was lawful, so a Fourth Amendment seizure claim based on the Vehicle's unlawful retention cannot stand.  *See Shaul*,

363 F.3d at 187.  Accordingly, summary judgment is granted to Defendants on Santander's

Fourth Amendment claim.  But Santander is not without recourse, for the Fourteenth

Amendment affords it a "right with respect to a government agency's retention of lawfully seized

property." *Shaul*, 363 F.3d at 187; *see also Bennett*, 832 F. App'x at 60.

    2.  Fourteenth Amendment – Procedural Due Process (Count II)

      Turning to Santander's procedural due process claim, Santander argues that Yonkers'

Vehicle Impound Policy is unconstitutional because it fails to provide adequate notice or an

opportunity for a hearing.  (*See* Pl's Mem. 12–21.)  YTR largely fails to address the

constitutionality of the Vehicle Impound Policy in either its Opposition or its own Cross-Motion,

(*see generally* YTR Opp; YTR's Mem.), except to say that Santander received adequate notice,

(YTR's Opp. 7; YTR's Mem. 7).[4]  Yonkers argues that its policy is constitutional because

requiring a DA release is common practice and because Santander and PAR were aware of, but

failed to undertake, the necessary steps to successfully repossess the Vehicle.  (Yonkers' Mem.

6–9.)  Yonkers further argues that Santander received "constitutionally adequate notice," (*id.* 9),

and that it was not required to hold a hearing, (*see* Yonkers' Resp. to Req. for Adm. 6).

      The Due Process Clause of the Fourteenth Amendment provides that no state shall

"deprive any person of life, liberty or property, without due process of law."  U.S. Const. amend.

---

    [4] YTR's Opposition and Memorandum in support of its Cross-Motion are essentially
identical, with a few words changed or added throughout.  Both briefs argue that a warrantless
search of a vehicle impounded incident to an arrest is proper, (YTR's Opp. 4–6; YTR's Mem.
4–6), that Santander "failed to mitigate damages" and so is not entitled to any damages, (YTR's
Opp. 8–10; YTR's Mem. 8–10), and that issues of material fact, (YTR's Opp. 7; YTR's Mem.
7), preclude granting Santander's motion and require granting YTR's cross-motion.
    YTR's discussion of exceptions to warrantless searches and seizures is inapposite,
especially in light of Santander's concession that the initial seizure was valid under the
community caretaking exception.  (*See* Pl's Opp. 3.)

XIV § 1.  "In adjudicating due process claims, '[courts] consider two distinct issues:  1) whether plaintiffs possess a liberty or property interest protected by the Due Process Clause; and, if so, 2) whether existing state procedures are constitutionally adequate.'"  *Ford Motor Credit Co. v. N.Y.C. Police Dep't*, 503 F.3d 186, 190 (2d Cir. 2007) (quoting *Kapps v. Wing*, 404 F.3d 105, 112 (2d Cir. 2005)).

Here, it is beyond dispute that Santander had a protected "property interest in the present value" of the Vehicle.  *Id.* at 191; *see also TD Auto Fin. LLC*, 2023 WL 6295116, at *7 (holding that a lienholder in a vehicle had protected property interest for procedural due process purposes); *Santander Consumer USA, Inc. v. County of Suffolk*, No. 20-CV-2656, 2021 WL 4480574, at *6–7 (E.D.N.Y. Sept. 30, 2021) (same); *Am. Honda Fin. Corp.* (Aston), 546 F. Supp. 3d at 379 (same).  Yonkers and YTR's "seizure and retention of the [Vehicle] impaired [Santander's] property interests, . . . depriving [Santander] of the collateral for its lien while the collateral's value steadily depreciated."  *Am. Honda. Fin. Corp.* (Aston), 546 F. Supp. 3d at 379; *see also TD Auto Fin.*, 2023 WL 6295116, at *7 ("[D]elays in the eventual disposition of a seized asset can amount to a deprivation of a lienholder's property interest . . . as the vehicle depreciates over time." (citing *Ford Motor Credit Co.*, 503 F.3d at 192)).  YTR's towing and storage fees "effectively subordinat[ed] the priority of [Santander's] lien."  *Am. Honda. Fin. Corp.* (Aston), 546 F. Supp. 3d at 379 (citing, inter alia, *Connecticut v. Doehr*, 501 U.S. 1, 12 (1991) ("[O]ur cases show that even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection.")).

The question then is whether Yonkers' procedures are constitutionally adequate. In evaluating the constitutional adequacy of procedural due process, courts apply the *Mathews v. Eldridge* framework, under which the Court must balance:

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Toyota Lease Trust v. Village of Freeport*, No. 20-CV-2207, 2023 WL 4443992, at *9 (E.D.N.Y. Jan. 24, 2023), *report and recommendation adopted*, 2023 WL 4449333 (E.D.N.Y. Mar. 30, 2023) (quoting *Santander Consumer USA, Inc.*, 2021 WL 4480574, at *8 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976))). While "due process is flexible," *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011) (citation omitted), "[i]n general, 'individuals must receive notice and an opportunity to be heard before the Government deprives them of property,'" *TD Auto Fin.*, 2023 WL 6295116, at *7 (quoting *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993)).

"The Second Circuit [has] held that a policy that places the burden of taking action to recover property on a claimant is a [per se] due process violation." *Toyota Lease Tr.*, 2023 WL 4443992, at *9 (citing *McClendon v. Rosetti*, 460 F.2d 111, 115–16 n.4 (2d Cir. 1972) ("It seems to me a shocking thing that our police can seize a citizen's property and then when he seeks to get it back challenge him to prove his title to the satisfaction of a jury.") (citation omitted), and *HVT, Inc. v. Port Auth. of New York and New Jersey*, No. 15-CV-5867, 2018 WL 3134414, at *9 (E.D.N.Y. Feb. 15, 2018), *report and recommendation adopted*, 2018 WL 1409821 (E.D.N.Y. Mar. 21, 2018) ("[T]he question is whether [d]efendant can summarily deprive [p]laintiff of its property without any opportunity for a hearing. The law is quite clear that it cannot.")).

21

Procedures related to seized vehicles should include prompt notice upon seizure to "titled owners, registered owners[,] and record lienholders," and an opportunity for a hearing arranged and conducted by the Government. *See HVT*, 2018 WL 3134414, at *11 (citing *Krimstock*, 306 F.3d at 68, *Ford Motor Credit Co.*, 394 F. Supp. 2d at 611, and *Fuentes v. Shevin*, 407 U.S. 67, 80–81 (1972)).

a.  Notice of the Seizure

It is undisputed that on or about July 13, 2021, Santander was notified by YTR by letter that it held the Vehicle in its impound lot.  (Pl's Counter 56.1 ¶ 11.)  It is also undisputed that on or about August 5, 2021, Santander was notified by Yonkers via letter that the Vehicle had been impounded on June 15, 2021, and that Santander had until August 25, 2021, to repossess the Vehicle.  (*Id.* ¶ 12.)  The delay between seizure and notice ranges from 28 days in the case of YTR's notice and 51 days in the case of Yonkers' notice.

It is clear that the "substantial delay in notifying [Santander] of the seizure of the Vehicle does not comport with due process." *TD Auto Fin.*, 2023 WL 6295116, at *8; *see also Spinelli v. City of New York*, 579 F.3d 160, 172 (2d Cir. 2009) ("The fact that Spinelli's counsel eventually learned of the specific nature of the charges after meeting on various occasions with the City does not obviate the City's failure to provide adequate notice of those charges."); *Ford Motor Credit*, 503 F.3d at 192 (explaining that "delay" implicates a lienholder's Fourteenth Amendment rights in this context).

At the time of the Vehicle's seizure, Yonkers did not require notice to lienholders—this has changed with the updated policy, which now requires notice to registered owners, titled owners, lienholders, and all interested parties.  (*Compare* Vehicle Impound Policy 5, *with* Updated Vehicle Impound Policy 8.)  The updated policy still has no provisions regarding

timeliness of notice, and there is nothing in the updated language that indicates that notice of

seizure would be more timely today than under the previous policy.  (*See generally* Updated

Vehicle Impound Policy.)  Thus, the Court concludes that Yonkers' standard policies, practices,

and customs resulted in substantial and unacceptable delay of numerous weeks before Santander

was notified by Yonkers or its towing companies that the Vehicle had been seized.  *See Toyota*

*Lease Tr.*, 2023 WL 4443992, at \*10 (49-day delay between seizure and notice did not comport

with due process); *Am. Honda. Fin. Corp.* (Aston), 546 F. Supp. 3d at 381 (finding that a "delay

of twenty-five days before even attempting to notify lienholders" did not comport with due

process); *HVT*, 2018 WL 3134414, at \*15 (period for "proper notice and a hearing" is no more

"than a few days").

    That Santander learned of the seizure prior to notice does not excuse the notice's delay.

*See TD Auto Fin.*, 2023 WL 6295116, at \*9 (The fact that the lienholder "fortuitously learned

that the Vehicle had been seized from [the registered owner] did not relieve [the Government] of

its obligation to provide adequate notice to [lienholder] regarding the seizure."); *Toyota Lease*

*Tr.*, 2023 WL 4443992, at \*10 ("Even if [the private towing company] provided notice via letter

five days after it impounded the Vehicle, it did not provide opportunity for a hearing, and as [the

village defendant] admits, [the towing company] did not have authority to release the Vehicle

pursuant to its towing agreement with the Village."); *Ezagui v. City of New York*, 726 F. Supp.

2d 275, 289 n.11 (S.D.N.Y. 2010) ("The relevant inquiry . . . is whether [d]efendants complied

with their obligation to provide the proper notice at the time of the seizure.").

    b.  Opportunity to Be Heard Prior to Permanent Deprivation

    "The law is clear that some form of hearing is required—either pre- or post-seizure—

before an individual or entity is finally deprived of a property interest, and that the absence of

any hearing whatsoever necessarily will fail the *Mathews* balancing test." *TD Auto Fin.*, 2023 WL 6295116, at *9 (citing *Mathews*, 424 U.S. at 333); *see also HVT, Inc.*, 2018 WL 3134414, at *9 ("[T]he question is whether [d]efendant can summarily deprive [p]laintiff of its property without any opportunity for a hearing.  The law is quite clear that it cannot.").

It is undisputed that Yonkers policy provides no opportunity for a hearing.  (*See* Yonkers' Resp. to Req. for Adm. 6 (Yonkers asserts that there was no requirement to "commence any proceeding before a neutral decision-maker regarding the propriety of" the Vehicle's seizure, impounding, and the conditions set by Yonkers and YTR regarding its repossession).)  There are no forfeiture proceedings whatsoever in relation to an impounded vehicle—instead, Yonkers allows a lienholder to repossess a vehicle in exchange for fees paid to the towing company, without a hearing before a neutral arbiter to determine the propriety of the lienholder's paying those fees.  Yonkers' final step is to deem the vehicle abandoned and permit the towing company to obtain a clean title to the vehicle, effectively destroying the lienholder's interest in the Vehicle.  (*See* Pl's Counter 56.1 ¶ 12.)  There are no other means by which a lienholder can challenge Yonkers.  Yonkers' policy clearly places the burden on the vehicle owner or lienholder to take action to recover a vehicle, which is a per se due process violation.  *See Toyota Lease Tr.*, 2023 WL 4443992, at *9.

Yonkers argues that there is no due process violation here because Santander and PAR were aware of the process by which they could repossess the Vehicle, but failed to follow the proper procedures.  (Yonkers' Mem. 8–9.)  Yonkers further argues that Yonkers was "willing to turn over possession of the [V]ehicle," (*id.* 9), that it "had no intention of retaining the [V]ehicle," (Yonkers' Reply 5), and that it "repeated[ly] offer[ed] to return the [V]ehicle," (*id.* 4).  That Santander failed to follow Yonkers' procedure is of no moment where the procedure

failed to comport with procedural due process. *See Ford Motor Credit Co.*, 503 F.3d at 193

("[A] party's ability to take steps to safeguard its interests does not relieve the State of its

constitutional obligation." (quoting *Mennonite Bd. of Mission v. Adams*, 462 U.S. 791, 799

(1983)). Further, "[t]here was nothing preventing [Yonkers] from filing a forfeiture action as to

the Vehicle had it sought to do so, other than the reality that its standard policies, practices, and

customs did not contemplate such a filing." *TD Auto Fin.*, 2023 WL 6295116, at *10.

At bottom, consistent with and as a result of Yonkers' policies, practices, and customs,

Santander did not have any formal opportunity to be heard regarding its interest in the Vehicle.

### c. The *Mathews* Factors

Application of the *Mathews* factors clearly demonstrates that Yonkers failed to provide

due process of law to Santander.

First, as to the private interest at stake, Santander's interest in the present value of the

Vehicle is "considerable." *Ford Motor Credit*, 503 F.3d at 194 ("[lienholder's] interest in the

present value of a seized vehicle . . . is still considerable").

Second, "the erroneous risk of deprivation" is high because, while the updated policy

provides notice, there is no provision for *timely* notice. Putting the timeliness of notice aside, the

lienholder still has no opportunity to present arguments before a neutral arbitrator about whether

Yonkers and its licensed towing companies are entitled to possess, assess fees, and dispose of a

seized vehicle. *See TD Auto Fin.*, 2023 WL 6295116, at *11.

Third, the Court must balance Yonkers' legitimate interests against the burden that would

be placed on Yonkers if it were required to place additional procedural safeguards. At no point

in its briefing does Yonkers address the *Mathews* factors. (*See generally* Yonkers' Mem.;

Yonkers' Reply.) In any case, Yonkers' interest in refusing additional procedural safeguards do

not sanction "fully deny[ing] lienholders any opportunity to be heard with respect to the

propriety of the seizure, the continued retention of the vehicle, the appropriateness of charging an

administrative fee in exchange for return of the vehicle, or the disposition of the Vehicle." *TD*

*Auto Fin.*, 2023 WL 6295116, at 11; *cf. Toyota Lease Tr.*, 2023 WL 4443992, at \*10 ("Applying

the *Mathews* factors, [p]laintiff's property interests in the Vehicle outweighs [the village

defendant's] interest in collecting fines, and the undisputed lack of hearing requirement under the

. . . policy violates due process.").

Applying these factors, the Court finds that Yonkers did not provide Santander with due

process of the law as required by the Fourteenth Amendment.  Yonkers' policy is deficient for

failing to timely notice Santander and to provide an opportunity to be heard at all.  Accordingly,

Santander's Motion for Summary Judgment on its Fourteenth Amendment claim is granted

### 3.  Fifth Amendment – Taking (Count III)

Santander argues that Yonkers' deeming the Vehicle abandoned and titling the same in

YTR's name effected a taking of Santander's property interest in the Vehicle.  (Pl's Mem. 25–

29.)  YTR has no response on this point.  (*See generally* YTR's Opp.)  Yonkers instead argues

that Santander's Motion fails on this point because the Vehicle was confiscated pursuant to

Yonkers' police powers, not its eminent domain power, and that Santander failed to follow

Yonkers' policies in repossessing the Vehicle.  (Yonkers' Mem. 9–11.)

The Fifth Amendment provides that "private property [shall not] be taken for public use,

without just compensation."  U.S. Const. amend. V.  This is known as the Takings Clause, which

is "applied to the States through the Fourteenth Amendment."  *LaForgia v. Hoch*, No. 15-CV-

8589, 2018 WL 4682019, at \*4 n.2 (S.D.N.Y. Sept. 28, 2018) (quoting *Keystone Bituminous*

*Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 481 n.10 (1987)); *Kelo v. City of New London, Conn.*,

26

545 U.S. 469, 472 n.1 (2005) (same). "The government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain." *Bennis v. Michigan*, 516 U.S. 442, 452 (1996) (citing *United States v. Fuller*, 409 U.S. 488, 492 (1973)). "As a result, 'it has long been settled that if the government acts pursuant to a forfeiture statute, it may seize personal property without compensating the owner.'" *United States v. Davis*, 648 F.3d 84, 97 (2d Cir. 2011) (quoting *Redford v. U.S. Dep't of Treasury*, 691 F.2d 471, 473 (10th Cir. 1982)).

As previously discussed, "a security interest is indisputably a property interest." *Ford Motor Credit Co.*, 503 F.3d at 191; *see also 1256 Hertel Ave. Assocs., LLC v. Calloway*, 761 F.3d 252, 263 (2d Cir. 2014). The next inquiry is whether there was a taking. "The Supreme Court has recognized two branches of Takings Clause cases: physical takings and regulatory takings." *1256 Hertel Ave. Assocs.*, 761 F.3d at 263 (citing *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002)). A physical taking occurs when there is "a condemnation or a physical appropriation of property." *Id.* A regulatory taking occurs "where even absent a direct physical appropriation, governmental regulation of private property 'goes too far' and is 'tantamount to a direct appropriation or ouster.'" *Id.* (quoting *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005)). The Supreme Court has held that the "total destruction by the Government of all value of [a] lien[] . . . has every possible element of a Fifth Amendment 'taking.'" *Armstrong v. United States*, 364 U.S. 40, 48 (1960). There is "no magic formula [that] enables a court to judge, in every case, whether a given government interference with property is a taking." *Ark. Game and Fish Comm'n v. United States*, 568 U.S. 23, 32 (2012); *see also Messing v. Town of Hamden*, 459 F. Supp. 3d 464, 467 (D. Conn. 2020) (same).

When Yonkers "deemed" the Vehicle abandoned on May 1, 2022, ownership in the Vehicle vested in Yonkers.  (*See* Pl's Counter 56.1 ¶ 17; Updated Vehicle Impound Policy 2.) *See also* VTL § 1224(3)(c) ("Ownership of such abandoned vehicles . . . shall vest in such local authority ten days from the date . . . notice is given . . .").  Yonkers then "transferred" the Vehicle to YTR.  (*See* Decl of Harold Wuestenhoefer, Ex. 1 (Dkt. No. 89-1) at 20:13–23 ("The car was transferred to [YTR].").)  The Court has reviewed the record and can find no explanation of the process by which Yonkers transfers abandoned vehicles to towing companies.[5] Regardless, it is undisputed that YTR obtained title to the Vehicle and subsequently sold it.  (*See id.* ("[YTR] titled the [V]ehicle and [then] sold it at auction."); Pl's Counter 56.1 ¶ 17.)

Here, the process of deeming a vehicle abandoned is akin to condemnation, destroying Santander's property interest in the Vehicle.  *See Armstrong*, 364 U.S. at 48.  Santander alleges that the taking is, in effect, payment to towing companies like YTR for their services.  (*See* Pl's Mem. 29; Pl's Opp. 18.)  The Parties dispute that Yonkers' transferring abandoned vehicles to towing companies is a kind of payment to the towing companies.  (*See* Yonkers' Counter 56.1 ¶ 41; *see also* Yonkers' Reply 6 (arguing that Yonkers receives no proceeds or benefits from a towing company's sale of an abandoned vehicle).  Yonkers' briefing attempts to paint itself out of this process:  "the [V]ehicle was sold by YTR with no proceeds from the abandoned vehicle

---

[5] VTL § 1224(6)(a) permits a municipality to "convert to its own use . . . [abandoned vehicles]" or may "by sale or gift, transfer title . . . to any other municipal[ity]."  Here, of course, YTR is not a municipal entity under which such a transfer is permitted.

VTL § 1224(5)(a) permits municipalities to sell abandoned vehicles at public auction "if [it] is suitable for operation on the public highways."  While municipalities are permitted to convey inoperable abandoned vehicles to contracted towing companies, "[a]bandoned vehicles which are suitable for operation on the public highway . . . must be sold at public auction."  1991 N.Y. Op. Att'y Gen. (Inf.) 1049 (1991).  "Directly conveying these operable vehicles to the contractor, without a public auction, would violate [S]ection 1224."  *Id.*

going to [Yonkers]."  (Yonkers' Mem. 11; *see also* Yonkers' Reply 6 ("[Yonkers] does not

receive any proceeds from . . . YTR's sale of the [V]ehicle.").)

 In essence, Yonkers argues that there was no public use or purpose to the taking here.

Fatal to this argument, however, is the proposition that "[t]he 'public use' requirement is . . .

coterminous with the scope of a sovereign's police powers."  *Goldstein v. Pataki*, 488 F. Supp.

2d 254, 280 (E.D.N.Y. 2007) (quoting *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 240 (1984));

*UMB Bank, N.A. v. City of Winooski, Vt.*, No. 17-CV-231, 2018 WL 4080384, at *12 (D. Vt.

Aug. 27, 2018) (same).  "Municipalities are authorized to adopt laws relating to, [inter alia], the

'government, protection, order, conduct, safety, health and well-being of persons or property

therein.'"  *Assoc. of Home Appliance Mfrs. v. City of New York*, 36 F. Supp. 3d 366, 372 n.1

(S.D.N.Y. 2014) (quoting N.Y. Const. art. IX, § 2(c)(10)).  However, the exercise of police

power must be reasonable.  *See id.* at 373 (citing *Good Humor Corp. v. City of New York*, 49

N.E.2d 153, 155 (N.Y. 1943)).  Yonkers' deeming the vehicle abandoned pursuant to VTL

§ 1224 was an exercise of police power that suffices as a public use under the Takings Clause.

*Cf. Forty-Second Street Co. v. Koch*, 613 F. Supp. 1416, 1426 (S.D.N.Y. 1985) (holding that

condemnation for a proper purpose is a valid exercise of police power); *Phillips v. Satellite Auto

Parts, Inc.*, 393 N.Y.S.2d 234, 234 (N.Y. App. Term. 1977) (removal of abandoned vehicles is a

valid exercise of police power because the government entity has a "legitimate interest in

removing derelict vehicles from the [government's] streets").

 Finally, it is undisputed that there was no compensation to Santander.  There was,

therefore, an unlawful taking of Santander's property interest.  Accordingly, Santander's Motion

for Summary Judgment on its Fifth Amendment claim is granted.

C.  New York State Constitution (Count IV)

Yonkers moves for summary judgment as to Santander's claim in Count IV of the Complaint, which is brought pursuant to the New York State constitution.  (Yonkers' Mem. 11.) "The New York State Constitution's guarantees of equal protection [and due process] are virtually coextensive with those of the federal Constitution."  *Imperato v. Otsego Cnty. Sheriff's Dep't*, No. 13-CV-1594, 2016 WL 1466545, at \*31 (N.D.N.Y. Apr. 14, 2016) (quoting *Febres v. City of New York*, 238 F.R.D. 377, 392 (S.D.N.Y. 2006)); *TD Auto Fin.*, 2023 WL 6295116, at \*13 (same).  "District courts in this [C]ircuit have consistently held that there is no private right of action under the New York State Constitution where, as here, remedies are available under [Section] 1983."  *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 520 (S.D.N.Y. 2013) (quotation marks omitted) (collecting cases); *accord Santander Consumer USA, Inc. v. City of Yonkers*, No. 20-CV-4553, 2022 WL 4134718, at \*9 (S.D.N.Y. Sept. 12, 2022).

Because the Court already has determined that Santander is entitled to summary judgment on its Section 1983 claim based on the Yonkers' procedural due process violations, Yonkers' motion for summary judgment is granted as to Santander's claim brought under the New York State Constitution and Count IV of the Complaint is dismissed.

D.  Declaratory Relief (Count V)

Santander argues that Yonkers' policies "create an ongoing controversy" every time Yonkers seizes a vehicle and seeks a declaratory judgment that Yonkers' policies, practices, and customs are unconstitutional.  (*See* Pl's Mem. 35.)  Yonkers responds that this claim is mooted by the 2022 revisions to its policies.  (*See* Yonkers' Mem. 12.)

The Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, permits courts to "declare the rights and other legal relations of any interested party seeking such a declaration" "[i]n a case of

actual controversy." 28 U.S.C. § 2201(a). The Declaratory Judgment Act is "procedural only

. . . and does not create an independent cause of action." *Chevron Corp v. Naranjo*, 667 F.3d

232, 244 (2d Cir. 2012) (citations and quotation marks omitted). To the extent Santander asserts

declaratory relief as a standalone claim, it is dismissed. *See TD Auto Fin.*, 2023 WL 6295116, at

*13. The Court will, however, assess whether declaratory relief is appropriate. *See id.*

Declaratory relief is appropriate "when the judgment sought (1) 'will serve a useful

purpose in clarifying and settling the legal relations in issue,' and (2) 'will terminate and afford

relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *U.S.

Bank Nat'l Assoc. v. Triaxx Asset Mgmt. LLC*, No. 18-CV-4044, 2021 WL 4993895, at *5

(S.D.N.Y. Oct. 26, 2021) (quoting *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001

(2d Cir. 1969)); *Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 432 (S.D.N.Y. 2002)

(quotation marks omitted), *aff'd*, 346 F.3d 357 (2d Cir. 2003) (same). Parties do not have a right

to obtain a declaratory judgment; the decision remains within the discretion of the Court. *See

Doyle v. U.S. Dep't of Homeland Sec.*, 331 F. Supp. 3d 27, 66 (S.D.N.Y. 2018).

The Court finds that declaratory relief is appropriate here because Yonkers' policies

violate the Fourteenth Amendment procedural due process rights of lienholders. Courts in very

similar circumstances have found that such relief "serves the useful purpose of clarifying legal

relations and providing relief from uncertainty." *See TD Auto Fin.*, 2023 WL 6295116, at *14;

*see also Toyota Lease Tr.*, 2023 WL 4443992, at *12 (granting declaratory relief where court

determined state statute did not provide sufficient due process protections); *Am. Honda Fin.

Corp.* (Revere), 471 F. Supp. 3d at 410 (same). Accordingly, the Court enters declaratory

judgment in favor of Santander, and against Yonkers, as follows:

> The City of Yonkers' policies, practices, and customs of impounding vehicles that
> have been seized in connection with arrests without providing prompt notice to

> any lienholders with interests in the vehicles, and without providing such
> lienholders with an opportunity to be heard at any time in connection with the
> seizure or potential release of such vehicles, violates the protection against
> deprivations of property without due process of law enshrined in the Fourteenth
> Amendment to the U.S. Constitution.

The Court will allow Yonkers to revise its policies, practices, and customs consistent with this decision. Ideally, Yonkers will adopt formal written procedures to promote clarity and to ensure that appropriate due process protections are extended to all interested parties at every relevant stage.

### E. Damages

The Court next turns to the question of damages. Santander argues that it is entitled to the value of the Vehicle at the time of seizure on June 16, 2021, and provides a J.D. Power estimate of the Vehicle's value at that time. (*See* Pl's Mem. 34.) Yonkers fails to address the damages issue in its initial brief. (*See generally* Yonkers' Mem.) In its reply, Yonkers argues that "Santander's claim for damages against [Yonkers] fails because [Yonkers] has not violated any of Santander's rights." (Yonkers' Reply 8.) Yonkers also suggests that, should the Court award damages, the amount should be the Vehicle's "substantiated market value . . . at the alleged time Santander's possessory interest was allegedly impeded." (*Id.*)

"Under New York law, plaintiffs can recover for the 'loss of use' of their vehicle in the event a vehicle is damaged or destroyed." *Toyota Lease Tr.*, 2023 WL 4443992, at *13 (quoting *Quiller, Inc. v. United States*, No. 20-CV-2513, 2022 WL 4225542 (S.D.N.Y. Sep. 13, 2022) (citing *Koninklijke Luchtvaart Maatschaapij, N.V. v. United Techs. Corp.*, 610 F.2d 1052, 1055–56 (2d Cir. 1979))). "The Second Circuit has held, however, that a lienholder's property interest in a seized vehicle is its present value." *Id.* (citing *Ford Motor Credit Co.*, 503 F.3d at 191–92).

32

Santander argues for using the J.D. Power estimate of $33,318 (which it then lowered to $22,000 in its Opposition to Yonkers' motion, (Pl's Opp. 22)), but Yonkers disputes whether this amount was, at the relevant time, the value of the Vehicle, (*see* Yonkers' Counter 56.1 ¶¶ 43–45.)  There is also a dispute concerning the condition of the Vehicle, which affects its value.  (*See* Decl of Harold Wuestenhoefer, Ex. 1 at 50:4–23.)  As such, the record before the Court is insufficient to determine as a matter of law the amount of damages owed to Santander.  *See TD Auto Fin.*, 2023 WL 6295116, at *16.

## III.  Conclusion

For the reasons set forth above, Santander's Motion for Summary Judgment is granted in part and denied in part and Defendants' Motions for Summary Judgment are granted in part and denied in part.  Specifically, summary judgment is granted for Santander as to Counts II and III.  Summary judgment is granted for Defendants as to Counts I and IV.  While Count V is dismissed as procedurally improper, Santander's request for declaratory relief is granted.

The Clerk of the Court is respectfully directed to terminate the pending Motions at Dkt. Nos. 80, 91, and 96.  A telephonic status conference is hereby scheduled for November 20, 2024, at 10:00 AM.

SO ORDERED.

Dated:    November 18, 2024
          White Plains, New York

_____
    KENNETH M. KARAS
    United States District Judge