UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SANTANDER CONSUMER USA, INC.

               Plaintiff,

-v-

THE CITY OF YONKERS, A.P.O.W.
TOWING, LLC AND YONKERS TOWING &
RECOVERY LLC,

            Defendants.

Civil Action No.: 7:22-cv 08870-KMK

## DEFENDANT CITY'S MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFF'S MOTION FOR DAMAGES
## AND ATTORNEYS' FEES

Respectfully Submitted,

**HARRIS BEACH MURTHA CULLINA
PLLC**

*Attorneys for Defendant*
*The City of Yonkers*
445 Hamilton Avenue, Suite 1206
White Plains, New York 10601
(914) 683-1200

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ...................................................................................................................... 1

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT .............................................................................................................................. 3

    I.    PLAINTIFF IS A PREVAILING PARTY ONLY AS TO THREE CLAIMS ........... 3

    II.   APPLICABLE LAW ON THE AWARD OF ATTORNEY FEES LEGAL
        STANDARD ..................................................................................................... 5

    III.  THE HOURS EXPENDED BY PLAINTIFF'S ATTORNEYS WERE NOT
        REASONABLE OR PROPER UNDER APPLICABLE LAW .................................. 7

        A.    Plaintiff's Attorneys Seek Legal Fees that are Unreasonable .......................... 7

        B.    Plaintiff's Requested Fees Should be Reduced Because the Time
             Expended by Counsel on Certain Tasks was Excessive, Duplicative
             and Unnecessary .................................................................................... 9

        C.    Plaintiff's Requested Fees Should be Reduced Due to Block
             Billing and Vague Descriptions of Tasks Performed .................................... 14

        D.    There Should be a Reduction in the Fee Award for Unsuccessful Claims ..... 19

        E.    Plaintiff's Attorneys are not Entitled to Receive the Hourly Rates Sought .... 20

    IV.  PLAINTIFF'S REQUEST FOR PRE-JUDGEMENT INTEREST SHOULD
        BE DENIED ..................................................................................................... 22

CONCLUSION............................................................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdell v. City of N. Y.*,
 No. 05-CV-8453(RJS), 2015 WL 898974 (S.D.N.Y. March 2, 2015)................................. 18

*Adorno v. Port Auth.*,
 685 F. Supp. 2d 507 (S.D.N.Y. Feb. 19, 2010), *reconsideration granted in part,*
 2010 WL 727480 (S.D.N.Y. Mar. 2, 2010).................................................... 6, 18

*Alderman v. Pan Am World Airways*,
 169 F.3d 99 (2d Cir. 1999) ................................................................ 6

*Allende v. Unitech Design, Inc.*,
 783 F. Supp. 2d 509 (S.D.N.Y. Mar. 15, 2011)............................................. 14

*Amato v. City of Saratoga Springs*,
 991 F. Supp. 62 (N.D.N.Y. Jan. 20, 1998) ................................................ 14

*Anthony v. Franklin First Fin., Ltd.*,
 844 F. Supp. 2d 504 (S.D.N.Y. Feb. 21, 2012) ............................................. 6

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. COL of Albany*,
 522 F.3d 182 (2d Cir. 2008) ............................................................... 5

*Ass'n of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank Austria Creditanstalt AG*,
 04 Civ. 3600, 2005 WL 3099592 (S.D.N.Y. Aug. 19, 2005)................................. 9

*Beastie Boys v. Monster Energy Co.*,
 112 F. Supp. 3d 31 (S.D.N.Y. June 15, 2015)................................. 5, 6, 7, 18

*Blum v. Stenson*,
 465 U.S. 886 (1984) ....................................................................... 7

*Bowman v. Realty, No. 14-CV-5423 (JMF)*,
 2016 WL 3676669 (S.D.N.Y. July 6, 2016)................................................. 21

*Buckhannon,Bd and Care Home, Inc. v. West Virginia Dept. of Health and Human  Resources et al.*
  532 U.S. at 598 (2001) ................................................................... 3

*Clarke v. Frank*,
 960 F. 2d 1146 (2d Cir. 1992) ........................................................... 10

*CRST Van Expedited, Inc. v. E.E.O.C.*,
 578 U.S. 419 (2016) ....................................................................... 3

*Daiwa Special Asset Corp. v. Desnick*,
 00 Civ. 3856 (SHS), 2002 WL 31767817 (S.D.N.Y. Dec. 3, 2002) ...................... 10

*Fernandez v. North Shore Orthopedic Surgery of Sports Med. PC*,
  No. CIV.A.CV 96-4489, 2000 WL 130637 (E.D.N.Y. Feb. 4, 2000)....................................................9

*Gen. Elec. Co. v. Compagnie Euralair*,
  96 Civ. 0884 (SAS), 1997 WL 397627 (S.D.N.Y. July 3, 1997)........................................................9

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)..........................................................................................................13, 19

*Hutchinson v. McCabee*,
  95 Civ. 5449 (JFK), 2001 WL 930842 (S.D.N.Y. Aug. 15, 2001)....................................................11

*Johnson v. Ga. Highway Express, Inc.*,
  488 F.2d 7149 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*,
  489 U.S. 87 (1989) ............................................................................................................5

*Katzenberg v. Lazzari*,
  04 CV 5100, 2007 WL 2973586 (E.D.N.Y. Oct. 9, 2007) ............................................................15

*Kirsch v. Fleet St., Ltd.*,
  148 F.3d 149 (2d Cir. 1998) ...............................................................................................14

*Lunday v. City of Albany*,
  42 F.3d 131 (2d Cir. 1994) ..................................................................................................9

*Matteo v. Kohl's Dep't Stores, Inc.*,
  No. 09 Civ. 7830 (RJS*), 2012 WL 5177491 (S.D.N.Y. Oct. 19, 2012) ............................................6

*McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*,
  450 F.3d 91 (2d Cir. 2006) ...................................................................................................6

*Millea v. Metro-N. R.R. Co.*,
  658 F.3d 154 (2d Cir. 2011) ................................................................................................5

*Moreno v. Empire City Subway Co.*,
  No. 05 Civ. 7768 (LMM) (HBP), 2008 WL 793605 (S.D.N.Y. Mar. 26, 2008)................................6

*Mr. X v. New York State Educ. Dep't*,
  20 F. Supp. 2d 561 (S.D.N.Y Sept. 4, 1998) ...........................................................................15

*N.Y. State Fed'n of Taxi Drivers, Inc. v. Westchester Cty. Taxi & Limousine Comm'n*,
  272 F.3d 154 (2d Cir. 2001) .................................................................................................3

*New York State Ass'n for Retarded Children, Inc. v. Carey*,
  711 F.2d 1136 (2d Cir. 1983) .......................................................................................7, 9, 17

*Pall Corp. v. 3M Purification, Inc.*,
  CV 97-7599 (TB), 2012 WL 1979297 (E.D.N.Y. June 1, 2012) ...................................................17

*Penberg v. Healthbridge Mgmt*,
  08 CV 1534, 2011 WL 1100103 (S.D.N.Y. Mar. 22, 2011) .........................................................17

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
  478 U.S. 546 (1986) ...................................................................................................... 10

*Perez v. Westchester Cty. Dep't of Corr.*,
  587 F.3d 143 (2d Cir. 2009) ............................................................................................ 3

*Quarantino v. Tiffany & Co.*,
  166 F. 3d 422 (2d Cir. 2009) ........................................................................................... 9

*Quinn v. Nassau County Police Dep't*,
  75 F. Supp. 2d 74 (E.D.N.Y. Nov. 20, 1999) ................................................................ 11

*Ragin v. Harry Macklowe Real Estate Co.*,
  870 F. Supp. 510 (S.D.N.Y. Dec. 9, 1994) ................................................................... 14

*Rahman v. Smith & Wollensky Rest. Grp., Inc.*,
  06 Civ. 6198 (LAK) (JCF*)*, 2008 WL 1899938 (S.D.N.Y. April 29, 2008) ........................ 9

*Rahman v. Smith & Wollensky Rest. Grp., Inc., No. 06-CV-6198*,
  2009 WL 72441 (S.D.N.Y. Jan. 7, 2009) ...................................................................... 17

*Rotella v. Board of Education*,
  CV 01-0434 (NGG), 2002 WL 59106 (E.D.N.Y Jan. 17, 2002) ...................................... 11

*Santander Consumer USA, Inc. v. Cty. of Suffolk*,
  No. 20-CV-2656, 2021 2021 WL 4480574 (E.D.N.Y. Sept. 30, 2021) ............................... 4

*Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc.*,
  277 F. Supp. 2d 323 (S.D.N.Y. Aug. 13, 2003) ............................................................ 17

*Simmons v. N.Y.C. Transit Auth.*,
  575 F.3d 170 (2d Cir. 2009) ....................................................................................... 5, 7

*Spalluto v. Trump Intern. Hotel & Tower*,
  2008 WL 4525372 (S.D.N.Y. Oct. 2, 2008) ................................................................... 21

*Sulkowska v. City of New York*,
  170 F. Supp. 2d 359 (S.D.N.Y. Apr. 25, 2001) ............................................................. 22

*Swartz v. HCIN Water Street Associates, LLC*,
  2018 WL 5629903 ......................................................................................................... 21

*The Independence Project, Inc. v. Ventresca Bros. Construction Co, Inc.*,
  397 F. Supp.3d 482 (S.D.N.Y. Aug. 30, 2019) .......................................................... 3, 21

*Themis Capital v. Dem. Rep. of Congo*,
  No. 09 Civ. 1652 (PAE), 2014 WL 4379100 (S.D.N.Y. Sept. 4, 2014), *reconsideration denied*,
  No. 09 Civ. 1652 (PAE), 2014 WL 4693680 (S.D.N.Y., Sept. 22, 2014) ........................... 17

*Thomas v. City of Mount Vernon*,
  1992 WL 84560 (S.D.N.Y. Apr. 10, 1992) .................................................................... 22

*Toussie v. City of Suffolk*,
 01-CV-6716 (JS) (ARL), 2012 WL 3860760 (E.D.N.Y. Sep. 6, 2012) ................................ 16

*Toyota Lease Trust v. Vill. of Freeport*,
 No. 20-CV-2207, 2024 WL 639989 (E.D.N.Y. Feb. 15, 2024) ........................................... 8

*Valley v. City of Derby*,
 3:06CV1319, 2012 WL 1077848 (D. Conn. March 30, 2012) ............................................ 16

*VFS Fin., Inc. v Pioneer Aviation, LLC*,
 08 Civ. 7655 (GBD)(AJP), 2009 WL 2447751 (S.D.N.Y. Aug. 11, 2009) ........................ 13

*Wickham Contracting Co., Inc. v. Local Union No. 3, Intern. Broth. of Elec. Workers., AFL-CIO*,
 955 F.2d 831 (2d Cir. 1992) ............................................................................................... 22

**Statutes**

42 U.S.C. §1983 ........................................................................................................ 4, 7, 20

42 U.S.C. §1988 ................................................................................................................. 7

GBL §349 ........................................................................................................................... 4

## INTRODUCTION

Defendant The City of Yonkers ("City" or "Yonkers") submits this Memorandum of Law in Opposition to Plaintiff's Motion for Damages and Attorneys' Fees sought by Santander Consumer USA, Inc. ("Plaintiff"). The extraordinary amount of attorneys' fees that Plaintiff seeks result largely from legal skirmishes between Plaintiff and the co-defendant A.P.O.W. Towing, LLC, ("A.P.O.W.") in which the City played no part. Plaintiff is not entitled to an order granting its request for an award of pre-judgment interest of $2,421.21 and attorneys' fees totaling $231,910.52.[1]

## PRELIMINARY STATEMENT

Plaintiff asserted a total of nine claims in this action—five against the City, and the remaining four against co-defendants A.P.O.W. and Yonkers Towing and Recovery, LLC. Plaintiff seeks attorneys' fees after obtaining summary judgment against the City on three of the five claims it asserted against the City. As for the other two claims, the City prevailed on its cross-motion for summary judgment. Plaintiff now seeks from the City an extraordinary amount of attorneys' fees arising from Plaintiff's litigation of all of its claims – some of which failed and some of which are against co-defendants, including issues related to sanctions claims against those co-defendants, unrelated to the City.  The City is not responsible for those fees.

Plaintiff is not entitled to attorneys' fees from the City for two claims that were dismissed and it is also not entitled to attorneys' fees from the City for aggressively litigating disputes with co-defendant A.P.O.W. (a towing company). It was A.P.O.W. that refused to consent to Plaintiff's request to amend the complaint in this matter, when the City did consent. It was also A.P.O.W. that

---

[1]    The parties have stipulated to the value of the subject vehicle and the City does not dispute that amount for the purposes of Plaintiff's motion for compensatory damages.  However, the City does dispute Plaintiff's claim for prejudgment interest in the amount of $2,421.22.  Plaintiff also seeks costs in the amount of $865.80.  The City does not contend that this amount is unreasonable.

engaged in a dispute with Plaintiff over alleged falsification of documents. While these legal battles caused Plaintiff to incur substantial attorneys' fees, the City is not responsible for those fees.

In addition, Plaintiff's argument that the City caused Plaintiff to incur additional fees through efforts to obtain discovery from the Westchester County District Attorney's Office ("WCDA") is grossly misleading. Despite Plaintiff's contentions in its moving papers, at no time did the City state that it had a "practice to consult" with the WCDA with respect to obtaining the required WCDA release. As noted in this Court's Opinion & Order, and as discussed in further detail below, the City could not release the vehicle without Plaintiff or the registered owner first obtaining a release from WCDA that the subject vehicle was not needed in any prosecution as evidence, case enhancement or discovery. (*See* Opinion & Order dated November 18, 2024, p. 6, Dkt. No. 104). Thus, Plaintiff was well aware from the outset of this litigation that it had to obtain the necessary release (which is not legal work related to its claims against the City in this case) from the WCDA. However, instead of Plaintiff pursuing WCDA from the beginning, Plaintiff waited until May of 2023, almost two years after Plaintiff learned it needed the release from WCDA, to attempt to resolve this issue. Thus, it was Plaintiff's own inaction, and not the actions or fault of the City, that caused the Plaintiff's attorneys to incur additional fees related to obtaining discovery through WCDA. The Defendant City should not be responsible for those attorneys' fees incurred through Plaintiff's own conduct.

For the multiple reasons set forth in this Memorandum of Law, it is respectfully submitted that this extraordinary claim for attorneys' fees by Plaintiff be substantially reduced.

**ARGUMENT**

## I.
## PLAINTIFF IS A PREVAILING PARTY ONLY AS TO THREE CLAIMS

The United States Supreme Court has stated plainly that, "[b]efore deciding whether an award of attorneys fees is appropriate in a given case . . . a court must determine whether the party seeking fees has prevailed in the litigation." *CRST Van Expedited, Inc. v. E.E.O.C.,* 578 U.S. 419, 421 (2016). In *The Independence Project, Inc. v. Ventresca Bros. Construction Co, Inc.,* 397 F. Supp.3d 482, 490 (S.D.N.Y. Aug. 30, 2019) this Court explained how to assess whether a litigant is a "prevailing party."

> To be considered a prevailing party, the plaintiff must achieve a material, judicially-sanctioned alteration of the legal relationship that favors it. *See Perez v. Westchester Cty. Dep't of Corr.,* 587 F.3d 143, 149 (2d Cir. 2009). The material alteration of the legal relationship of the parties must be more than just a catalyst bringing about voluntary change; the change must be awarded by the court. *See Buckhannon,* 532 U.S. at 598-99, 121 S.Ct. 1835 (holding that "a defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change"); *N.Y. State Fed'n of Taxi Drivers, Inc. v. Westchester Cty. Taxi & Limousine Comm'n,* 272 F.3d 154, 157-58 (2d Cir. 2001) (noting that although a "lawsuit sometimes produces voluntary action by the defendant", "[f]or a plaintiff to be considered a prevailing party ..., the plaintiff[']s] lawsuit must be a catalytic, necessary, or substantial factor in attaining the relief' (citations and quotation marks omitted)).

As such, and as this Court noted, "[c]ourts in the Second Circuit ask whether a party has prevailed based on the 'materiality of a judicial outcome' and 'whether the result is purely procedural or whether it actually accomplishes something substantive for the winning party.'" A plaintiff who achieves relief as a result of a settlement may be considered a prevailing party if the relief obtained was the same general type as the relief sought." 397 F. Supp.3d at 490 (internal citations omitted).

Applying these principles, Plaintiff is a "prevailing party" as to only three claims with respect to the City, and it is these three claims only that can serve as the basis for Plaintiff's application for attorneys' fees.[2] Moreover, the Court denied Plaintiff's summary judgment motion as to damages as the record was "insufficient to determine as a matter of law the amount of damages" owed to Plaintiff. (Opinion & Order dated November 18, 2024, p. 33, Dkt. No. 104).

Plaintiff seeks to ignore the limited scope of its remedy here, arguing that it is a prevailing party in the litigation, as "the Court has already decided Santander is entitled to an order granting summary judgment on liability for its 42 U.S.C. §1983 claim." (Plaintiff's Memorandum of Law, p. 11, Dkt. No. 110.) But this argument is misleading. While Plaintiff may have been granted summary judgment as to its Fourteenth Amendment and Fifth Amendment claims, this Court granted the City summary judgment on Plaintiff's New York State Constitution claim, which was ultimately dismissed as procedurally improper, and more importantly, Plaintiff's Fourth Amendment claim. Significantly, in granting the City summary judgment on this issue, this Court held that the City's initial seizure of the Vehicle was reasonable in the interest of public safety as part of the Defendant City's community caretaking function. (Opinion & Order dated November 18, 2024, p. 16, Dkt. No. 104). Plaintiff's application is therefore extremely circumscribed, and its calculations must be tethered to the three claims at issue. Since two (2) of the five (5) claims have been dismissed, the request for attorneys' fees should be reduced by at least forty (40) percent (*i.e.*, 2/5's) as a starting point. Beyond that, as shown below, Plaintiff cannot demonstrate its entitlement to the additional substantial fees it seeks and Plaintiff's fee request should be substantially reduced.

---

[2]      Plaintiff did not move for summary judgment on its common law tort claims or violation of GBL §349 claim against co-defendant A.P.O.W. and YTR. In fact, in prior suits against other municipalities, Plaintiff has repeatedly chosen to voluntarily withdraw its state law claims – likely because Plaintiff is aware that such claims have no merit. *See Santander Consumer USA, Inc. v. Cty. of Suffolk*, No. 20-CV-2656, 2021 2021 WL 4480574, at *3 (E.D.N.Y. Sept. 30, 2021) ("Plaintiff voluntarily withdraws its state law claims…Accordingly, [these counts] are DISMISSED.").

## II.
## APPLICABLE LAW ON THE AWARD OF
## <u>ATTORNEY FEES LEGAL STANDARD</u>

It is well settled that this Court has "considerable discretion" to determine what constitutes a reasonable fee award. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. COL of Albany,* 522 F.3d 182, 190 (2d Cir. 2008). The presumptively reasonable fee is the lodestar, which is the product of a reasonable hourly rate and the reasonable number of hours required by the case. *Millea v. Metro-N. R.R. Co.,* 658 F.3d 154, 166 (2d Cir. 2011) (internal quotation marks omitted); *see also Beastie Boys v. Monster Energy Co.,* 112 F. Supp. 3d 31, 48 (S.D.N.Y. June 15, 2015). Ultimately, "[t]he presumptively reasonable fee boils down to what a *reasonable,* paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Beastie Boys,* 112 F. Supp. 3d at 48 (emphasis added) (some internal quotation marks omitted) (quoting *Simmons v. N.Y.C. Transit Auth.,* 575 F.3d 170, 174 (2d Cir. 2009)). In resolving what a *reasonable* client would pay, the Court must consider the "*Johnson factors,"* including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill,* 522 F.3d at 186 n.3 (citing *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714, 71719 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87 (1989)).

The Plaintiff's attorney seeking attorney's fees "bear[s] the burden of documenting the hours reasonably spent by counsel, and the reasonableness of the hourly rates claimed." *Beastie Boys,* 112 F. Supp. 3d at 48 (internal quotation marks omitted). Additionally, "[a]ttorney's fees must be reasonable in terms of the circumstances of the particular case." *Alderman v. Pan Am World Airways,* 169 F.3d 99, 102 (2d Cir. 1999). "There is no precise rule or formula for determining a proper attorney's fees award; rather, the district court should exercise its equitable discretion in light of all relevant factors." *Beastie Boys,* 112 F. Supp. 3d at 48 (alteration and internal quotation marks omitted).

A reasonable hourly rate is based on "the [current] prevailing market rate for lawyers in the district in which the ruling court sits." *Anthony v. Franklin First Fin., Ltd.,* 844 F. Supp. 2d 504, 507 (S.D.N.Y. Feb. 21, 2012); *see also McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund,* 450 F.3d 91, 96 (2d Cir. 2006) (explaining that a reasonable hourly rate is one in line with rates "prevailing . . . in the community for similar services by lawyers of reasonably comparable skill, expertise[,] and reputation" (internal quotation marks omitted)). In determining the reasonable hourly rate, the court can rely on its own knowledge of comparable rates charged by lawyers in the district and on evidence offered by the parties. *Adorno v. Port Auth.,* 685 F. Supp. 2d 507, 511 (S.D.N.Y. Feb. 19, 2010), *reconsideration granted in part,* 2010 WL 727480 (S.D.N.Y. Mar. 2, 2010).

In determining what constitutes reasonable fees and costs, the rates actually charged by attorneys and experts, and the hours actually expended are not dispositive. *Matteo v. Kohl's Dep't Stores, Inc.,* No. 09 Civ. 7830 (RJS*),* 2012 WL 5177491, at *2 (S.D.N.Y. Oct. 19, 2012); *citing Moreno v. Empire City Subway Co.,* No. 05 Civ. 7768 (LMM) (HBP), 2008 WL 793605, at *3 (S.D.N.Y. Mar. 26, 2008). Rather, a court must limit both the rate and hours to what is reasonable

and consider moderation, thus seeking to avoid either the reality or appearance of awarding windfall fees. *N. Y. State Ass 'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1139 (2d Cir. 1983). It is Plaintiff's attorneys' burden to demonstrate "satisfactory evidence" that the fees and costs requested are reasonable. *Blum v. Stenson,* 465 U.S. 886, 895 n.11 (1984). Judged by these standards, Plaintiff fails to show it is entitled to the attorneys' fees sought in its application.

### III.
### THE HOURS EXPENDED BY PLAINTIFF'S ATTORNEYS WERE NOT REASONABLE OR PROPER UNDER APPLICABLE LAW

A.    Plaintiff's Attorneys Seek Legal Fees that are Unreasonable

As previously noted, the determination of a reasonable fee depends on what a client would be willing to pay. Ultimately, "[t]he presumptively reasonable fee comes down to what a *reasonable*, paying client would agree to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Beastie Boys,* 112 F. Supp. 3d at 48 (emphasis added) (some internal quotation marks omitted) (quoting *Simmons v. N.Y.C. Transit Auth.,* 575 F.3d 170, 174 (2d Cir. 2009)). Here, the very document submitted by Plaintiff's attorneys confirm that Plaintiff would pay nothing in this matter, as there was a complete contingency agreement involved whereby Plaintiff would "pay only those legal fees shifted upon being found to prevail under 42 U.S.C. §1983 and §1988." (Duston Declaration, ¶5, Dkt. No. 111).

Since Plaintiff had no obligation to pay any of its attorneys' legal fees, then this completely 100% contingent fee had no reasonableness factor agreed to. For example, it is unreasonable that Plaintiff's attorneys could bill and seek that the City pay for over approximately 53.1 hours ($27,604.00) for the preparation of the Amended Complaint, letter motion to amend complaint, and letter motion for sanctions (Duston Declaration, Exhibit 2, Dkt. No. 111 ) (entries dated April 7, 2023 to July 6, 2023) when the City consented to adding YTR as a party and had no part in

Plaintiff's dispute with A.P.O.W. over alleged falsification of documents; or over approximately 140.7 hours ($70,488.00) (entries dated February 22, 2024 to November 18, 2024) for the preparation of summary judgment moving papers when Plaintiff was denied summary judgment on two of its five claims for which it sought partial summary judgment *(Id.)*.

Similarly, it is unreasonable that Plaintiff's attorneys could seek exorbitant attorneys' fees from the Defendant City for approximately 23.3 hours ($11,118.00) (entries dated May 10, 2023 to August 18, 2023) for the preparation of subpoenas to and communications with WCDA when it was Plaintiff's own conduct which caused Plaintiff's attorneys to incur these legal fees – Plaintiff was well aware at the outset of this litigation that it needed to obtain the required release from WCDA in order to retrieve the subject vehicle and actively chose to wait until almost two years had passed to resolve this issue. This is also plainly reflected in the deposition testimony of Sgt. DiDomizio, to wit "the *district attorney has to approve of the release of that vehicle upon request to ensure that that vehicle is not needed in that case for any case enhancement or discovery*". (*See* Declaration of Darious P. Chafizadeh, Exhibit 3, 36:3-7, Dkt. No. 97) (emphasis added). These entries are filled with excessive, duplicative and unnecessary hours by Plaintiff's attorneys, who have purported "extensive experience" litigating the very issues that are the subject of this litigation.[3] Further, many of the claims asserted were not against the Defendant City and do not warrant an attorneys' fee award under the common law or the state statute.

---

[3]     While Plaintiff seeks compensatory damages in the amount of $22,000 for the vehicle's stipulated value, plus $2,421.22 in prejudgment interest, Plaintiff also seeks to recover attorneys' fees in the amount of $231,910.52, over 10x the amount of the claimed damages. However, Plaintiff's litigation history confirms that Plaintiff's attorneys engage in the same *modus operandi* with respect to its claimed fees. *See Toyota Lease Trust v. Vill. of Freeport*, No. 20-CV-2207, 2024 WL 639989, at *8 (E.D.N.Y. Feb. 15, 2024) (in a case where the Court awarded $232 in depreciation damages, Plaintiff, who was also represented by Nicholas Duston, "[s]ought an award of $192,674.50 in fees prior to filing its reply and $57,269 in fees spent preparing its reply"). This Court should use its discretion to deny Plaintiff's counsel the injustice of recovering attorneys' fees, which are substantially disproportionate to the financial interest at stake in this litigation, and which would grant the Plaintiff a windfall while resulting in a significant penalty to the City

B.    Plaintiff's Requested Fees Should be Reduced Because the Time Expended by
       Counsel on Certain Tasks was Excessive, Duplicative and Unnecessary

In reviewing Plaintiff's attorneys' fee application, this Court "should exclude excessive,
redundant or otherwise unnecessary hours." *Quarantino v. Tiffany & Co.,* 166 F. 3d 422, 425 (2d
Cir. 2009). While some courts have dealt with the problem posed by excessive or redundant billing
by simply subtracting the redundant hours from the amount of hours used to calculate the lodestar
*see e.g. Fernandez v. North Shore Orthopedic Surgery of Sports Med. PC,* No. CIV.A.CV 96-
4489, 2000 WL 130637, at *6 (E.D.N.Y. Feb. 4, 2000), the Second Circuit has stated that this
Court is not required to "set forth item-by-item findings concerning what may be countless
objections to individual billing items." *Lunday v. City of Albany,* 42 F.3d 131, 134 (2d Cir. 1994).
Instead, courts have routinely used percentage reductions "as a practical means of trimming fat
from a fee application." *New York State Ass'n for Retarded Children v. Carey,* 711 F. 2d 1136,
1146 (2d Cir. 1983); *see Rahman v. Smith & Wollensky Rest. Grp., Inc.,* 06 Civ. 6198 (LAK)
(JCF), 2008 WL 1899938, at *4 (S.D.N.Y. April 29, 2008) (reducing claimed hours by 33%
because "counsel devoted far more hours to the sanctions issue than was justified by the work
product"); *Ass'n of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank Austria
Creditanstalt AG,* 04 Civ. 3600, 2005 WL 3099592, at *7 (S.D.N.Y. Aug. 19, 2005) (fees reduced
by 25% for block billing, excessive hours, and vagueness in time entries): *Gen. Elec. Co. v.
Compagnie Euralair,* 96 Civ. 0884 (SAS), 1997 WL 397627, at *6 (S.D.N.Y. July 3, 1997) (fees
reduced by 50% for overstaffing, excessive hours, and excessive hourly rates). "[I]t is less
important that the judges attain exactitude, than that they use their experience with the case, as

---

on issues for which the City had no responsibility. For example, Plaintiff incurred fees incurred in
connection with its application to amend the complaint. While the City did not object to Plaintiff's
application, A.P.O.W. did, with the result that Plaintiff filed a letter motion. Similarly, Plaintiff and
A.P.O.W. filed letter submissions with the Court pertaining to A.P.O.W.'s accusations that Plaintiff
engaged in misconduct, in which Plaintiff sought Rule 11 sanctions against A.P.O.W. by a letter motion.
The City had no involvement in that dispute.

well as their experience with the practice of law, to assess the reasonableness of the hours spent." *Clarke v. Frank,* 960 F. 2d 1146, 1153 (2d Cir. 1992).

Although attorneys' fees may be considered reasonable in the context of an order requiring a losing party to pay the prevailing party in a litigation, it "is not the same as the reasonableness of a bill that a law firm might present to its own paying client." *Daiwa Special Asset Corp. v. Desnick,* 00 Civ. 3856 (SHS), 2002 WL 31767817, at *2 (S.D.N.Y. Dec. 3, 2002), citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565 (1986). (emphasis added). What Plaintiff's attorneys use as the basis for their attorneys' fee application is an excel spreadsheet riddled with excessive, duplicative and vague entries which Plaintiff's attorneys would have presented to their client had Plaintiff agreed to pay that bill, which Plaintiff never in fact agreed to as there was a contingency fee agreement in place. Incredulously, this spreadsheet is filled with no less than 8 entries for Attorney Duston which contain verbatim narratives, dates, time spent and total costs (entries dated January 10, 2023, August 15, 2023, August 17, 2023 and August 18, 2023). (Duston Declaration, Exhibit 2, Dkt. No. 111). Likewise, this spreadsheet is filled with numerous vague time entries with no indication as to who or what parties were involved, such as follows: 0.7 hours on January 6, 2023 to "[d]raft case management plan; emails regarding same" *(Id.),* 0.6 hours on February 15, 2023 to "[r]evise discovery demands; emails regarding same" *(Id.),* 1.5 hours on February 24, 2023 to "[r]evise discovery demand, emails regarding same;" *(Id.),* 3.9 hours on February 27, 2023 to "[d]raft responses to Defendants' demands for production;" *(Id.),* 2.0 hours on March 2, 2023 to "[d]raft responses to requests for production" *(Id.),* 1.1 hours on April 17, 2023 to "[r]evise pre-motion letter" *(Id.),* 0.5 hours on July 28, 2023 to "[e]mail regarding discovery responses; receive and review answer;" *(Id.),* 1.2 hours on January 10, 2024 to "[r]eview documents in preparation for depositions" *(Id.).*

Accordingly, given the voluminous excessive, duplicative, unnecessary and vague entries submitted by Plaintiff's attorneys, the percentage reduction approach is appropriate. Courts frequently apply percentage reductions to fee applications exhibiting duplicative or redundant billing. *See e.g., Rotella v. Board of Education,* CV 01-0434 (NGG), 2002 WL 59106, at *3-4 (E.D.N.Y Jan. 17, 2002) (applying percentage reduction to fees of several attorneys for excessive and redundant billing); *Quinn v. Nassau County Police Dep't,* 75 F. Supp. 2d 74, 78 (E.D.N.Y. Nov. 20, 1999) (reducing one attorney's fees by 20% and another by 30% for unnecessary and redundant time). "Multiple attorneys are allowed to recover fees on a case if they show that the work *reflects the distinct contributions of each lawyer.*" *See Hutchinson v. McCabee,* 95 Civ. 5449 (JFK), 2001 WL 930842, at *3 (S.D.N.Y. Aug. 15, 2001) (emphasis added). The bill records submitted by Plaintiff's attorneys largely fail to accomplish this.

Not only are Plaintiff's billing records permeated with redundant, inefficient and vague time entries, but Plaintiff's own papers state that Plaintiff's attorneys have "extensive experience" litigating no less than five separate cases identical to the issues at play here. This begs the question as to why Plaintiff's attorneys spent over 140 hours researching and preparing Plaintiff's summary judgment papers.

Equally important, Plaintiff seeks exorbitant attorneys' fees for issues in which the City bore no fault. For the $27,604.00 sought for the preparation of the Amended Complaint, a three page letter motion for leave to amend the complaint and a letter motion for sanctions against A.P.O.W Attorney Sokolof started billing from April 7, 2023 to July 6, 2023, and claims 28 hours of work. (Duston Declaration, Exhibit 2, Dkt. No. 111.) Then, Attorneys Duston and Meola duplicate that effort by claiming over 30 hours of work regarding the same Amended Complaint, letter motion to amend complaint and letter motion for sanctions. (*Id*.) The City not only consented

to Plaintiff's request to add YTR as a party, but also had no part in the accusation of falsifying documents alleged by A.P.O.W. Further, the nearly 60 hours of work claimed for the preparation of the Amended Complaint and two letter motions is excessive for attorneys with such "extensive experience", were not the result of the actions of the City and thus do not warrant the grant of attorneys' fees. The demand for attorneys' fees for the hours spent on the preparation of the amended complaint and the two accompanying letter motions should be denied in their entirety.

The biggest example of inefficiency is that the Plaintiff's attorneys billed 51.8 hours with respect to/including[4] research as to the drafting of the Amended Complaint and pre-letter motion to amend complaint and pre-letter motion for sanctions, such as follows: 4.8 hours including "[r]esearch on moving for leave to amend complaint" (*Id.*), 3.8 hours including "[r]esearch on moving for leave to amend complaint" (*Id.),* 3.4 hours including "[r]esearch for memo seeking leave to amend" (*Id.*), 3.6 hours including to "amend complaint; draft proposed order; draft affirmation; draft memorandum of law, research regarding same" (*Id.*), 2.8 hours including to "revise memorandum; revise letter to court" (*Id.*), 2.8 hours including to "review, revise and coordinate finalization/filing of motion for leave to amend" (*Id.*), 3.2 hours including to "revise and finalize memorandum seeking leave to amend; coordinate filing of same" (*Id.*), 3.0 hours including to "review source of allegedly altered evidence" (*Id.*), 6.5 hours including "legal research regarding sanctions for violating Rule 11 and Court inherent power to sanction" (*Id.*), 2.6 hours including to "[r]eview Duston submissions addressing falsehoods from garage counsel" (*Id.*), 2.2 hours including to "[r]eview, revise and finalize response to APOW accusation of falsifying documents and lying to court" (*Id.*), 1.5 hours including to "begin legal research

---

[4]       The submission contained numerous "block-billed" and vague entries including the research (with no delineation between the amount of the time for the research as opposed to other tasks). Further, many of the claims and research are not related to the constitutional claims and therefore, are not subject to an attorney fee award.

surrounding standard on Rule 11 motion" *(Id.)*, 5.3 hours including "[l]egal research regarding Rule 11 standard; draft Rule 11 brief, certification, and accompanying letter, including legal research" *(Id.)*, 1.8 hours including "[l]egal research regarding sufficiency of correction of misstatements during Rule 11 safe harbor period" *(Id.)*. In layman's terms, an excessive and vague amount of time was expended in researching the Amended Complaint and two letter motions, coupled with further excessive time related to "revising" and "finalizing" the same.

Importantly, and as previously noted herein, however, the City consented to the addition of YTR by Plaintiff in this litigation. It was co-defendant A.P.O.W. that refused to consent to Plaintiff's addition of YTR as a party and accused Plaintiff of alleged falsification of documents which caused the attorneys' fees claimed by Plaintiff. There is absolutely no basis in law for the City to pay attorneys' fees to Plaintiff for legal work done to add YTR as a party when the City agreed to that addition. Nor should the City bear the responsibility for any sanctions issues when such issues were the result of co-defendant A.P.O.W. Any attorneys' fees for the addition of YTR as a party and sanctions issues were caused by co-defendant A.P.O.W and not the City. As such, the City has no responsibility to pay Plaintiff's attorneys' fees for any of the aforementioned issues.

Attorneys should exercise billing judgment with respect to hours worked. Counsel are required to maintain and present billing and time records in a manner that enables a court to identify "distinct" claims. *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). Plaintiff's fee request should be reduced for the duplicative efforts. Given Plaintiff's attorneys purported "extensive" legal experience, their time is grossly excessive. *See VFS Fin., Inc. v Pioneer Aviation, LLC,* 08 Civ. 7655 (GBD)(AJP)*, 2009 WL 2447751, at *5 (S.D.N.Y. Aug. 11, 2009) (court reduced fees 10% after finding that attorneys "were consistently reviewing each other's work, constantly

discussing the case with each other . . . and reviewing the same documents and legal research"). For example, Attorney Meola, who is purported to have thirty years' experience litigating the issues present here, claims over approximately 35.2 hours ($26,509.50) for preparation of Plaintiff's summary judgment motion. (Duston Declaration, Exhibit 2, Dkt. No. 111). Then, Attorney Duston, who is purported to have thirteen years' experience litigating civil rights matters relating to motor vehicle recovery, duplicates Attorney Meola's efforts by claiming 25.6 hours ($14,976.00) to review and revise Plaintiff's summary judgment motion. *(Id.)*. Then again, Attorney Sokolof (Attorney Duston's associate), claims 14.2 hours ($6,177.00) for the same review and revision of Plaintiff's summary judgment motion. *(Id.)*. Although Plaintiff Santander may have preferred a concerted effort, a multiplicity of attorneys was not necessary to get the job done. *See Allende v. Unitech Design, Inc.,* 783 F. Supp. 2d 509, 515 (S.D.N.Y. Mar. 15, 2011) (court reduced fees 7% to account for duplicative billing for conferences between attorneys). *See Ragin v. Harry Macklowe Real Estate Co.,* 870 F. Supp. 510, 521 (S.D.N.Y. Dec. 9, 1994) (court reduced attorney's fees by 30% upon a finding of excessive and duplicative efforts). Additionally, Plaintiff seeking attorneys' fees from the City regarding issues for amending the complaint and Rule 11 sanctions is *per se* unreasonable as a matter of law.

C.   Plaintiffs Requested Fees Should be Reduced Due to Block Billing and Vague Descriptions of Tasks Performed

Courts have reduced fee awards where the billing entries were overly vague. *See e.g., Kirsch v. Fleet St., Ltd.,* 148 F.3d 149, 172 (2d Cir. 1998) (upholding reduction of award by 20% for vague entries such as "letter to court," "staff conference," or "work on motion"); *Amato v. City of Saratoga Springs,* 991 F. Supp. 62, 65-66 (N.D.N.Y. Jan. 20, 1998) (reducing award for vagueness due to entries such as "review discovery response and review research"). Where the fee application contains numerous vague entries, courts routinely impose an across-the-board

14

reduction. *See e.g., Katzenberg v. Lazzari,* 04 CV 5100 (CBA), 2007 WL 2973586, at *9 (E.D.N.Y. Oct. 9, 2007); *Mr. X v. New York State Educ. Dep't,* 20 F. Supp. 2d 561, 564 (S.D.N.Y Sept. 4, 1998) (reducing the fee award by 20% to account for vague and duplicative time entries). At the very least, this Court should do so in this matter based upon the overly vague entries of Plaintiff's attorneys in their billing.

Here, Plaintiff's attorneys billing entries are again replete with vague entries and multiple block billed tasks. The billing records submitted by Plaintiff's attorneys contain many entries sufficiently vague so that the Court cannot determine what time was spent or even if such time was necessary. "Vague" and "block-billed" entries are identified on Plaintiff's attorneys' billing records, such as the following entries:  April 7, 2023 for 4.8 hours: [r]esearch on moving for leave to amend complaint; review and revise response to deficiency letter from defendant; review discovery responses received from defendant, discussion regarding same; draft motion to for leave to file and supporting documents" (Duston Declaration, Exhibit. 2, Dkt. No. 111), April 10, 2023 for 3.8 hours "[r]esearch on moving for leave to amend complaint; emails regarding motion to compel deadline; review of discovery order; draft letter to the court seeking pre-motion conference" *(Id.)*, May 5, 2023 for 3.4 hours "[r]esearch for memo seeking leave to amend; draft memo seeking leave to amend" *(Id.)*, May 8, 2023 for 3.6 hours "[d]raft notice of motion; amend complaint; draft proposed order; draft affirmation; draft memorandum of law, research regarding same;" *(Id.)*, May 12, 2023 for 3.2 hours "[r]evise and finalize memorandum seeking leave to amend; coordinate filing of same" and 2.8 hours "[r]eview, revise and coordinate finalization/filing of motion for leave to amend;" *(Id.)*.

These unclear and block billed entries raise the following: What specific research was conducted on the motion to amend? How long did that research take and what portion of the time

entries does that research comprise? What letter was drafted to the Court regarding what specifically as to the motion to amend? How long did that letter take to draft? Draft what supporting documents? How long did that drafting take? Review of which defendant's discovery responses? How long did that review take? Draft what section of the motion for leave to amend? How long did that section take?

Why do such purportedly seasoned attorneys with a combined 45 years of experience include such vague and block billed entries, when by their own admission, they have resolved these issues in prior litigations? (Duston Declaration, ¶11, Dkt. No. 111). Plaintiff's attorneys fail to provide any further information, and more importantly, fail to outline to this Court the time expended per task but ask this Court to approve such large, vague and block billed entries. Additionally, the multiple and duplicative time spent by Plaintiff's attorney regarding research as to the Amended Complaint and two accompanying letter motions, as discussed *supra* is not only duplicative but also vague.

These entries and many other billing entries by Plaintiff's attorneys do not provide sufficient information for the Court to determine what actual work was being done, and therefore, if the work was necessary, excessive, and/or duplicative. Moreover, and as previously discussed herein, for attorneys with significant experience in litigating this area of the law, the amount of time expended on research and drafting is not only excessive, but duplicative of issues resolved in prior litigations. Courts have held that cursory entries such as "trial prep are too vague to support a full award of fees, and thus justify a percentage reduction" *Toussie v. City of Suffolk,* 01-CV-6716 (JS) (ARL), 2012 WL 3860760, at *7 (E.D.N.Y. Sep. 6, 2012); *Valley v. City of Derby,* 3:06CV1319 (TLM), 2012 WL 1077848, at*9 (D. Conn. March 30, 2012) (reducing reasonable hours based on vagueness of time entry description "work on trial prep, rev depo, witness notes").

While it is "unnecessary for [fee applicants] to identify with precision the amount of hours allocated to each individual task," *Rahman v. Smith & Wollensky Rest. Grp., Inc., No. 06-CV-6198,* 2009 WL 72441, at *7 (S.D.N.Y. Jan. 7, 2009), attorneys seeking reimbursement "must provide enough information for the [c]ourt, and the adversary, to assess the reasonableness of the hours worked on each discrete project," *Themis Capital v. Dem. Rep. of Congo,* No. 09 Civ. 1652 (PAE), 2014 WL 4379100, at *7 (S.D.N.Y. Sept. 4, 2014), *reconsideration denied, No. 09 Civ. 1652 (PAE),* 2014 WL 4693680 (S.D.N.Y., Sept. 22, 2014). Plaintiff's attorneys' entries do not do this at all.

In addition, just like many of the billing entries by Plaintiff's attorneys, block billing makes it difficult for the court to determine the amount of time allocated to each individual activity in order to gauge the reasonableness of the time expended on each activity. *Pall Corp. v. 3M Purification, Inc.,* CV 97-7599 (RRM)(TB), 2012 WL 1979297, at *7 (E.D.N.Y. June 1, 2012) (citation omitted). "Where billing entries contain merely vague descriptions of services rendered, or where counsel has engaged in block billing, courts have used percentage reductions as a practical means of trimming fat from a fee application." *Penberg v. Healthbridge Mgmt,* 08 CV 1534 (CLP), 2011 WL 1100103 at *9 (S.D.N.Y. Mar. 22, 2011) (quoting *N.Y. Ass 'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1146 (2d Cir. 1983) (in awarding fees for spoliation of evidence, attorneys' time entries were reduced by 25% due to vagueness and block billing); *Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc.,* 277 F. Supp. 2d 323, 325-26 (S.D.N.Y. Aug. 13, 2003) (fees reduced by 15% after court found significant use of "block billing" although not prohibited, rendered it difficult to determine whether work was duplicative or unnecessary).

Though courts disfavor block billing in general, it "is most problematic where large amounts of time (e.g., five hours or more) are block billed," thereby "meaningfully cloud[ing] a

reviewer's ability to determine the projects on which significant legal hours were spent." *Beastie Boys,* 112 F. Supp. 3d at 53 (italics omitted); *see also Abdell v. City of N. Y.,* No. 05-CV-8453(RJS), 2015 WL 898974, at *4 (S.D.N.Y. March 2, 2015) (finding block billing acceptable "for temporally short entries combining related tasks"); *Adorno,* 685 F. Supp. 2d at 515 ("While block-billing is disfavored and may lack the specificity required for an award of attorneys' fees, it is not prohibited as long as the [c]ourt can determine the reasonableness of the work performed." (internal quotation omitted)). Here, Plaintiff's attorneys' billing contains a significant amount of single, block billed entries, lacking any specificity as to the work performed or the length of time for the work performed, such as:

| | |
|---|---|
| March 21, 2022 | 3.2 hours |
| October 5, 2022 | 3.7 hours |
| October 17, 2022 | 3.8 hours |
| February 27, 2023 | 3.9 hours |
| April 4, 2023 | 6.7 hours |
| April 7, 2023 | 4.8 hours |
| April 10, 2023 | 3.8 hours |
| April 18, 2023 | 1.9 hours |
| April 24, 2023 | 2.0 hours |
| April 26, 2023 | 2.5 hours |
| May 5, 2023 | 2.3 hours |
| May 5, 2023 | 3.4 hours |
| May 8, 2023 | 2.9 hours |
| May 8, 2023 | 3.6 hours |
| May 10, 2023 | 2.8 hours |
| May 12, 2023 | 2.8 hours |
| May 12, 2023 | 3.2 hours |
| May 23, 2023 | 3.0 hours |
| May 23, 2023 | 2.2 hours |
| May 24, 2023 | 6.5 hours |
| May 24, 2023 | 2.8 hours |
| May 30, 2023 | 2.2 hours |
| June 1, 2023 | 2.1 hours |
| June 2, 2023 | 2.2 hours |
| June 12, 2023 | 5.3 hours |
| August 15, 2023 | 4.5 hours |
| January 18, 2024 | 4.3 hours |
| January 25, 2024 | 2.7 hours |
| January 26, 2024 | 2.1 hours |

| | |
|---|---|
| January 31, 2024 | 5.4 hours |
| February 14, 2024 | 2.1 hours |
| February 22, 2024 | 6.7 hours |
| February 23, 2024 | 5.5 hours |
| February 26, 2024 | 4.1 hours |
| March 18, 2024 | 3.2 hours |
| March 18, 2024 | 2.1 hours |
| March 19, 2024 | 5.2 hours |
| March 22, 2024 | 5.6 hours |
| March 26, 2024 | 5.8 hours |
| June 5, 2024 | 3.8 hours |
| June 10, 2024 | 4.1 hours |
| June 12, 2024 | 5.3 hours |
| June 13, 2024 | 2.1 hours |
| June 14, 2024 | 5.6 hours |
| June 17, 2024 | 4.5 hours |
| June 18, 2024 | 2.5 hours |
| June 18, 2024 | 4.8 hours |
| November 18, 2024 | 2.9 hours |
| December 11, 2024 | 6.7 hours |
| December 12, 2024 | 5.1 hours |
| December 23, 2024 | 2.5 hours |
| January 1, 2025 | 2.8 hours |
| January 9, 2025 | 2.1 hours |
| January 10, 2025 | 2.5 hours |

Because Plaintiff's attorneys request for attorneys' fees include numerous blocked billed entries in large time increments, it is impossible to determine how much time was spent on each task. If this cannot be done, then this Court cannot make a determination as to the reasonableness of the time spent on the individual tasks. A substantial deduction is therefore warranted.

      D.    <u>There Should be a Reduction in the Fee Award for Unsuccessful Claims</u>

"Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee…where a plaintiff only achieved limited success, the district court should award on that amount of fees that is reasonable in relation to the results obtained." *Hensley,* 461 U.S. at 440 (1983). As outlined previously herein, Plaintiff did not prevail on its common law tort claims or GBL claim against co-defendant A.P.O.W and YTR.

As such, this Court in its discretion and under established precedent cannot award attorneys' fees to Plaintiff's attorneys relating to these claims – state law claims against a third party that do not have attorney fee provisions.

      E.      <u>Plaintiff's Attorneys are not Entitled to Receive the Hourly Rates Sought</u>

The hourly rates sought by Plaintiff's attorneys are $645 per hour for Attorney Meola; $585 per hour for Attorney Duston; and $435 per hour for Attorney Sokolof (Attorney Duston's associate). It is claimed that Attorney Meola has "thirty years of experience practicing law primarily representing motor vehicle financial services companies" and "has extensive industry knowledge and experience handling issues relating to motor vehicle impounds, including successful civil rights litigation under 42 U.S.C. §1983 or in violation of other constitutionally-protected rights" (Duston Declaration, Dkt. No. 111) and that Attorney Duston has "thirteen years of experience practicing law, particularly in Federal Court" and he "regularly represent[s] clients in civil rights litigation under 42 U.S.C. §1983, or other matters relating to the recovery of motor vehicles and other collateral from third parties." *(Id.)*. While Attorneys Duston and Meola reference no less than six cases in the Southern and Eastern Districts of New York where they have achieved success on the same summary judgment issues, there is little reason to justify the hourly rates sought for the significant amount of time expended by these same attorneys on the same issues here. *(Id.)*. As to Attorney Sokolof, no reference is provided as to the amount of cases handled, his success, or how many were federal cases in the Southern District of New York. This information is problematic at best. In addition, Plaintiff's inclusion of the "Laffey Matrix" in its moving papers is an unnecessarily verbose attempt to persuade this Court to award astronomical hourly rates that are typically applied in a jurisdiction well outside the geographic boundaries of this Court.

This Court has recognized that attorneys with substantial experience litigating specific issues is relevant to a determination of reasonable hourly rates "because any experienced attorney may be able to complete tasks in a more efficient and less time-consuming manner." *Independence Project, Inc. v. Ventresca Bros. Construction Co., Inc.,* 397 F. Supp. 3d 482, 495 (S.D.N.Y. Aug. 30, 2019). "For civil rights cases in the Southern District of New York, some courts have found that 'awards exceeding $400 per hour are only warranted in unusually difficult and complex cases.'" *Swartz v. HCIN Water Street Associates, LLC,* 2018 WL 5629903, at *4 (citing *Bowman v. Realty, No. 14-CV-5423 (JMF),* 2016 WL 3676669, at *4 (S.D.N.Y. July 6, 2016)). Where a case is litigated by attorneys who have substantial experience in litigating similar cases, a fee award can be properly reduced, as "the duplicitous nature of the litigation and absence of complex or novel issues justifies a reduction in the requested rate. *Id.* (citing *Spalluto v. Trump Intern. Hotel & Tower,* 2008 WL 4525372 (S.D.N.Y. Oct. 2, 2008)).

Plaintiff's attorneys readily admit their "extensive experience" in litigating cases involving the same exact issues as are the subject of this litigation – "Mr. Meola and Mr. Duston's joint practice have resulted in three reported summary judgment decisions in the same area of law as this case" and "have also achieved several other unpublished summary judgment decisions in similar cases, including the present matter." (Duston Declaration, ¶11, Dkt. No. 111). Accordingly, there are no novel or complex issues being litigated, and Plaintiff's attorneys' requested hourly rates are unreasonable. As such, the hourly rates sought by Plaintiff's attorneys are not appropriate given their experience and record of success as provided to this Court in their application for attorneys' fees. That statement is made, however, with a reservation of rights to the City in its position that the Plaintiff's attorneys are not entitled to any award of attorney fees or, if any, a 90% reduction in the amount claimed in their application.

21

**IV.**
**PLAINTIFF'S REQUEST FOR PRE-JUDGEMENT**
**INTEREST SHOULD BE DENIED**

In its Opinion and Order dated November 18, 2024, Plaintiff's motion for summary judgment as to damages was denied as Plaintiff failed to establish that no genuine dispute of material fact existed as to its claimed damages – "the record before the Court is insufficient to determine as a matter of law the amount of damages owed" to Plaintiff. (Opinion and Order dated November 18, 2024, p. 33, Dkt. No. 104.) Pursuant to this Court's direction, the parties subsequently entered into a Joint Letter stipulating[5] to the value of the vehicle. (Joint Letter dated November 25, 2024, Dkt. No. 105). The Court then allowed Plaintiff to move for damages by separate motion. (*See* Dkt. No. 106). For purposes of this motion only, the City does not dispute the stipulated damages in the amount of $22,000, but rather Plaintiff's request for prejudgment interest in the amount of $2,421.22.

An award of prejudgment interest in a suit to enforce a federal right is generally within the discretion of the district court. *Sulkowska v. City of New York*, 170 F. Supp. 2d 359, 370 (S.D.N.Y. Apr. 25, 2001). In determining whether to award prejudgment interest in a particular case, the court should consider "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Wickham Contracting Co., Inc. v. Local Union No. 3, Intern. Broth. of Elec. Workers., AFL-CIO*, 955 F.2d 831, 834 (2d Cir. 1992). The underlying purpose of an award of prejudgment interest is the need to fully compensate the wronged party for actual damages suffered – i.e., to make the party whole. *Thomas v. City of Mount Vernon*, 1992 WL 84560 at *3 (S.D.N.Y. Apr. 10, 1992).

---

[5]     Without waiver of any and all objections and possible appeal.

Plaintiff has failed to establish that it is entitled to prejudgment interest. Significantly, as Plaintiff's motion extensively discusses, the parties stipulated in their Joint Letter to this Court the vehicle's value at the relevant time to be $22,000. (Joint Letter dated November 25, 2024, Dkt. No. 105). Although Plaintiff raised its argument regarding compensatory damages in its summary judgment motion, it did not include a calculation of prejudgment interest in the parties' Joint Letter stipulation, despite having the opportunity to do so. *(Id.)*. Rather, by stipulating to and submitting the Joint Letter to this Court, Plaintiff effectively agreed that the $22,000 value would fully compensate Plaintiff and make Plaintiff whole. Moreover, it was the actions of co-defendant A.P.O.W. which caused significant delay in this litigation – namely its refusal to consent for Plaintiff to amend the complaint and its accusation of Plaintiff's alleged falsification of documents. The City should not be required to pay prejudgment interest based on the conduct of another party, for which the City played no part, that prolonged this litigation. Accordingly, it is respectfully submitted that Plaintiff's claim for prejudgment interest in the amount of $2,421.22 be denied in its entirety.

## CONCLUSION

For the foregoing reasons, the Defendant City of Yonkers respectfully requests that Plaintiff's attorneys' application for attorneys' fees be denied in its entirety or dramatically reduced to no more than 90% of the attorneys' fees sought; together with such other and further relief to the Defendant City as this Court deems just and proper.

Dated: White Plains, New York
         January 24, 2025

Respectfully submitted,

**HARRIS BEACH MURTHA CULLINA PLLC**

*Darius P. Chafizadeh*
By:    Darius P. Chafizadeh
       Jessica Molinares Kalpakis
*Attorneys for Defendant*
*The City of Yonkers*
445 Hamilton Avenue
Suite 1206
White Plains, New York 10601
(914) 683-1200