**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SANTANDER CONSUMER USA, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE CITY OF YONKERS, A.P.O.W. TOWING, LLC, AND YONKERS TOWING & RECOVERY LLC, <br><br> Defendants. | Civil Case No.: 7:22-cv-08870-KMK <br><br> Hon. Kenneth M. Karas |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR DAMAGES AND ATTORNEYS' FEES**

**NORRIS McLAUGHLIN P.A.**
Nicholas A. Duston, Esq.
7 Times Square, 21st Fl.
New York, NY 10036
(908) 252-4208
naduston@norris-law.com
*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

    **Page**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

LEGAL ARGUMENT ............................................................................................................... 1

    I.    Santander's success on its core constitutional claims warrants full fee recovery............................................................................................................... 1

    II.    The "lodestar" calculation is presumptively reasonable absent countervailing reason to deviate from it, and no downward deviation is warranted ........................... 3

        A.    The contingency agreement justifies higher fees, not zero fees. ...................... 4

        B.    It is too late for Yonkers to point fingers at YTR or Santander. ....................... 5

        C.    YTR's argument about a different matter litigated by a different plaintiff is nonsensical and does not warrant a reduction in fees. ................... 6

        D.    The rates sought are reasonable. ................................................................... 7

        E.    The hours expended were reasonable. .......................................................... 8

        F.    Prejudgment interest is warranted. ............................................................... 11

CONCLUSION ........................................................................................................................ 11

CERTIFICATION ................................................................................................................... 12

## **TABLE OF AUTHORITIES**

**Page**

### **FEDERAL CASES**

Adorno v. Port Auth. of New York & New Jersey,
   685 F. Supp. 2d 507 ...................................................................................................10

Almond v. PJ Far Rockaway, Inc.,
   2018 WL 922184 (E.D.N.Y. Feb. 15, 2018)..................................................................7

Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany
   Cty. Bd. of Elections,
   522 F.3d 182 (2d Cir. 2008)...........................................................................................3

Ass'n of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank
   Austria Creditanstalt AG,
   No. 04-cv-3600-SWK, 2005 WL 3099592 (S.D.N.Y. Nov. 17, 2005) ..........................8

Balu v. City of New York,
   No. 12-cv-1071-KPF, 2016 WL 884666 (S.D.N.Y. Mar. 8, 2016) ..............................10

Brewster v. City of Los Angeles,
   672 F. Supp. 3d 872 (C.D. Cal. 2023) ...........................................................................8

City of Riverside v. Rivera,
   477 U.S. 561 (1986).......................................................................................................6

Douglas v. Anthem Prods., LLC,
   No. 18-cv-5789GWG, 2020 WL 2631496 (S.D.N.Y. May 26, 2020)...........................3

Faroque v. Park West Executive Services,
   2020 WL 9812905 (E.D.N.Y. Jan. 29, 2020) ................................................................7

General Electric Co. v. Compagnie Euralair, S.A.,
   No. 96-cv-0884 (SAS), 1997 WL 397627 (S.D.N.Y. July 3, 1997)..............................8

Grant v. Martinez,
   973 F.2d 96 (2d Cir. 1992).............................................................................................8

Hall v. City of Fairfield,
   No. 2:10-cv-0508-DAD, 2014 WL 1286001 (E.D. Cal. Mar. 31, 2014).......................9

Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.,
   82 F.3d 1533 (10th Cir. 1996) .....................................................................................10

Hensley v. Eckerhart,
   461 U.S. 424 (1983)...............................................................................................1, 2, 4

HomeAway.com, Inc. v. City of New York,
   523 F. Supp. 3d 573 (S.D.N.Y. 2021)...................................................................................7

HVT, Inc. v. Port Auth.,
   2023 WL 5441898 (E.D.N.Y. Aug. 22, 2023)........................................................................7

Indep. Project, Inc. v. Ventresca Bros. Constr. Co.,
   397 F. Supp.3d 482 (S.D.N.Y. 2019).....................................................................................1

Lunday v. City of Albany,
   42 F.3d 131 (2d Cir. 1994).....................................................................................................2

Marfia v. T.C. Ziraat Bankasi,
   147 F.3d 83 (2d Cir. 1998)...................................................................................................11

Moreno v. City of Sacramento,
   534 F.3d 1106 (9th Cir. 2008) ...............................................................................................4

Murphy v. Lynn,
   118 F.3d 938 (2d Cir. 1997)...................................................................................................2

Nadarajah v. Holder,
   569 F.3d 906 (9th Cir. 2009) .................................................................................................8

New York State Ass'n for Retarded Children, Inc. v. Carey,
   711 F.2d 1136 (2d Cir.1983)..................................................................................................9

Perdue v. Kenny A. ex rel. Winn,
   559 U.S. 542 (2010)...............................................................................................................3

Perez v. Westchester Cty. Dep't of Corr.,
   587 F.3d 143 (2d Cir. 2009)...................................................................................................2

Pope v. Cnty. of Albany,
   No. 1:11-CV-0736 ...............................................................................................................10

Rahman v. The Smith & Wollensky Rest. Grp., Inc.,
   No. 06-cv-6198-LAK-JCF, 2008 WL 1899938 (S.D.N.Y. Apr. 29, 2008)...............................8

Raja v. Burns,
   43 F.4th at 88 .....................................................................................................................2, 3

Resnik v. Coulson,
   No. 17-cv-676PKCSMG, 2020 WL 5802362 (E.D.N.Y. Sept. 28, 2020)................................9

Robinson v. City of Edmond,
   160 F.3d 1275 (10th Cir. 1998) .............................................................................................6

Toyota Lease Tr. v. Vill. of Freeport,
    2024 WL 639989 (E.D.N.Y. Feb. 15, 2024) ...............................................................................7

Toyota Lease Trust v. The City of Yonkers,
    19-cv-3199-GBD .......................................................................................................................6

Venegas v. Mitchell,
    495 U.S. 82 (1990) ....................................................................................................................4

## **OTHER AUTHORITIES**

S.Rep. No. 94–1011 (1976) ............................................................................................................4

Santander Consumer USA, Inc. ("Santander"), submits this brief in further support of its motion for damages and attorneys' fees against the City of Yonkers ("Yonkers") and Yonkers Towing and Recovery LLC ("YTR" and, together with Yonkers, the "Defendants").

## PRELIMINARY STATEMENT

Defendants' opposition to Plaintiff's motion for attorneys' fees rests on several flawed premises that misconstrue both the applicable law and the record.  Both Defendants fail to acknowledge that the lodestar is the *presumptively* reasonable fee, and that deviation from that amount—while being within the Courts' discretion—is the exception, not the rule.  The lodestar encompasses the work needed to prevail, and less work may not have achieved the same result.

In arguing for a reduced fee, Defendants make several flawed arguments.  None justify a reduction in the fees sought by Santander.  Therefore, Santander's request should be granted, and an order entered, awarding the requested $240,143.50 in fees (as explained *infra*), $865.80 in costs and $24,421.22 in damages, for a total of $265,430.52.

## LEGAL ARGUMENT

**I.       Santander's success on its core constitutional claims warrants full fee recovery.**

Yonkers reasons that because Santander prevailed on 3 of 5 claims against Yonkers, the legal fees should be mechanically reduced by 2/5ths, or 40%.  Yonkers Opp. at  4.  Yonkers *provides no citation*, because this is not the law. The Supreme Court has expressly rejected a mechanical claim counting approach, instead directing examination of whether a plaintiff achieved "excellent results" warranting "a fully compensatory fee." Hensley v. Eckerhart, 461 U.S. 424, 435 (1983). As this Court explained in a case Yonkers cites: "whether the result actually accomplishes something substantive for the winning party" is what matters. Indep. Project, Inc. v. Ventresca Bros. Constr. Co., 397 F. Supp.3d 482, 490 (S.D.N.Y. 2019).

1

Here, Santander obtained exactly what it sought: a ruling that Yonkers' vehicle impound policies violated Santander's constitutional rights. Dkt. No. 104 at 26, 29 (finding deprivations of procedural due process and the Takings Clause). This represents complete success on the core goal of the litigation. That related claims were dismissed or abandoned does not warrant a reduction in fees. A plaintiff who "obtain[s] the relief sought" is entitled to full fees even if they do not prevail on every theory. Perez v. Westchester Cty. Dep't of Corr., 587 F.3d 143, 149 (2d Cir. 2009); see also Hensley, 461 U.S. at 435 ("[T]he fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised . . . .").

> When a plaintiff has achieved partial success but 'the plaintiff's claims involve a common core of facts or are based on related legal theories and are therefore not severable, attorney's fees may be awarded for [work done on] unsuccessful claims as well as successful ones…. In such cases, most of counsel's billed time is devoted to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis…. The court need not determine how much time counsel devoted to each such overlapping claim but should instead look to the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended

Raja v. Burns, 43 F.4th at 88 (quoting Hensley, 461 U.S. at 435); see also Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994) ("So long as the plaintiff's unsuccessful claims are not wholly unrelated . . . hours spent on the unsuccessful claims need not be excluded . . . ."); Murphy v. Lynn, 118 F.3d 938, 952 (2d Cir. 1997) ("A plaintiff's lack of success on some of his claims does not require the court to reduce the lodestar amount where the successful and the unsuccessful claims were interrelated and required essentially the same proof").

In Raja, the court held that the plaintiff had "achieved his principal goals, which were to obtain a declaratory ruling that his summary suspension was unconstitutional and to recover damages..." Raja, 43 F. 4th at 90. Even though Raja failed to obtain other declaratory relief, failed on a separate due process claim, and failed to obtain relief against one defendant, the Court ***overturned*** a 40% downward adjustment and found ***no*** adjustment warranted because the plaintiff

2

was "successful as to the due process claims that motivated this litigation," with those arguments Plaintiff lost being "secondary" and "shar[ing] a common core of facts." Id. at 91.

Santander's case presents a unified challenge to Yonkers' policies. All its claims arose from a single core contention: that Yonkers' vehicle impounds violate the constitutional rights of those with pre-existing interests in such vehicle.  The ruling extends far beyond the immediate case and compels Yonkers to fundamentally revise its policies and establishes vital protections for all lienholders' rights in the future. Given that the ruling directly addresses and validates Santander's central argument, and benefits the public, Santander is entitled to a full fee.

## II. The "lodestar" calculation is presumptively reasonable absent countervailing reason to deviate from it, and no downward deviation is warranted

The lodestar calculation establishes a "presumptively reasonable fee."  Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections, 522 F.3d 182, 183 (2d Cir. 2008).  While courts retain discretion to adjust this amount, the lodestar figure itself "includes most, if not all, of the relevant factors constituting a reasonable attorney's fee.'" Douglas v. Anthem Prods., LLC, No. 18-cv-5789GWG, 2020 WL 2631496, at *2 (S.D.N.Y. May 26, 2020)(quotations omitted)(quoting Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 553 (2010) (citation and quotation omitted).  "[T]he court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." See Hall v. City of Fairfield, No. 2:10-cv-0508-DAD, 2014 WL 1286001, at *9 (E.D. Cal. Mar. 31, 2014)).  In this case, the lodestar

3

calculation produces a presumptively reasonable fee of $240,143.5[1] in attorneys' fees, and Yonkers has failed to present any compelling arguments that would justify reducing this amount.

### A. The contingency agreement justifies higher fees, not zero fees.

Yonkers argues that Santander's contingent arrangement means Santander's attorneys must work for free. See Yonkers' Opp. at 7. Yonkers's argument defies all logic. "Lawyers must eat, so they generally won't take cases without a reasonable prospect of getting paid." Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008). Where the fee is contingent, it warrants an *increased* fee. Hensley, 461 U.S. at 433 (instructing courts to consider the time-value of money and risk of nonpayment). Santander's attorneys assumed the risk of non-payment, and "§ 1988 controls what the losing defendant must pay," and does not "interfere with the enforceability of a contingent-fee contract." Venegas v. Mitchell, 495 U.S. 82 (1990).

Congress specifically recognized that attorneys' fees are essential in civil rights cases, where plaintiffs cannot rely on damages to fund their litigation. "If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest . . . ." S.Rep. No. 94–1011, at 3 (1976), as reprinted in 1976 U.S.C.C.A.N. 5908, 5910. Yonkers' position would undermine this core legislative purpose. That is why it is not the law, and should not affect this courts' decision.

---

[1] Yonkers correctly points out that *four* entries out of a total *266* entries, for a combined sum of $1,812.50, were mistakenly duplicated. See Opp. at 10. This error can be explained by Santander's attorneys' practice of having admins aid in billing recordation to further cut down on costs associated with contingency fee litigation. Accordingly, Santander appropriately modifies its request for attorneys' fees from $230,623.50 to $228,811.00.

4

**B.      It is too late for Yonkers to point fingers at YTR or Santander.**

Yonkers' and YTR's argument that they should not pay for the other Defendants' tomfoolery is wrong. See Yonkers' Opp. at 7-8.  Neither provides any citation, because the law does not support this argument.

Yonkers argument about Santander obtaining a WCDA release is beside the point.  The legal fees at issue relate to Yonkers' obfuscation of its own policy. See Dkt. No. 34 (claiming that the WCDAO has sole decision-making authority over the disposition, retention, and release of vehicles seized incident to arrest). The entire argument was a red herring.  Yonkers's 30(b)(6) witness clarified that, after the DA determines whether to hold a vehicle for evidence, there are a whole host of ***Yonkers's*** policies applied to a seized vehicle.  See Dkt. No. 80-9, Tr. 36:1-37:7 (explaining that Yonkers has an officer in the WCDAO to facilitate and authorize vehicle releases). The Court's own decision admonished Yonkers for continuing to irrelevantly point to the District Attorney as a scapegoat.  See Dkt. No. 104, n.1.  Yonkers' own evolving explanations of its policies required additional investigation that would have been unnecessary had Yonkers been forthright from the outset.

Similarly, Yonkers Tow accused Santander's attorneys of altering evidence before submitting it to the Court. See Dkt. No. 50, ¶ 2 ("[t]he application is predicated upon the intentional alteration of documentation").  This is a serious accusation that needed to be taken seriously. Santander investigated it, see Dkt. No. 51, only to discover that YTR had not investigated it *at all*:

> The manner in which the name . . . was removed from the documentation **is not known**.  That your Declarant should have investigated . . . to verify the transmission, etc. is ludicrous. . . . I have never done same in the past and have no knowledge as to same, or how to accomplish same, at all.

See Dkt. No. 52, ¶ 5(a).  Yonkers repeatedly, but inaccurately, states the situation involved a "letter brief" for sanctions. *See, e.g.* Yonkers' Opp. at 11.  It did not; as reflected in the time entries,

5

counsel drafted and served an entire Rule 11 motion *and* a cover letter.  See Dkt. No. 111-2 at 8. YTR removed its opposition only after receiving these papers, saving the Court the time it would otherwise have spent on this "document tampering" side show.  See Dkt. No. 54.

Yonkers's arguments resulted in a subpoena seeking information on an irrelevant policy. YTR caused (a) an investigation of a serious accusation, and (b) service of an un-filed Rule 11 motion.  Neither may now complain about the fees incurred. "[A]n attorney's calculus of the amount of time reasonably necessary for a case is the vigor which the opponents bring to the dispute." See Robinson v. City of Edmond, 160 F.3d 1275, 1284 (10th Cir. 1998) (citations omitted). Defendants "cannot litigate tenaciously and then be heard to complain about the time necessarily spent... in response." City of Riverside v. Rivera, 477 U.S. 561, 580 n.11 (1986).

Moreover, both Defendants are jointly liable for the fees for the same reason they are jointly liable for the damages.  Yonkers contracted with YTR, and the parties were found liable *in pari delicto*. Dkt. No. 104, p. 11-14 (finding that YTR's actions with regard to the Vehicle are attributable to Yonkers and that Yonkers and YTR may be held liable *together*) and p. 33 (granting Santander's motion for summary judgment in part).  YTR was Yonkers' attack dog to rein in and force to quit its antics, but it chose not to.  Yonkers is also responsible for introducing YTR into the situation in the first place.  Yonkers is responsible for the fees.

**C.    YTR's argument about a different matter litigated by a different plaintiff is nonsensical and does not warrant a reduction in fees.**

YTR's reference to Toyota Lease Trust v. The City of Yonkers, 19-cv-3199-GBD is both incomprehensible and irrelevant. See YTR Opp., ¶ 4. That case involved a vehicle seized for parking violations, while this case challenged Yonkers' practice of seizing vehicles incident to arrest. Moreover, YTR provides no legal authority to support its contention that fees should be

6

reduced merely because a hypothetically faster alternative procedure might have existed. Thus, YTR's argument should be ignored, wholesale.

**D.      The rates sought are reasonable.**

Yonkers' challenge to counsel's rates ignores that similar rates were recently approved for the exact same attorneys in similar cases. See Toyota Lease Tr. v. Vill. of Freeport, 2024 WL 639989 (E.D.N.Y. Feb. 15, 2024) (approving $630/hour for Mr. Meola, $570 for Mr. Duston, and $425 for Mr. Sokolof);[2] HVT, Inc. v. Port Auth., 2023 WL 5441898 (E.D.N.Y. Aug. 22, 2023) (approving $630/hour for Mr. Meola). The modest 2.5% increase from those awards accounts for inflation in the time since the prior awards. These rates remain well below those approved for comparable litigation. See HomeAway.com, Inc. v. City of New York, 523 F. Supp. 3d 573, 597 (S.D.N.Y. 2021) (awarding $650/hour to a partner); Faroque v. Park West Executive Services, 2020 WL 9812905, at *7 (E.D.N.Y. Jan. 29, 2020) (approving $750/hour for partners).

Moreover, Yonkers' reliance on cases from 2016-2018 suggesting rates over $400 are only warranted in "unusually difficult" cases (Yonkers' Opp. at 21) ignores well-documented, post-2018 inflation. "[A]ttorney's fees, like other goods and services, increase in cost with inflation." Almond v. PJ Far Rockaway, Inc., 2018 WL 922184, at *2 (E.D.N.Y. Feb. 15, 2018).

Yonkers also summarily states there "are no novel or complex issues being litigated" to suggest therefore Santander's rates are unreasonable. Yonkers' Opp. at 11, 21. This is incorrect. The case is unlike any previously litigated between Santander and Yonkers. So far as Santander can discern, the Takings Clause holding is a relatively new approach to the sale of impounded

---

[2] Yonkers's statement that there was "no reference" to Mr. Sokolof's prior successes is therefore false, as the Eastern District held that his reasonable rate for similar cases is $425. Freeport, 2024 WL 639989.

7

vehicles. See also Brewster v. City of Los Angeles, 672 F. Supp. 3d 872, 973 (C.D. Cal. 2023). The case raises novel and complex issues.

### E.     The Hours Expended Were Reasonable.

Yonkers' complaints about "excessive" hours ignore both the context and results. The time records demonstrate careful allocation of work to avoid duplication, with any particular task generally handled by a single attorney. Courts have consistently recognized that civil rights cases involving novel constitutional questions "often require more preparation time than other types of cases." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992).  Santander's contingent arrangement militates *against* Yonkers' arguments:

> Lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. By and large, **the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case**; after all, he won, and might not have, had he been more of a slacker.

Nadarajah v. Holder, 569 F.3d 906, 922 (9th Cir. 2009) (citing Moreno, 534 F.3d at 1112).

Yonkers' citation to cases reducing fees for "excessive" hours (Yonkers' Opp. at 9) is inapposite. Rahman reduced the hours of plaintiff's attorneys' from 167.36 to 104.15. Rahman v. The Smith & Wollensky Rest. Grp., Inc., No. 06-cv-6198-LAK-JCF, 2008 WL 1899938, at *1 (S.D.N.Y. Apr. 29, 2008). General Electric reduced the attorneys' request for $137,947 to $68,974 after finding that "it took four lawyers (3 associates and a partner) a combined 65.2 hours for a cost of $17,743, just to draft the nine-page complaint." General Electric Co. v. Compagnie Euralair, S.A., No. 96-cv-0884-SAS, 1997 WL 397627, at *4 (S.D.N.Y. July 3, 1997) see also Ass'n of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank Austria Creditanstalt AG, No. 04-cv-3600-SWK, 2005 WL 3099592, at *6 (S.D.N.Y. Nov. 17, 2005)

8

(reducing fees by 50% in part because it was "concerned that the 812.9 hours spent on multiple drafts of the motion to dismiss were excessive").

Here the hours were directly proportional to the tasks performed. For example, Yonkers complains that the drafting of Santander's 22-page Amended Complaint, ***along with*** the drafting and filing of two motions, which took three attorneys 60 hours. But Yonkers has not made a cogent argument as to why its bundling of different tasks together warrants a fee reduction.

In Resnik, the Court disagreed with defendant's argument that "Plaintiffs overstaffed this matter." Resnik v. Coulson, No. 17-676-PKC-SMG, 2020 WL 5802362, at *8 (E.D.N.Y. Sept. 28, 2020) (finding that "the resulting Complaint was thirty-six pages in length and.... The process of drafting and reviewing such a complaint could easily be time-consuming, notwithstanding the established nature of the relevant facts."). Unlike in Resnik, where *only* the complaint took five attorneys 82.7 hours, Santander here staffed the entire case with only three attorneys and billed 60 hours for its Amended Complaint *combined with* the drafting and filing of two motions. See also New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1146 (2d Cir.1983) (citations omitted) (discussing the shifting of fees for a second attorney at depositions)

Yonkers' argument that Santander's summary judgment practice should not have taken 140 hours is also baseless. See, e.g. Hall, 2014 WL 1286001, at *12 (holding that 144 hours for summary judgment is acceptable). Both Defendants violated the basic procedures involved, and are hardly in a position to discuss time spent on *proper* adherence; their violations also created *extra* work. Dkt. No. 104, n. 1-2 (outlining Defendants' failure to follow proper procedure).

Yonkers also misstates the law with regard to block-billing, and leaves out any reference to the alleged "block bills," because they are not actually entries subject to that label. Yonkers' Opp. at 14-19. "Block billing" refers to the time-keeping method by which each lawyer and legal

9

assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." Harolds Stores, Inc. v. Dillard Dep't Stores, Inc., 82 F.3d 1533, 1554 (10th Cir. 1996); see also Pope v. Cnty. of Albany, No. 1:11-cv-0736-LEK-CFH, 2015 WL 5510944, at *12 (N.D.N.Y. Sept. 16, 2015) ("If it is used sparingly, the descriptions of the work block billed 'are not vague[,] and the tasks included in those entries are either related to a single process or to related processes,' then billing a day's time in a batch is acceptable.") (citation omitted). Block billing "is not prohibited **as long as the Court can determine the reasonableness of the work performed**." Adorno v. Port Auth. of New York & New Jersey, 685 F. Supp. 2d 507, 515 (S.D.N.Y. 2010 (emphasis added) (citation omitted).

Santander did not block bill, and its records are sufficiently specific for the Court's review. See Balu v. City of New York, No. 12-cv-1071-KPF, 2016 WL 884666, at *5 (S.D.N.Y. Mar. 8, 2016) ("[T]he law does not require counsel to 'record in great detail how each minute of their time was expended,' but only to 'identify the general subject matter of their time expenditures.'" (alterations omitted) (quoting Hensley, 461 U.S. at 437 n.12)). For example:

| | | |
|---|---|---|
| 3/21/2022 | 3.2 | Draft complaint; nature of the action; include ex parte lien allegation; describe Yonkers policy and joint action with APOW' draft all Fed. Claims under 1983; 4th, 5th and 17th amendment. |
| 05/23/2023 | 3.0 | Receipt and review of APOW opposition to motion for leave to amend; review source of allegedly altered evidence; coordinate collection of "native format" email files from R. Meola; work with R. Meola regarding strategy for response; |
| 06/12/2023 | 5.3 | Legal research regarding Rule 11 standard; draft rule 11 brief, certification, and accompanying letter, including legal research and review of record for factual citations, to be served on P. Meyer pursuant to safe harbor provisions; finalize and transmit same; |
| 08/15/2023 | 4.5 | Draft requests to admit to Yonkers Tow; emails regarding letter; review letter from DA, review productions, bates label documents not produced including letter from DA; review correspondence regarding discovery deadlines; draft 30(b)(6) notices for defendants; |

10

See Dkt. No. 111-2 at 2, 6, 8-9. The first and third entries are not a "block bill" at all, as they pertain to the single task of drafting the enumerated sections of the referenced document. The others sufficiently itemize related tasks such that the Court can review the reasonableness of the amount involved.

**F.      Prejudgment interest is warranted.**

Yonkers opposes prejudgment interest rests because it was not explicitly mentioned in the parties' stipulation regarding damages (Yonkers' Opp. at 22-23). But the parties stipulated that the "value of the subject vehicle is $22,000," not that the damages would be $22,000 flat. Yonkers itself only made that stipulation "without waiver of any objections," or "any admission of liability." Yonkers did not commit itself to anything other than a statement of the Vehicle's value, and neither did Santander. Prejudgment interest is appropriate under the federal rate to "guarantee complete compensation to the plaintiff." Marfia v. T.C. Ziraat Bankasi, 147 F.3d 83, 90 (2d Cir. 1998). Interest is required to fully compensate Santander for time passed since 2021.

## CONCLUSION

For the foregoing reasons, Santander respectfully requests judgment in the amount of $265,430.52.

Dated: January 31, 2025

                                              **NORRIS McLAUGHLIN P.A.**
                                              *Attorneys for Plaintiff*

                                        By:   */s/ Nicholas Duston*
                                                      Nicholas A. Duston, Esq.
                                                      7 Times Square, 21st Fl.
                                                      New York, NY 10036
                                                      (908) 252-4208
                                                      naduston@norris-law.com

## **CERTIFICATION**

  I, Nicholas A. Duston, an attorney admitted to practice before this Court, hereby certify that, pursuant to Section II(B) of Hon. Kenneth M. Karas' Individual Rules, dated December 17, 2024, this Memorandum of Law, excluding the parts exempted by Local Civil Rule 7.1, such as the caption, signature block, and word count certification, contains 3,492 words.  In preparing this certification, I have relied on the word count of the word-processing system in Microsoft word.

Dated: January 31, 2025

                    By:  */s/ Nicholas Duston*